UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TARA EDWARDS**,
Plaintiff,

CASE NO.

**v.**

**SCRIPPS MEDIA, INC., d/b/a WXYZ-TV**,
a Foreign Profit Corporation,                          **JURY DEMAND**

　　　　Defendant**.**
_____/

**MICHAEL N. HANNA (P81462)**
**MORGAN & MORGAN, P.A.**
Attorney for Plaintiff
2000 Town Center
Suite 1900
Southfield, MI 48075
Tel:  (313) 251-1399
Fax:  (313) 251-1397
mhanna@forthepeople.com

### VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **TARA EDWARDS** brings this action and complaint for damages and demand for jury trial against Defendant, **SCRIPPS MEDIA, INC.,** d/b/a "**WXYZ-TV**," a Foreign Profit Corporation (hereinafter referred to as "WXYZ-TV"), and in support thereof, alleges as follows:

### PARTIES

1.   This action arises out of Plaintiff's employment with Defendant, pursuant to the Elliott-Larsen Civil Rights Act, ("ELCRA") MCLA § 37.2101 *et seq*.

2.   Plaintiff, TARA EDWARDS, is a current resident of the state of Texas and resides in Harris County, Texas.  At all relevant times, Plaintiff resided in Oakland County,

1

Michigan. Plaintiff was formerly employed by and worked for Defendant in the Eastern District of Michigan. Plaintiff is protected by ELCRA because:

 a. She is a female;

 b. She is a member of a protected class by virtue of her gender;

 c. At all relevant times, Defendant was Plaintiff's employer and subject to the provisions applicable to employers contained in ELCRA;

 d. Plaintiff was an "employee" of the Defendant within the meaning of ELCRA;

 e. She suffered from sexual harassment, hostile work environment, and discrimination;

 f. She engaged in a protected activity; for example, Plaintiff objected to Defendant's sexual harassment and hostile work environment; and

 g. Nothing was done to rectify Defendant's sexual harassment and hostile work environment;

 h. As a result, Plaintiff was retaliated against, and constructively discharged from her employment with Defendant.

3. Defendant, Scripps Media, Inc. is a Delaware for-profit corporation, whose principal place of business is located in Hamilton County, Ohio.

4. Defendant is an employer as defined under ELCRA, M.C.L. § 37.2201.

## JURISDICTION

5. This Court has diversity jurisdiction over Plaintiff's ELCRA claims because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and is between

citizens of different states. Specifically, Plaintiff is a resident of the State of Texas, and Defendant is a Delaware Corporation whose principle place of business is located in Ohio.

6. Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to the Acts cited above as well as *Ex Parte Young*, 209 U.S. 123 (1908) pursuant to Plaintiff's request for prospective injunctive relief, and the authority to grant declaratory relief under the Act cited above.

## VENUE

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in Oakland County, Michigan, which is encompassed within the Southern Division of the Eastern District of Michigan. Defendant also conducts substantial and not isolated business within the Eastern District of Michigan, has agents and employees in the Eastern District of Michigan, and maintains an office within the Eastern District of Michigan.

## FACTUAL BACKGROUND

8. WXYZ-TV is a television station owned and operated by Defendant.

9. Ms. Edwards worked for WXYZ-TV as a Multi-Media Journalist from about June 2011 until December 31, 2016.

10. Malcolm Maddox ("Mr. Maddox") worked as a news anchor for WXYZ-TV during the period of Plaintiff's employment.

11. The position held by Mr. Maddox was higher-ranking and more visible than the position held by Ms. Edwards.

12. Defendant assigned Ms. Edwards to perform job duties that required frequent, almost daily, interaction with Mr. Maddox.

13. Throughout the entire employment of Ms. Edwards, Mr. Maddox targeted her with a multitude of hostile, offensive, unwelcomed, and inappropriate actions.

14. Mr. Maddox's harassing behavior was pervasive and occurred on a regular basis. Paragraphs 15 - 20 are some non-exhaustive examples of Mr. Maddox's inappropriate conduct towards Plaintiff.

15. Mr. Maddox made multiple efforts to kiss Ms. Edwards on the face and mouth at work.

16. Mr. Maddox sent written correspondence to Ms. Edwards where he called her "little girl" and told her that she has not "met anyone like [Mr. Maddox] and that extends further than you can possibly imagine."

17. Mr. Maddox frequently asked Ms. Edwards to engage in unwanted and unsolicited sexual acts that she found to be deviant and perverse. The sexual propositions included asking: (a) if he could spit in Ms. Edwards's mouth during sexual activity; and (b) if he could urinate on Ms. Edwards during sexual activity.

18. Mr. Maddox also sent Ms. Edwards written correspondence that expressed his desire to engage in sexual activity with her, stating he would "rock [Ms. Edwards's] f**king world" and asked her if she was "ready for the physical challenge" of having sex with him.

19. Mr. Maddox, always through deception and coercion, forced Ms. Edwards to view sexually explicit pictures and videos, including: (a) showing Ms. Edwards a video of his girlfriend "popping grapes" out of her vagina; and (b) showing Ms. Edwards a nude picture of a female colleague she worked with at WXYZ-TV while Ms. Edwards and Mr. Maddox were anchoring the weekend morning news.

20. Mr. Maddox repeatedly proposed to send Ms. Edwards pictures of his penis so she could "judge it on a scale of 1 to 10." After Plaintiff rejected the propositions to accept delivery of pictures of his penis, Mr. Maddox asked Plaintiff to look at a "work email" on his cell phone that turned out to be a picture of his penis.

21. Ms. Edwards repeatedly rejected Mr. Maddox's sexual propositions, advances, and other inappropriate sexual behavior.

22. Mr. Maddox was repeatedly told by Ms. Edwards to stop targeting her with sexually harassing behavior, which included explicitly telling him that his actions "repulsed" her.

23. Mr. Maddox acknowledged his awareness of the fact that Ms. Edwards perceived his conduct as offensive and unwelcome, writing via text message: "… I was hoping you would have liked what you saw if you got a good look. I wasn't expecting you to be repulsed …"

24. Nevertheless, Mr. Maddox continued to target Ms. Edwards with harassing behavior after her repeated rejections of his advances and requests for him to stop.

25. On approximately January 23, 2015, Plaintiff was informed by coworkers that Mr. Maddox had been spreading false and perverse sexual rumors about her "for years."

26. Mr. Maddox's rumors included: (a) telling WXYZ-TV employees that he was having an affair with Ms. Edwards: (b) telling WXYZ-TV employees that his affair with Ms. Edwards included deviant sex acts, including urinating on Ms. Edwards; (c) telling WXYZ-TV employees that he might be the father of Ms. Edwards's unborn child; (d) telling WXYZ-TV employees that he had sex with Ms. Edwards on a work assignment in West Palm Beach; and

5

(e) telling WXYZ-TV employees that Ms. Edwards was coaching his girlfriend about how to please Mr. Maddox sexually.

27. Each of the rumors addressed in Paragraph 26 is categorically false, and were made to besmirch the good name and character of Ms. Edwards amongst her coworkers.

28. Mr. Maddox's sexually harassing conduct and campaign to taint Plaintiff's good name and character caused severe distress, apprehension, anger, and caused WXYZ-TV to become a hostile work environment for Ms. Edwards.

29. Hoping to correct the existing conditions and stop Mr. Maddox's behavior, Ms. Edwards made a formal complaint of sexual harassment and misconduct about Mr. Maddox to Defendant's management on January 28, 2015.

30. Plaintiff provided Defendant with written materials documenting the sexual harassment.

31. Defendant performed an internal investigation of the sexual harassment and misconduct complaint.

32. The investigation uncovered other female employees who had been subjected to sexual harassment and related misconduct by Mr. Maddox.

33. Upon information and belief, other females confirmed that Mr. Maddox engaged in the following types of behavior: inappropriate text messages; sexually perverted comments; and showing female employees pictures of his penis.

34. During the investigation, Mr. Maddox admitted engaging in inappropriate misconduct of a sexual nature towards female employees of WXYZ-TV.

35. Upon information and belief, several other employees also admitted that Mr. Maddox did make the aforementioned sexual comments about Ms. Edwards.

36. Defendant determined that Mr. Maddox had engaged in "inappropriate communications with coworkers that did not conform to company policy."

37. Despite this determination, about a week after Ms. Edwards made her complaint, Defendant told her that Mr. Maddox would not be terminated despite uncovering evidence of sexual harassment and misconduct.

38. Rather, Ms. Edwards was told that Mr. Maddox would only receive an "undisclosed disciplinary action" that did not include termination. Ms. Edwards was also told that she needs to "respect her boundaries," and was asked if she "thinks she can continue to work here."

39. Rather than terminate Mr. Maddox, Defendant subsequently decided to promote Mr. Maddox to the morning news anchor position.

40. Ms. Edwards, on the other hand, was moved to the "day shift."

41. Defendant failed to take sufficient preventative, corrective, or remedial action in response to Plaintiff's complaint of sexual harassment.

42. Defendant's punishment of Mr. Maddox was ineffective, inadequate, and infringed on the right to work in a workplace free from harassment, discrimination, and retaliation owed to Ms. Edwards.

43. Defendant's indifferent response to Plaintiff's complaint empowered Mr. Maddox to engage in additional acts of harassment against Ms. Edwards and other female employees.

44. The appearance Defendant perpetuated amongst their employees as a result of the outcome of the sexual harassment investigation—whereby Mr. Maddox was promoted shortly thereafter—was that the investigation substantiated the rumors concerning the Plaintiff.

45. As a result, Plaintiff reasonably believed that Mr. Maddox held broad delegated powers and had the ability to significantly influence employment decisions affecting her.

46. In an effort to restore her reputation and alleviate the hostile work environment, Plaintiff objected to the outcome of Defendant's investigation, and their refusal to issue a statement by Mr. Maddox to clear her of the perverse, false and misleading defamatory statements.

47. Mr. Maddox continued to engage in behavior that contributed to an intolerable workplace for Ms. Edwards and other female employees at WXYZ-TV.

48. After the complaint and investigation, Mr. Maddox continued to spread rumors of a sexual nature and attack the character of Ms. Edwards to WXYZ-TV employees and staff, which contributed to: (a) certain high-profile employees and on-air personalities cutting off communications with Plaintiff; (b) certain high-profile employees and on-air personalities admonishing Plaintiff for complaining about Mr. Maddox to HR; (c) colleague(s) cutting off communication with Plaintiff because they were disgusted by the perverted sexual acts for which they were advised that she had engaged in with Mr. Maddox; and (d) Ms. Edwards suffering daily feelings of apprehension, fear, and unhappiness about her career at WXYZ-TV.

49. Ms. Edwards informed her supervisor that Mr. Maddox was continuing to spread sexually perverse rumors about her and assassinate the character of Ms. Edwards after her initial complaint and related-investigation.

50. Defendant again failed to take any effective preventative, corrective, or remedial action against Mr. Maddox for his actions against Plaintiff.

51.     Plaintiff had a reasonable basis to believe that Defendant's complaint process was ineffective. It became clear that the hostile work environment would not subside, and/or that Plaintiff could not grow, progress, and/or obtain a promotion with Defendant.

52.     On December 31, 2016, as a result, Plaintiff was constructively discharged from her employment at WXYZ-TV.

53.     As a result of Defendant's harassment and retaliation, Plaintiff exited the broadcast journalism industry, and no longer works in that field.

54.     In December 2017, Defendant suspended Mr. Maddox in response to a local pastor/activist's very public accusations against Mr. Maddox directly related to the sexual harassment allegations previously made by Ms. Edwards.

55.     In December 2017, Mr. Maddox admitted that he did "exercise very poor judgment engaging in inappropriate communications with coworkers. . . ."

56.     Mr. Maddox continues to be employed by WXYZ-TV.

## COUNT I

### VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT - SEXUAL HARASSMENT; HOSTILE WORK ENVIRONMENT; CONSTRUCIVE DISCHARGE

57.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

58.     Plaintiff was discriminated against and harassed because of her sex in violation of ELCRA.

59.     During the course of her employment with Defendant, Plaintiff was subjected to unwelcome touching, requests for sexual favors, sexual conduct, sexual comments and other conduct of a sexual nature.

60.     The unwelcome touching, requests for sexual favors, sexual conduct, sexual comments and conduct by Defendant's employee had the purpose and/or effect of substantially

interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

61.  Defendant's harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and created a hostile work environment.

62.  Defendant's conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive.

63.  Plaintiff found Defendant's conduct to be both objectively and subjectively offensive.

64.  Defendant's failure to conduct a fair investigation into the conduct and take corrective action also constitutes a violation of ELCRA.

65.  Defendant's failure to take prompt remedial action concerning the hostile work environment Plaintiff was made to endure had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

66.  The work environment Plaintiff was forced to endure as a result of Defendant's investigation and/or handling of Plaintiff's sexual harassment complaint had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

67.  Defendant had both actual and constructive notice that its employee created a hostile and offensive work environment for Plaintiff.

68.  As a direct and proximate result of the above-mentioned sexual harassment, and the Defendant's failure to take the required corrective action, Plaintiff was forced to

terminate her employment relationship with the Defendant, and was thus constructively discharged from her employment in violation of the ELCRA.

69. The injuries to Plaintiff that arose as a consequence of Defendant's conduct were foreseeable and willfully and intentionally caused by Defendant.

70. Defendant did not maintain an effective complaint process, did not protect Plaintiff's confidentiality when she objected to sexual harassment, and did not take appropriate corrective action.

71. Defendant also took several adverse employment actions against the Plaintiff, which may include but is not limited to failure to promote, undesirable reassignment, compensation decisions, and/or work assignments.

72. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, fright, shock, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

73. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff has suffered economic damages, including but not limited to, compensatory and actual damages including loss of wages, the value of the remainder of her contract, loss of benefits, back pay, front pay, and other related expenses.

74. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff also been placed in financial distress and has suffered a loss of earnings, benefits and retirement pay, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future.

75. Defendant acted with malice and/or reckless indifference toward the Plaintiff.

## COUNT II

### SEXUAL DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

76. Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

77. Plaintiff was harassed and discriminated against by Defendant based on her sex. When Plaintiff reported this conduct, Defendant failed to make appropriate measures to stop the harassment, and misconduct and forced her to work in close proximity with her harasser(s) and other individuals he spread false rumors about her to.

78. Furthermore, said acts of discrimination have affected the Plaintiff's job opportunities, ability to advance, and right to be free of sexual discrimination, harassment, and other terms and conditions of employment. Plaintiff alleges that male employees were not treated in the same manner and treated more favorably.

## COUNT III

### RETALIATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

79. Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

80. Plaintiff engaged in a protected activity, and objected to the sexual harassment taken against her.

81. Beginning shortly after her initial complaint about sexual harassment, and continuing until her constructive discharge from employment, Plaintiff was subjected to retaliation, which includes retaliatory hostile work environment, and other further harassment by Defendant because she complained of unlawful acts of sexual harassment in violation of ELCRA.

82. Defendant failed to effectively remedy the situation and condoned, or supported or allowed the harassment to continue.

83. Defendant took adverse employment actions against Plaintiff, including but not limited to retaliation, denial of opportunities, benefits and advantageous terms and conditions of employment, and forced the constructive discharge of her employment.

84. The discrimination, sexual harassment and hostile work environment of Defendant, through its employees, as more particularly alleged, *supra*, violated Plaintiff's rights against retaliation under ELCRA, which retaliation is explicitly prohibited for opposing what she reasonably believed to be discrimination based upon sex.

85. Defendant's offensive conduct and its refusal to provide a remedy to the Plaintiff and its retaliation actions were willful, deliberate, and intentional.

86. The injuries to Plaintiff that arose as a consequence of Defendant's conduct were foreseeable and intentionally caused by the Defendant.

87. As a result, Plaintiff was constructively discharged when her working conditions became so difficult and unpleasant by Defendant's conduct that a reasonable person would have felt compelled to resign.

88. In addition, several other aggravating factors, in addition to the sexually unequal discriminatory environment, which support Plaintiff's claim for constructive discharge.

89. Plaintiff's protected activity was a significant factor in the adverse employment action.

90. This retaliation and retaliatory harassment would not have occurred had Plaintiff not engaged in protected activity pursuant to ELCRA.

91. That as a direct and proximate result of the Defendant's violation of ELCRA, Plaintiff suffered economic damages including but not limited to, compensatory and actual damages including loss of wages, the value of the remainder of her contract, loss of benefits, back pay, front pay, and other expenses.

92. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

93. As a direct, natural, proximate and foreseeable result of the actions of Defendant, Plaintiff has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

94. The conduct of Defendant was so willful and wanton, and performed with malice or reckless indifference to the statutory rights of Plaintiff, as to entitle her to an award of exemplary/punitive damages against Defendant, to deter them, and others, from such conduct in the future.

95. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

96. Plaintiff is entitled, pursuant to ELCRA, to recover her attorneys' fees and litigation expenses.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for damages in an amount to be determined at trial, together with interest, cost of suit, attorneys' fees, and all such other relief as the court deems just and proper which include:

  a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Elliott-Larsen Civil Rights Act, M.C.L. 37.2101 et seq.

    b.   Award Plaintiff loss of wages, the value of the remainder of her contract, loss of benefits, back pay, and front pay;

    c.   Award Plaintiff compensatory damages;

    d.   Award Plaintiff exemplary damages;

    e.   Award Plaintiff punitive damages;

    f.   Award Plaintiff reasonable attorney's fees, costs, and interest;

    g.   Award Plaintiff equitable relief including, but not limited to: an injunction directing Defendant to cease their discriminatory conduct and practices;

    h.   Award Plaintiff all relief available under ELCRA; and

    i.   Award Plaintiff such other relief as this Court deems just and proper

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 6th day of March, 2018

                                              By:  s/  MICHAEL N. HANNA
                                              MICHAEL N. HANNA, Esquire
                                              Morgan & Morgan, P.A.
                                              Michigan Bar No.: P81462
                                         2000 Town Center
                                          Suite 1900
                                          Southfield, MI 48075
                                          Tel:  (313) 251-1399
                                          Fax:  (313) 251-1397
                                          Email: MHanna@forthepeople.com

                                          *Trial Counsel for Plaintiff*

I, TARA EDWARDS, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the factual allegations in this Complaint are true and correct based on my personal knowledge.

Dated: 3/5/18

_____
TARA EDWARDS