1              **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF MICHIGAN**
2                 **SOUTHERN DIVISION**

3  **TARA EDWARDS,**

4              Plaintiff,       **Case No. 18-10735**
    **-v-**
5

 **SCRIPPS MEDIA, INC., d/b/a**
6  **WXYZ-TV, a Foreign Profit**
 **Corporation,**
7
             Defendant.
8  _____/

9                 **MOTION HEARING**

10     BEFORE MAGISTRATE JUDGE **ELIZABETH A. STAFFORD**
        United States Magistrate Judge
11     Theodore Levin United States Courthouse
      231 West Lafayette Boulevard
12           Detroit, Michigan
       **Thursday, July 19, 2018**
13

 **APPEARANCES:**
14
 FOR THE PLAINTIFF:    **MICHAEL N. HANNA**
15                Morgan and Morgan, P.A.
               2000 Town Center
16                Suite 1900
               Southfield, MI 48075
17
 FOR THE DEFENDANT:    **ELIZABETH P. HARDY**
18                **THOMAS J. DAVIS**
               Kienbaum Opperwall Hardy & Pelton,
19                P.L.C.
               280 N. Old Woodward Avenue
20                Suite 400
               Birmingham, MI 48009
21

22
 **TRANSCRIBED BY:**
23  **Christin E. Russell**
 **FCRR, CRR, RMR, CSR-5607**
24  **Proceedings digitally recorded.**

25

1    <u>TABLE OF CONTENTS</u>

2    <u>Hearing</u>                                              <u>Page</u>

3    Motion Hearing                                          3

4

5

6

7

8

9    <u>Exhibits:</u>
     <u>No.</u>          <u>Description</u>                          <u>Page</u>
          (None Offered)
10

11

12   CERTIFICATE OF REPORTER                                 97

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Detroit, Michigan
 2   July 19, 2018
 3   10:06 a.m.
 4                           *      *      *
 5           (Call to Order of the Court; all parties present.)
 6                           *        *         *
 7           THE CLERK:  The Court calls case No. 18-10735, Tara
 8   Edwards vs. Scripps Media, Incorporated doing business as
 9   WXYZ-TV.
10           Counsel, please place your appearances on the record.
11           MR. HANNA:  Good morning, Judge.  Michael Hanna for the
12   plaintiff.  And with me is one of our law clerks at Morgan &
13   Morgan civil rights division, Branden Allen.
14           THE COURT:  Branden Allen, did you say?
15           MS. HANNA:  Yes, ma'am.
16           THE COURT:  Thank you.  Good morning.
17           MR. ALLEN:  Good morning.
18           MS. HARDY:  Elizabeth Hardy on behalf of Scripps Media.
19           MR. DAVIS:  Good morning, your Honor.  Thomas Davis on
20   behalf of Scripps Media.
21           THE COURT:  Good morning.
22           Mr. Allen, where are you in school?
23           MR. ALLEN:  I go to Howard University.
24           THE COURT:  Okay.  And what year are you?
25           MR. ALLEN:  I'll be a rising junior, so a junior next
```

1    year.  So class of 2020.

2            THE COURT:  Good luck to you.

3            MR. ALLEN:  Thank you.

4            THE COURT:  Mr. Hanna, I think I need to deal with your

5    motion.  Why don't you come up to your podium, please, your

6    motion to strike first, so that then we can go to the actual

7    motion.

8            So I guess I have a general question for you.  What do

9    you think that the meet-and-confer requirement or really the

10   requirement that the parties confer before a motion is filed

11   are meant to accomplish?

12           MR. HANNA:  It's meant to narrow the issues and discuss

13   what's actually filed.  So if Defendants would have filed the

14   motion we actually conferred on, or any draft version thereof,

15   I would obviously respond to that --

16           THE COURT:  Would you have agreed to the motion that

17   they filed?

18           MR. HANNA:  Would I have agreed -- well, so after the

19   parties --

20           THE COURT:  That's a yes or no.  Would you have agreed

21   to the motion that they filed?

22           MR. HANNA:  In its entirety?  No.

23           THE COURT:  So that was clear.  Because you had

24   stricken out the portion of the protective order dealing with

25   personnel files.

1            MR. HANNA:  Yes, Judge.

2            THE COURT:  And from my perspective, the purpose of the

3    motion -- the meet, the requirement that the parties confer is

4    that, number one, if the other party is going to agree then

5    it's a waste of time to file the motion.  And that happens.

6    People file motions to compel, for example, and had they called

7    the other side, the other side would have said yeah, I'll agree

8    to that.  So that's just, it's a way of preventing unnecessary

9    motions and it does narrow the issues.  But the fact is you

10   would have rejected their motion.

11           And, you know, I want to say things to you, and I want

12   you to hear them in the best way possible.  Your complaint is

13   well written.  This is a serious case.  Filing a motion to

14   strike another party's motion based upon that sort of, you

15   know, technical argument where you would not have agreed to the

16   relief requested seems much too silly compared to the

17   seriousness of the case that you've brought.  And I really only

18   get motions to strike like that, instead of responses, usually

19   in *pro se* cases.  And what it does is it requires me to have to

20   read additional briefing that I feel is just like a waste of my

21   time rather than focusing on the issues that I think really

22   matter, which is the duelling protective orders.  So I would

23   encourage you not to engage in that practice.

24           There are comments in your briefing about the defense

25   being aggressive and casting aspersions and so forth.  But

MOTION HEARING - 7/19/2018

6

1   really, your approach thus far, from what I'm seeing, has been
2   I think more, it's been more from you casting aspersions and
3   being aggressive.  And it's like, I think the mind-set is that
4   you are here to fight, but this is a silly part of the -- this
5   is not something to fight about.
6           MR. HANNA:  I agree with you, Judge.  I think the
7   intent behind it was, because what's going to happen is if we
8   go line by line between the different drafts, and we're
9   considering why don't we do -- add this language versus this
10  language, my obvious response to that is, well, the logic is we
11  previously presented to Defendants and we came to a meeting of
12  the minds and we agreed that this is the way to do it.  So the
13  intent was actually to save time so that we're not arguing
14  about stuff that the parties were able to resolve.  And we were
15  with able to resolve all but two disputed provisions.
16          THE COURT:  But I'll be honest, Mr. Hanna.  You put in
17  your motion that the defendant's proposed protective order
18  wouldn't allow you to challenge anything that they designate as
19  being confidential, where clearly the protective order they
20  presented does.  And you said something about this would give
21  them an advantage that would be presumptively confidential.
22          MR. HANNA:  Right.
23          THE COURT:  That's just not true.  If the defense
24  labeled something confidential, and you said this should not be
25  confidential, the reviewing judge is not going to think that

1    there is a presumption because you had an agreement regarding

2    the manner in which documents are identified as confidential.

3    It's just an agreement as to procedures.  It doesn't say

4    anything about a presumption that a particular document is

5    going to be identified, that as identified as confidential

6    should be confidential.

7           And I'm going to tell you another thing -- and I'm

8    telling you this because, you know, you appear to be a young

9    man, and I really want to tell you things -- and I'm a mother,

10   you know, so part of my instinct is to want to help people

11   improve their, their skills and, and their habits.

12          Another thing that you did, when you attached Judge

13   Lawson's practice guidelines is I had to -- I was perplexed.

14   Where did this come from?  And I was searching for it.  And

15   then when -- I think it was inadvertent --

16          MR. HANNA:  Yeah.  I mean, the website said Eastern

17   District of Michigan.  I didn't realize that that was for a

18   particular judge.

19          THE COURT:  But then in the reply, instead of

20   acknowledging that you had made a mistake, you, you just sort

21   of tried to point fingers at, the defendants are unreasonable

22   and not accepting that, instead of saying, you know, this was

23   my mistake.

24          So I just think that this is a serious case.  You have

25   a serious case.  You have, you have written -- you have a well

```
 1   written complaint and I actually think that the fight over this
 2   protective order in general is just completely unnecessary.
 3   Some of the things that you were saying frankly, like striking
 4   out the personnel files, I don't get it, because when I look at
 5   the case law, that's the, that's the most obvious area, where
 6   people's personnel files with their salaries and their
 7   evaluations, that's the primary area where courts have
 8   consistently said these type of documents should be protected
 9   by a protective order.
10        MR. HANNA:  I agree.  And if, if items are properly in
11   a personnel file, I agree.
12        The main fight about the personnel file was not their
13   salaries.  Nobody -- that's not really relevant, nobody cares
14   about that.  It's the disciplinary records that relate to the
15   sexual harassment, right?  And it just -- and that was the
16   sticking point at the end.  And that's, that's the point that
17   they --
18        THE COURT:  But nothing in the protective order that
19   the defendant's proposed would preclude you from getting that.
20        MR. HANNA:  But it wasn't what was conferred upon.  And
21   that was the discussion that we had.  And the specific
22   discussion that was had is we want to specifically include that
23   language in there, and have it in there because if it comes to
24   the judge, we want them to know that that's what the parties
25   assumed and that's the presumption.  And I said, well, we want
```

1    to enter motion practice on equal footing.

2          THE COURT:  I think, as I said, there was nothing in

3    the proposed protective order, there's nothing in there that

4    says that there would be a presumption.  All it says was this

5    is the process that the defense can say this document from the

6    personnel file is confidential.  And to the extent that you

7    disagreed, there was a process for you to challenge that in

8    court.

9          So there's two things -- ways that this can happen, is

10   either the parties are going to agree to a protective order,

11   and then, in those exceptional circumstances -- which they

12   should be exceptional.  People should not be willy-nilly

13   stamping "confidential" on their documents.

14         In those exceptional circumstances where that

15   designation is made improperly, then the other party can bring

16   a motion.  Otherwise, what you can do is the parties will have

17   to, because frankly, the only thing that was briefed was, in

18   terms of the substantive consideration of what should be

19   considered privileged, and the only thing that was briefed was

20   the personnel files and the records from the investigation.

21         So either the parties can agree to a protective order,

22   or we're going to have to have multiple motions for protective

23   order any time a party thinks a document should be considered

24   confidential.  And that could be -- that could affect Ms.

25   Edwards.  I think that she probably has some documents.

 1          MR. HANNA:  And what I -- right.  And what I proposed

 2   on that is, look, let's agree to exchange the documents,

 3   maintain them as if the confidentiality order is in place.

 4   Let's take a look at them and see if there are any actually --

 5          THE COURT:  No.  That's not the way protective orders

 6   are done.  Protective orders don't say that first you get to

 7   look at it, and then you can decide whether we're going to deem

 8   this confidential.  Because without the security of a

 9   confidentiality agreement, then if the defense gives you a

10   document, and you don't think that it should be confidential,

11   then you have the legal right to disclose it.

12          MR. HANNA:  Well, no.  We were stipulating to maintain

13   them as if they were confidential until the Court makes any

14   ruling on a protective order to avoid us arguing in a vacuum.

15          THE COURT:  Okay.  So what you're saying then is that

16   every time a document is exchanged that's deemed confidential,

17   you have to bring it to court for the Court to decide?

18          MR. HANNA:  No.  Because quite frankly, I don't think

19   I'm going to care about 99 percent of this stuff.  I think

20   we're, we're just arguing in a vacuum because I don't know what

21   they are designating.  And I just want to --

22          THE COURT:  It doesn't matter.  Because if you don't

23   think it should be designated as such, then there's a mechanism

24   for you to challenge it.

25          MR. HANNA:  Right.

MOTION HEARING - 7/19/2018

11

```
 1          THE COURT:  I mean, I want you to just take a few
 2   minutes.  Because I think what I should do is have you guys go
 3   in the jury room, because it looks like when it comes down to
 4   it, we're talking about really minor stuff.  But the things
 5   that you're saying are not making sense in terms of your
 6   objections.
 7          There is a mechanism that is in several parts, it's
 8   addressed in several parts of the defendant's proposed
 9   protective order that would allow you to challenge their
10   designation of a document as being confidential.
11          MR. HANNA:  There is a mechanism.  I just wanted that
12   mechanism to comport with the Federal Rules.  For example, in
13   the draft that they filed, they said that it is essentially
14   Plaintiff's burden to, to move for confidentiality designation
15   or for protective order.  I guess they are now saying that
16   that's not the -- that's not what they intended it.
17          THE COURT:  Okay.  Tell me exactly what you're pointing
18   to, because that is just absolutely not what I read.  So tell
19   me exactly what you're pointing to that says that.
20          MR. HANNA:  Sure.  And again, this is one of the issues
21   that we previously --
22          THE COURT:  I just want you to -- because I read that
23   in your brief, and you're saying it now, but I'm not reading it
24   that way at all.  So I have absolutely no idea --
25          MR. HANNA:  Sure.
```

```
 1          THE COURT:  -- what language you're relying upon that
 2   says that.
 3          MR. HANNA:  Sure.  So it's the objection to designation
 4   section.  So if you take a look at, on their draft, it's on
 5   page 10.
 6          THE COURT:  Shoot.  This didn't -- I have to pull this
 7   back up.  Sometimes -- I have a technical issue.  So it will
 8   just take me a second to pull it back up.
 9      (Brief pause.)
10          THE COURT:  Okay.  So you said on page 10?
11          MR. HANNA:  Yes.  On page 10 of Defendant's proposed
12   confidentiality agreement, objection to designation, it
13   indicates that the requesting party must make an application
14   within 10 business days of the meet-and-confer for the ruling.
15          On our page 13, we, we -- where is it?  We changed it
16   to the producing party, not the requesting party, because --
17   and we -- and so their initial draft also said the requesting
18   party.  We conferred about it and we sent them -- I'll try to
19   pull it out.
20          THE COURT:  But the requesting party -- okay.  So I did
21   read that.  And I don't understand it really, because if, if
22   the defense produces a document.
23          MR. HANNA:  Right.
24          THE COURT:  And labels it confidential.
25          MR. HANNA:  Right.
```

1      THE COURT:  If you change it to the producing party,

2 you're saying that they are the only ones that can request a

3 document be released later.

4      MR. HANNA:  So the way we read it is that -- wait.  No,

5 not that they can produce it later.  But so basically if I

6 give, if I produce a document that I deem confidential, and

7 they object to it, then it's my obligation to move it for seal

8 or to maintain that confidential designation, not their

9 responsibility to challenge it.

10      And then I, during the conferral process, we redlined

11 this out.  And my comments stated, "the Federal Rules require

12 producing party to move for protective order.  Plaintiff cannot

13 will not agree to a procedure that shifts the burden.  We can

14 agree, however, to treat said documents as confidential until

15 the Court issues its ruling provided the confidentiality order

16 indicates that the producing party will not otherwise oppose a

17 motion for extension to file --

18      THE COURT:  All this is saying is that the party that

19 wants the information to be designated -- to be released is the

20 one who has to follow this procedure.

21      MR. HANNA:  Right.

22      THE COURT:  What's wrong with that?

23      MR. HANNA:  It should be the party that's designating

24 that.  They are the ones that essentially have to file -- for

25 documents to be filed -- the whole purpose of all this is --

```
 1            THE COURT:  No, that's not true.
 2            MR. HANNA:  Okay.
 3            THE COURT:  That's just not true.
 4            MR. HANNA:  The whole purpose of this --
 5            THE COURT:  I mean, if they produce something, they are
 6  the producing party.  If you want it to be released, then under
 7  this section, you would have the right to request that it be
 8  released.
 9            MR. HANNA:  It seems like what they are really scared
10  about is this information --
11            THE COURT:  I don't want, I don't want to hear like
12  these broader arguments, because I'm trying to look at the
13  specific language and for you to explain what your objection to
14  them is.  And so now I looked at this, and you're saying that
15  it should be the producing party.
16            MR. HANNA:  Right.
17            THE COURT:  But that would actually be more limiting
18  for you.  Because that would mean that, as I said, the
19  producing party, if the -- they would be the only ones under
20  that section, if they gave you let's say personnel files, and
21  you think that something from the personnel files should be
22  released.
23            MR. HANNA:  Right.
24            THE COURT:  Then they will be the only ones who could
25  request it be produced.
```

1        MR. HANNA:  Not produced, because they are going to be

2  producing --

3        THE COURT:  I'm sorry.  The producing party will be the

4  only party that could request the document be released from the

5  protective order, the requirements of the protective order.

6        MR. HANNA:  So our intent in this whole thing is to

7  make sure that we don't have to file basically our whole

8  summary -- plaintiff's motion for summary judgment under, under

9  seal and all the exhibits filed under seal.

10       THE COURT:  First of all, this has nothing to do with

11  the sealing, and whether or not a document is confidential

12  under any protective order has no bearing -- I guess it is, it

13  is relevant for the consideration for whether it should be

14  filed under seal, but this will not give either party the right

15  to file something.

16       MR. HANNA:  And to take it full circle, that's what --

17  that was the confusion.  Are they talking about making sure

18  documents are confidential, I guess they are worried about

19  taking it to the media or something?  I don't really care about

20  that, right?  Because it specifically says in our agreement

21  that the limited purpose of these documents are for purposes of

22  litigation.  We have -- that's not the point.  The point is for

23  us to use these documents for filing, right?  So my whole

24  concern, and that's the communicated concern seen in the

25  correspondence is, okay, so what does that mean for under seal?

MOTION HEARING - 7/19/2018

16

```
 1   Are you saying that if you want one of your documents to be
 2   filed under seal, we have to move for it?  I think you should
 3   have the burden for that.  And I wanted to reiterate that by
 4   filing that --
 5           THE COURT:  Say that again.
 6           MR. HANNA:  Sure.  So my whole concern was if documents
 7   they designate as confidential, they are going to want us to
 8   file basically the whole -- all motion practice under seal.  If
 9   you're going to want that to happen you're the ones that should
10   have the, the burden of proving that, because that's what the
11   Federal Rules says.
12           THE COURT:  There's a separate, isn't there a separate
13   section on sealing?
14           MR. HANNA:  No, there isn't.  And that's why I wanted
15   --
16           THE COURT:  Yes, there is.
17           Ms. Hardy, can you remind me of the --
18           MR. HANNA:  And just one thing, Judge.  That's why --
19           THE COURT:  I'm asking Ms. Hardy --
20           MR. HANNA:  Sure.
21           THE COURT:  -- Mr. Hanna.
22           Ms. Hanna -- Ms. Hardy, where is --
23           MS. HARDY:  There is a separate section.  I'll find it
24   for you.  Under number 2, Scope of Application, on page 4.
25   Starting with "to the extent any material subject to this
```

```
1    confidentiality order."  It's about the --

2         MR. HANNA:  Page 4.

3         MS. HARDY:  -- 7th line down.  Yes.

4         THE COURT:  So as I read this, Mr. Hanna, all that is

5    saying is that if you intend to file something that has been

6    designated as confidential in a document that is filed, then

7    you give the other side notice, and so that other side has the

8    opportunity to file a motion to seal, and this says to seek an

9    appropriate protective order, but it really should say sealing

10   order under Local Rule 5.3, if desired.

11        So all, as I'm reading this, this just says if you want

12   to file it under -- if you want to file it in a motion to

13   compel, if you want to file it in a motion -- responsive motion

14   for summary judgment or with anything like that, all this says

15   is give the defense notice and then the onus will be on the

16   defense to file a motion to seal.

17        MR. HANNA:  I didn't think that was that clear.  And

18   that's the whole reason why I wanted to add that page that I

19   initially thought was from the Eastern District, but it was

20   actually from a judge's, because that was a procedure for

21   filing under seal.  I just want it to be abundantly clear that

22   that's not our burden.  That's my whole strife on this.  And I

23   just didn't think their language here was crystal clear on

24   that, to that.  And if --

25        THE COURT:  And really, I would ask Ms. Hardy to
```

1    consider, if that something would give you peace of mind,

2    there's nothing unreasonable about including Judge Lawson's --

3    I guess I should ask you, Ms. Hardy.

4         Is there anything specific about Judge Lawson's

5    procedure, the language that you object to?

6         MS. HARDY:  No, there is not.  And in fact, in an

7    exchange with Mr. Hanna yesterday I told him we would

8    incorporate that language.

9         THE COURT:  Okay.  So that in terms of -- that would

10   make clear that, even clearer, that it wouldn't be your burden

11   to seek a motion to seal documents that the defense is

12   concerned are confidential.

13        MR. HANNAH:  Okay.

14        THE COURT:  So what other specific issues do you have?

15        MR. HANNA:  Sure.  So I'd have to -- okay.  One of them

16   was for how to -- one of the other disputed issues that we had,

17   and I think we discussed it about the other day is how to

18   designate them as confidential.

19        I've had cases before against the FBI where they had

20   documents confidential, but the document was 800 pages, right?

21   So I just, I don't want there to be any confusion as to what's

22   confidential or not.  And I don't want the first page of a

23   document -- I wanted all pages to be clearly designated as

24   confidential.  That's one of the other differences between the

25   two motions.  And I could go over all the differences --

```
 1              THE COURT:  So what paragraph is that?
 2              MR. HANNA:  Sure.  I think they have a -- they have a
 3    -- it's kind of in --
 4              THE COURT:  Let me see whether I can pull up the
 5    redline.
 6              MR. HANNA:  Sure.
 7              THE COURT:  Whether it also is -- okay.  That one is
 8    apparently working.  So the redline version.
 9              MS. HARDY:  It would be, your Honor, on page 7 under
10    paragraph 4, Manner Or Means of Designation.
11              THE COURT:  I lied.  This is giving me technical
12    problems, too.  So just give me a moment to pull this up.
13              MS. HARDY:  And, your Honor, I would just add we don't
14    --
15              THE COURT:  Wait.  I'm sorry.  I'm not going to be able
16    to really give your comment the attention it needs while I'm
17    trying to do this.  So just give me a moment, please.
18       (Brief pause.)
19              THE COURT:  All right.  I've pulled it up again.  Can
20    you tell me where it is?
21              MR. HANNA:  I think it's in two places.  The first
22    place, if want to look at their -- are you looking at my, the
23    draft --
24              THE COURT:  I'm looking at the redline version so I can
25    see both.
```

1        MR. HANNA:  Okay.  So if you look at the redline

2   version, it should be on page 4.

3        THE COURT:  Now, so let me just talk about this.

4        Mr. Hanna, you didn't address in your brief anything

5   about the basis for striking out confidential personnel

6   information, including but not limited to the content of

7   employee personnel files, et cetera.

8        MR. HANNA:  I'm sorry.  Can you repeat that one more

9   time?

10       THE COURT:  You did not address in your brief the basis

11  for wanting to strike out confidential personnel information

12  including but not limited to the content of employee personnel

13  files, which may contain performance ratings, reviews,

14  discipline and salary, benefit and compensation information and

15  investigation files.

16       MR. HANNA:  Right.  So we agree that Defendants can

17  designate any document as confidential.  There's specific

18  categories of documents that are without question confidential,

19  right?  And should be protected.  Social Security numbers,

20  trade secrets, personal contact information, et cetera.

21       Personnel file, I think, can be subject to abuse

22  because things could be included in there that shouldn't

23  necessarily be included in there.

24       THE COURT:  So since you can challenge that, and as I

25  told you, I can --

```
 1          MR. HANNA:  So since we can challenge that, there's no
 2   need to put it in there, right?
 3          THE COURT:  I can talk, I can talk about -- that's the
 4   most obvious area after Knoll vs. Am. Tel. & Tel. Co., 176 F.3d
 5   359, Sixth Circuit, 1999, "courts have repeatedly said that
 6   protective orders limiting the dissemination of non-party
 7   employee files are commonly granted as a means of protecting
 8   the privacy interest of non-parties while yet serving the needs
 9   of litigation."
10          That's the most common areas -- I'm just perplexed why
11   that's the one that you struck out.
12          MR. HANNA:  Your Honor, I would be okay with putting
13   that in there if we include language that says the personnel
14   file, as defined by Michigan's right --
15          THE COURT:  But why?  If you can challenge it.
16          MR. HANNA:  Because it's subject to abuse.
17          THE COURT:  But, Mr. Hanna, you're saying that, but
18   there's a mechanism for you to say this, this was designated as
19   confidential, and the defense can say that is -- that that's
20   because it's part of the personnel file, and you can say no,
21   that's not, and then the judge can decide that.  This is not
22   waiving any rights that you would have to challenge whether a
23   particular document is properly within --
24          MR. HANNA:  So --
25          THE COURT:  -- a personnel file.
```

MOTION HEARING - 7/19/2018

```
 1              MR. HANNA:  And we conferred about this.  And our
 2   position was you can do it anyways, you don't need to
 3   specifically put it in there to do it.  We don't want to put it
 4   in there because we don't want there -- we don't want them to
 5   come back in motion practice and they say, well, they
 6   previously agreed to personnel file and now they are not
 7   agreeing to it.
 8              THE COURT:  Nothing about this is waiving your right to
 9   challenge that.
10              MR. HANNA:  Okay.
11              THE COURT:  Nothing about that is waiving your right to
12   challenge it.  And this is an example, to me, of a fight that
13   just doesn't need to take place.  You're projecting some sort
14   of abuse as if there would be no mechanism for you to challenge
15   any such abuse.  So I think that that this is just an area
16   where I will tell you that my ruling is that, that category --
17              MR. HANNA:  Okay.
18              THE COURT:  -- is absolutely entitled to a protective
19   order.  And in every case where all the cases that have
20   followed Knoll said personnel files are considered -- a
21   category of documents, personnel files of non-parties, in
22   particular, that are entitled to a protective order, in all
23   those cases, there is a potential for abuse.  But there is
24   always a mechanism for saying hey, this document is not
25   actually part of a personnel file, and it shouldn't have been
```

1    deemed confidential.

2              MR. HANNA:  Okay.  We'll, we'll --

3              THE COURT:  I'm on 10, and you're saying -- and then I

4    know you added (e).

5              MR. HANNA:  All -- there's a bunch of little issues

6    Defendants conceded to those before.

7              THE COURT:  I don't really understand -- what is

8    paragraph (e)?  What is that about?

9              MR. HANNA:  (e) on what, are you looking at?

10             THE COURT:  On the redline page.  You included, the

11   parties reserve the right to designate any document as

12   confidential and does dispute any confidential designation made

13   -- okay.  That, isn't that already covered?

14             MR. HANNA:  I -- what we ended -- so at the end of the

15   conferral, they said no, we want it in there.  I said okay,

16   fine, put it in there.  But just to make sure, because I think

17   certain judges may look at it differently or maybe not and I

18   don't know.  Just out of an abundance of caution, let me just

19   add that language in there, there's no presumption that because

20   we included in the definition, that we're automatically

21   agreeing it should be in there.

22             THE COURT:  I'm just going to read what it says --

23             MR. HANNA:  Sure.

24             THE COURT:  -- that under (c).

25             MR. HANNA:  Sure.

```
 1            THE COURT:  It says, "provided, however, that by
 2   agreeing to this order, no party waives the right to challenge
 3   any other parties' designation of any document or other
 4   material as confidential."
 5            Then there is the section that talks about what to do
 6   when -- I don't know that section off the top of my head.
 7            Then it says, "protective orders objections not waived.
 8   The foregoing is without prejudice to the right of any party to
 9   this order to apply to the Court for a protective order to
10   resist or compel -- to seek to modify to any relief -- to
11   object to the use -- let me see.  That's not the one I'm
12   thinking.
13            Isn't there a section that talks about what to do if a
14   party wishes to -- Ms. Hardy?
15            MS. HARDY:  Yes.  It's objections to designation.  On
16   the redline copy, it's at the bottom of page 14.
17            MR. HANNA:  Judge, there was a couple redline copies.
18   Which one are you looking at right now?
19            MS. HARDY:  On Defendant's proposed --
20            MR. HANNA:  Defendant's redline or Plaintiff's redline?
21            THE COURT:  This is the one the redline that is
22   attached to the defendant's.  And it says, yeah, any party may
23   at any time request in writing that any information or document
24   designated as confidential be released from.  Okay.  And that's
25   what we were already talking about.
```

MOTION HEARING - 7/19/2018

```
 1          MS. HARDY:  Correct.

 2          MR. HANNA:  So what harm is there to add the language

 3    that, that I suggested?

 4          THE COURT:  Frankly, I do think that it is redundant.

 5    And I will say this:  To the extent that you were objecting

 6    without the addition of that, of your requested reservation in

 7    rights paragraph, that objection just doesn't make sense,

 8    because you already have the right to object.

 9          So we were also talking about your concern about

10    identifying each page as confidential.

11          MR. HANNA:  I mean, that's one of them.  A lot of these

12    other issues we previously agreed to, the parties already

13    conceded to in the conferral process.  We can go over line by

14    line.

15          So the first one is, yes, copying.  I wanted -- I

16    wanted each and every page, and not necessarily a document,

17    because sometimes a document contains multiple pages, just so

18    there's, out of an abundance of caution and so there's no

19    confusion, I wanted every page to be clearly designated as

20    confidential.

21          THE COURT:  Ms. Hardy, how do you tend to designate

22    documents as confidential?

23          MS. HARDY:  We have no objection to that request.  So

24    if that's preference, we will mark every single page and assume

25    of course Plaintiff will do the same.  So we can just make a
```

1    minor change to, under Manner Or Means of Designation, and the,

2    and affixing the legend as provided under paragraph (1)(h)(2)

3    to each and every page containing, that's an easy

4    non-controversial issue.

5              THE COURT:  Okay.

6              MR. HANNA:  If Defendants will agree to the other easy

7    non-controversial issues that the parties have previously

8    agreed to, then I think we can be done with the hearing.

9              MS. HARDY:  I don't know what he's referring to.

10             THE COURT:  Okay.  Let's go over some of them, because

11   I think there are some others that are more sticky.

12             There was the issue about copying.

13             MR. HANNA:  I think in the conferral I started

14   yesterday, they said they would agree to that, but you can ask

15   them.

16             THE COURT:  Ms. Hardy?

17             MS. HARDY:  Well, you know, one of the problems that

18   keeps being referenced here in this reference to agree, is in

19   the process of negotiating with Mr. Hanna to try to get a deal,

20   there were some agreed -- preliminary agreements made, assuming

21   we could get a deal which we didn't get, and we continued to

22   try as of last night to bring this to closure so we could avoid

23   this hearing.  So there are some issues that, because we didn't

24   get a deal, we will not --

25             THE COURT:  All right.  I'm just trying to figure out

```
1    right now, so that we can, we can have an agreement.  I think
2    that I've ruled specifically on the one area that I thought was
3    pretty crystal clear, and that is to include -- because what I
4    don't want to happen, Mr. Hanna, is that if I allow you to
5    strike out the confidential personnel information, I don't want
6    it to appear that I -- that under the assumption that they
7    could identify it as confidential anyway, I don't want it to
8    appear that I didn't agree with them, that that area, that that
9    category is entitled to a protective order.
10             MR. HANNA:  That's crystal clear.
11             THE COURT:  So what, what areas, other than what we've
12   spoken about, what areas are left for discussion?
13             MR. HANNA:  Okay.  So then -- let me go to -- okay.
14             So for the use, Limitations on Use of Confidential
15   Information --
16             THE COURT:  Can you tell me what page?
17             MR. HANNA:  So, okay.  I was looking at a different
18   draft.  But you're going based on their redline draft, and it
19   will be page 9.
20             THE COURT:  Okay.
21             MR. HANNA:  It said testimony, and I said or potential
22   testimony, so that would include people who don't end up
23   becoming witnesses in the case, but in case we are discussing
24   these issues with them.
25             THE COURT:  What section are you talking about?
```

1        MR. HANNA:  (e), page 9 (d).  I just added testimony or

2  potential testimony.  And this is something Defendants

3  previously agreed to.

4        THE COURT:  Okay.  Also, there is a redline for who

5  have a reasonable need to review the material.

6        MR. HANNA:  Yeah.  I just changed it to, "in the course

7  of or connection with the litigation."

8        THE COURT:  But I don't know whether that, that part is

9  in dispute.

10        MS. HARDY:  It is in dispute.  We do feel it's

11  necessary to have that language, "a reasonable need to review."

12        THE COURT:  Is that defined anywhere?

13        MS. HARDY:  I do not believe it is.  That's something

14  that if we felt that that had not been honored, we have to just

15  present argument on why we thought that they were unreasonably

16  showing confidential documents to witnesses that did not need

17  to see them, or to even people that they are interviewing that

18  do not need to see them.

19        It could -- if there's not some limitation, it could be

20  a big loophole to the whole concept of the confidential

21  documents not being spread around to other employees at the

22  station.

23        MR. HANNA:  The thing of it is, there's, there's a

24  defined limited purpose of these documents in the beginning,

25  and it's limited to the litigation.  So anybody we're showing

1    it to are potential witnesses to the litigation.

2         THE COURT:  Well, I think --

3         MS. HARDY:  Not necessarily.

4         MR. HANNA:  And I will say that --

5         THE COURT:  Okay.  So as you're saying it, that means

6    that you could show the documents to anyone who you might,

7    might have testify, even if you don't actually have an

8    intention to have that person testify.

9         MR. HANNA:  No.  I mean, if I had -- if I didn't have

10   an intention in the beginning, then no.  But if I don't know

11   what he may or may not know, and we're showing him documents to

12   refresh his recollection, I want to have the ability to do that

13   if he doesn't end up testifying.  And then for them not to come

14   back and say, well, you showed it to this person, you never had

15   him testify, you showed it to him in bad faith, and he was a

16   former employee who was a potential witness.

17        Again, the limited scope of this application is for

18   purposes of litigation.  So as much as their concern is we are

19   using it outside that scope.  Limited scope is defined and not

20   in dispute.

21        MS. HARDY:  The concern is more that a witness could be

22   shown a document that doesn't need to see somebody else's

23   performance reviews for their testimony.  Whether they testify

24   or don't testify, it's not necessary, that confidential

25   information of another employee, be shown to them.  And that's,

```
 1    that's what the concern is.
 2            MR. HANNA:  That's seriously cripple our depositions.
 3    So they are going to be able to dictate what documents I can
 4    question a certain witness on?  Well, no, that's her personnel
 5    file and just because you thought that she may know about his
 6    sexual harassment, you can't show him his disciplinary record?
 7            I think since --
 8            MS. HARDY:  Your Honor, both parties to this agreement
 9    have to make good faith judgments and both will be held
10    accountable if they fail to make good faith judgments.  And as
11    you repeatedly pointed out --
12            THE COURT:  I think that --
13            MS. HARDY:  -- it's a process.
14            THE COURT:  I would prefer to use a language that we --
15    that there is some precedent on.  I don't know whether -- I
16    haven't seen any precedent.  But for example, if the document
17    is relevant to that witness or that witness's testimony, that
18    at least gives the Court some basis if there's a dispute to say
19    I know what that means.  Whereas reasonable need is -- that's,
20    that's not otherwise defined in the case law, in terms, as far
21    as I know.
22            MS. HARDY:  Yeah.  You know, that makes imminent sense
23    to me.
24            MR. HANNA:  Just for clarity, Judge, let's
25    hypothetically, let's say I have a witness that, the hostile
```

MOTION HEARING - 7/19/2018

31

```
1   witness that says I wasn't aware of that sexual harassment that
2   Malcolm did, right?  And but I know he was in the vicinity on
3   that date.  And then I show them the disciplinary record which
4   says this witness, other witness said this happened there on
5   that date.  So you don't remember this happening?
6           That type of document is not necessarily, or may or may
7   not be construed as relevant to that witness, and I just don't
8   want to deal with that headache.
9           THE COURT:  Why is -- the burden of relevance is low.
10          MR. HANNA:  Okay.
11          THE COURT:  And relevance means any tendency to make an
12  asserted fact -- I'm totally paraphrasing here -- so any
13  tendency.
14          MR. HANNA:  Okay.
15          THE COURT:  So I don't want that definition to be based
16  upon either party's unilateral view of the case, nor any
17  party's unilateral view of what's reasonably necessary.  And
18  that's why judges are used to making decisions on relevancy in
19  hearing both sides.
20          So the way that you explained it, the fact if there's a
21  corresponding date -- I don't want to say I would rule a
22  particular way, but I would at least certainly understand your
23  argument that it was, it was relevant to that party's
24  testimony, or potential testimony.
25          MR. HANNA:  And I think the theme of a lot of this is
```

```
 1    just I'm very careful.  And I just want to make sure that I'm

 2    covering everything and everything is clear.  I don't want to

 3    deal in that hypothetical situation that I just laid and then

 4    they are saying no, you can't question to that and now we're

 5    having to call the judge to get a hearing in the middle of a

 6    deposition.  I just want it to be clear.

 7              Again, and it seems the theme of their concern is,

 8    well, they are going to take this to the media or whatever.

 9    There's a limited scope --

10              THE COURT:  See, I want you to stop doing that.

11              MR. HANNA:  Okay.

12              THE COURT:  Because you want to, like, talk about your

13    big issue, and that's just not productive to us trying to come

14    to an agreement.

15              MR. HANNA:  Fair enough, Judge.

16              THE COURT:  And there's huge suspicion on both sides.

17    Both sides are anticipating bad faith and bad conduct on the

18    other side.  And so I would say to both sides, don't engage in

19    bad conduct, and it would be helpful if there is an ability to

20    be able to engage with each other with an expectation of

21    civility from the other.

22              MR. HANNA:  Sure.

23              THE COURT:  That's the ideal situation.  That way, you

24    can cut through a lot of stuff.

25              MR. HANNA:  Sure.
```

```
 1            THE COURT:  I do think -- I'm not saying -- I'm saying
 2   your word for it that you're just being extra careful.  As I
 3   said, sometimes when you say you're being extra careful, I
 4   think you're reading things into sentences that just aren't
 5   there, or objecting to things based upon a concern that frankly
 6   I think is not reasonable.  That's the big picture part of it.
 7            In terms of that, this sentence, as I said, I would
 8   change (d) to deponents, witnesses, and/or their counsel in the
 9   course of, or in connection with their testimony.
10            So what I want to do is take it as it's already been
11   redlined, but add to it.  How does this sound:
12            Deponents, witnesses and/or their counsel in the course
13   of or in connection with their testimony or potential testimony
14   in litigation, including but not limited to deponents or trial
15   witnesses who may be employees of the party, but only documents
16   that are relevant to any witness's testimony or potential
17   testimony may be shown to that witness or potential witness
18   and/or their counsel, or his or her counsel.
19            MS. HARDY:  That makes a lot of sense to the defendant.
20            MR. HANNA:  That's good with me, your Honor.
21            THE COURT:  Okay.  Do you guys need me to say that
22   again?
23            MR. HANNA:  I haven't been writing this.  I don't know
24   how -- is there going to be an order with these or?
25            THE COURT:  Yeah, but I'm not drafting it.
```

MOTION HEARING - 7/19/2018

 1         MS. HARDY:  Mr. Davis is taking careful notes.  But I

 2    think he would appreciate one more read through of that.

 3         THE COURT:  Sure.

 4         MR. HANNA:  Thank you.

 5         THE COURT:  So it's all of (d) with the redline.  So

 6    accepting all the redlines and the underlines.  And then saying

 7    but only documents that are relevant to any witness's testimony

 8    or potential testimony may be shown to that witness or

 9    potential witness and/or his or her counsel.

10         Okay.  Now it seems that (f) would already be covered

11    by what we just said.

12         MS. HARDY:  I would agree.

13         THE COURT:  Mr. Hanna?

14         MR. HANNA:  I mean, it's just one of those things that

15    I added for clarity, but we're here, you're saying it covers

16    it, it covers it.

17         THE COURT:  Well, and that's also it says reasonably

18    need.  And like I said, that's not a definition that I know how

19    to evaluate.

20         MR. HANNA:  Okay.

21         THE COURT:  So we'll delete (f).

22         MR. HANNA:  Okay.  Judge, I think you did just, just,

23    and I'm going over it, you did clarify that the changes will be

24    made to the legend, which is on page 5 to confirm that that

25    confidential designation will be on each and every page?

1        THE COURT:  What I heard Ms. Hardy say is the defense

2   agrees to that.

3        MS. HARDY:  That's correct.  One thing I was unclear on

4   was when we were back on the section dealing with copies, we

5   object to the elimination of that section.  And I don't know if

6   the Court ruled on that or not.

7        THE COURT:  Actually, I thought that -- I had not heard

8   that there was a continuing dispute regarding that.  So what

9   page is that on?

10       MS. HARDY:  That is page 14 of the redlined version

11  that the Court is looking at.  Plaintiff seeks to eliminate it

12  altogether, and that's what Defendants object to.  We think it

13  just creates too big a loophole.

14       THE COURT:  What's your objection, Mr. Hanna?

15       MR. HANNA:  A loophole for what?

16       THE COURT:  That copies of confidential documents may

17  be treated as not protected by the protective order.

18       MR. HANNA:  Of course they are treated as --

19       THE COURT:  What's wrong with including that language?

20       MR. HANNA:  I mean --

21       THE COURT:  And I'll give you an example.  Let's say

22  that you come by a document that you have received from the

23  defense, and defense has said this is, this is confidential.

24  You haven't challenged that at all, but another witness happens

25  to have that document and gives it to you.  Does that mean that

1    you have the right to use that document in the manner that's

2    inconsistent with the protective order?

3         MR. HANNA:  If we initially obtained it from a third

4    party?

5         THE COURT:  No.  I didn't say if you initially obtained

6    it.  I'm saying if you've already received.

7         MR. HANNA:  So we conferred about this.  Their whole

8    concern was if we were to make photocopies without affixing the

9    confidential, which is basically altering the document and copy

10   it without the confidential designation.  So our proposal, I

11   said that doesn't even make sense, but I'm happy to add

12   language that says the parties shall not -- shall not, you

13   know, alter any copying of the documents and shall ensure that

14   all copies made of confidential documents contain the

15   confidential designation on them, or something on that effect.

16        THE COURT:  So again, what's wrong with including this

17   language?

18        MR. HANNA:  If I get a, if I get a document from my

19   client or what have you, and they want to designate it as

20   confidential, for their reason, if I obtained it separately,

21   then how is that still confidential?  I mean, they could still

22   move for a protective order, I guess, if I'm the one producing

23   it, but if they are concerned about the documents they produce,

24   then no, then that's fine.

25        Yes, of course, if they give me a document, I make a

 1    copy of it for a deposition purpose, of course, that copy of it

 2    is equally confidential as the original document.  And again,

 3    when we conferred, their stated concern was, well, we don't

 4    want anybody to copy a document without the confidential

 5    designation.

 6           So my solution to that was, okay, we'll add a provision

 7    in there saying you're prohibited from making any copies of

 8    confidential documents that do not contain the confidential

 9    designation on it.

10           THE COURT:  Does it say that there?

11           MR. HANNA:  It doesn't say it in this one, but that was

12    part of our conferral.  We're very happy to include that

13    language.  And I e-mailed them about it last night.

14           THE COURT:  That's your intent, Ms. Hardy, that the

15    parties cannot make copies of documents and block out the

16    confidential?

17           MS. HARDY:  I think that goes without saying.  I mean,

18    no, that was not the intent in this particular language.  It

19    was a scenario the Court identified, that if we mark something

20    as confidential and they know it's been marked as confidential,

21    they happen to obtain it through some other party or some other

22    third party witness, it should be treated as confidential.

23           THE COURT:  What if they already had it?

24           MS. HARDY:  Well, I think even if they already had it

25    going forward, certainly before we mark something confidential,

```
 1    we wouldn't have standing to complain that they had
 2    inappropriately distributed something because they wouldn't
 3    know.  But once it's been marked as confidential, they, if they
 4    disagree with that marking, they can challenge it and then that
 5    can be resolved, but otherwise, we've indicated, we believe it
 6    is confidential pursuant to this order and should be treated as
 7    such.  And it doesn't matter how they got their hands on it.
 8    What matters is the document itself and the designation on it.
 9    And if they don't bother to challenge it, then they should
10    respect it as confidential.
11             THE COURT:  Let me just say something here.
12             As I'm reading this, I don't believe it says that the
13    producing party is the only party that can designate a document
14    as confidential.  Would that be accurate?
15         MS. HARDY:  Yes, I think -- yes, that's accurate.  I
16    think that makes sense.  I mean, we may have documents of his
17    client's that they would -- which we are producing to them in
18    response to a request, but they would want them marked
19    confidential.
20         MR. HANNA:  This is the problem.  We've sent them a
21    Right To Know Act request for the personnel file, they haven't
22    produced it.  They haven't produced any of the documents.
23             THE COURT:  That's not getting to -- I don't want, I
24    don't want to take this off on --
25             MR. HANNA:  Okay.
```

MOTION HEARING - 7/19/2018

39

```
1          THE COURT:  -- talk about issues that are not currently
2   before me.
3          MR. HANNA:  This is --
4          THE COURT:  Is it true, Mr. Hanna, that defense might
5   have documents related to Ms. Edwards that you want to be
6   designated as confidential?
7          MR. HANNA:  I'm sorry.  Can you repeat that, Judge?
8          THE COURT:  Is it true that the defense would have
9   documents that are related to Ms. Edwards that you would want
10  to be treated as confidential?
11         MR. HANNA:  I'm sure they have some.  I have to see
12  them.
13         THE COURT:  That means that you want to designate those
14  documents as confidential, so it does not necessarily have to
15  be the producing party that designates documents confidential.
16         MR. HANNA:  Well, the documents they have of hers that
17  they are going to give to me, they are still the producing
18  party.
19         Fair point.  Like if they have her Social Security
20  number, I'm sure we would want that to be confidential.  Fair
21  point.
22         THE COURT:  So it's not so much whether or not -- it's
23  not so much who produced the document, it's the nature of the
24  document.  That, in that case, if you received a document from
25  a third party, and you know that the defense has designated
```

MOTION HEARING - 7/19/2018

40

```
 1   that as confidential, why wouldn't that, that designation apply
 2   to the copy that you received from a third party?
 3              MR. HANNA:  This scenario, Judge, was never discussed
 4   before.  They've agreed to take out the copy section before in
 5   the conferral, if you look at the final draft.
 6              THE COURT:  Again, when I ask you things, and you talk
 7   about other stuff --
 8              MR. HANNA:  What I'm saying is I agree with you.
 9              THE COURT:  -- that's not helpful.  I'm trying to
10   figure out here whether or not you'll agree to include the copy
11   section.
12              MR. HANNA:  I will agree based on the logic you
13   presented right now.  What I'm saying is that we never
14   discussed this before, but --
15              THE COURT:  That's --
16              MR. HANNA:  That's fine.  I agree.
17              THE COURT:  -- I'm not trying to rehash old
18   discussions.
19              MR. HANNA:  Sure.  I agree.
20              THE COURT:  All right.  So the copy section will stay
21   in.
22              There's some dates here, some time periods that the
23   parties disagreed on.  Fourteen days, 7 days.
24              Parties, have you all conferred on that?
25              MR. HANNA:  Not since we -- they filed.  We previously
```

```
 1    agreed to the dates that I had in my motion.  But one thing
 2    though, if we could go back, if we could go back to page 9,
 3    Judge?
 4              THE COURT:  No.  Since we're here --
 5              MR. HANNA:  Okay.  What page are you on?
 6              THE COURT:  I'm on the same page.  I'm on page 14.
 7              MR. HANNA:  Okay.
 8              THE COURT:  Where it says 14 days versus 7 days.
 9              MS. HARDY:  I think 14 days is more reasonable,
10    considering it's after receipt of a transcript.  I mean we
11    don't want to be making hasty decisions.  So I think we need
12    time to go through and consider and talk to our client, and
13    find out whether there's an issue even worth pursuing.  Seven
14    days is just a really truncated time period for that process.
15              THE COURT:  Mr. Hanna?
16              MR. HANNA:  I mean, again, they previously agreed to 7
17    but I don't care.  That's fine.  We can make it 14.
18              THE COURT:  Okay.  Then we'll make that 14.
19              Okay.  So you said page 9?
20              MR. HANNA:  Yes, ma'am.
21              THE COURT:  Okay.
22              MR. HANNA:  So just for on the top of it, (b), I just
23    wanted to clarify that we can share this with other employees
24    of our respective law firms, which includes without limitations
25    lawyers.  And they didn't have that language.  They previously
```

1  agreed to it.  They didn't have it in the version they filed.

2  I don't know if they dispute it now or not, but I just want

3  that in there.

4          THE COURT:  This sentence doesn't make sense.  And

5  their employees, paralegals.

6          Ms. Hardy?

7          MS. HARDY:  I think the way it's written includes

8  addresses the concern but I don't have a problem with the

9  language.

10          THE COURT:  Okay.  I think we've dealt with the rest of

11  this page.

12          All right.  So let's then, I don't know whether we've,

13  we've dealt with the most important things.

14          Going to, let's start on page 1.  There's the whereas

15  language.  First there's the title.  I don't understand the

16  dispute over the title.

17          MR. HANNA:  I think either title is fine.  We just, the

18  plaintiff tried to simplify it and took out a lot of the

19  language Defendants initially agreed.  If they don't disagree,

20  we could keep the language we previously agreed on.  If we want

21  to go over it line by line.

22          THE COURT:  I'm not sure what that means.  You're fine

23  with the original language?

24          MR. HANNA:  Well, the language I put in there just says

25  whereas the parties are ordered to treat certain discovery

1    materials confidential --

2          THE COURT:  No.  I'm talking about the title now.

3    Confidentiality order governing production of other discovery

4    -- production or other discovery of confidential information.

5          MR. HANNA:  Either one is fine.  I don't --

6          THE COURT:  So I'm kind of confused.  So are we going

7    to go back to the original then?  I don't think the title is

8    very meaningful, to be honest with you.

9          MR. HANNA:  Yeah.  I don't -- doesn't --

10         THE COURT:  Okay.  So the whereas --

11         MR. HANNA:  I don't think there's anything substantive

12    there.  The differences are based on drafting and conferral,

13    but I don't think there's any substantive.

14         THE COURT:  I think there is, though.  Because the way

15    that the redline says the parties are ordered to treat certain

16    discovery materials as confidential, the Court is not ordering

17    the parties to treat certain documents as confidential.  The

18    Court is saying, an order for the Court would be this is the

19    procedure for designating documents as confidential.  Here are

20    some categories that are, you know, generally considered

21    confidential.  Here is how you object to the designation of

22    confidentiality.

23         MR. HANNA:  What would be your proposed language,

24    Judge?

25         THE COURT:  I don't see anything wrong with the initial

```
 1    whereas language.
 2              MR. HANNA:  Okay.  That's fine.
 3              THE COURT:  Okay.  Strike out confidential at any time
 4    and -- I don't know what that's about.
 5              MR. HANNA:  Which page are you on?
 6              THE COURT:  Two.  I'm going in order now.  Just trying
 7    to knock it out one by one.
 8              MR. HANNA:  Well, I think the concern there was, you
 9    know, they produce a document and five months later they say,
10    well, this is confidential, it should be confidential.  So we
11    were saying look, just designate it as confidential on
12    production and don't try to later on come in and have us
13    deal -- because the problem with that is what if we do have
14    copies of it listed as not confidential and they later on say
15    it's confidential.  That can cause some confusion.  So we're
16    saying, look, if you want to designate it as confidential, just
17    do that from the beginning.
18              THE COURT:  I think if you delete it, it actually means
19    if something can be designated as confidential at any time.
20    There's no, there's no limitation in the --
21              MR. HANNA:  Either way.
22              THE COURT:  Either way.  And if a party thinks it was
23    made too late, then they have a mechanism for objecting.
24              MR. HANNA:  Maybe we should add language that says as
25    confidential the onset of production or something of that?
```

MOTION HEARING - 7/19/2018

1      THE COURT:  No, I don't.  I don't think -- I don't want

2   to anticipate what might happen that would lead to another

3   party, to a party not designating something as confidential at

4   the initiation of production.

5      MR. HANNA:  Yeah.  I mean, and I think --

6      THE COURT:  There's an argument to say, well, this is

7   not fair, because you've had this for months and you didn't

8   designate it as confidential.  And in the meantime, we've used

9   this in this way.  And that can be raised, but I don't see a

10   practical benefit of trying to --

11      MR. HANNA:  Okay.  All right.  That was the concern

12   that we conferred on was -- I just don't want there to be

13   confusion we have a file on the record and we think it's not

14   confidential since it was originally produced, and that's what

15   I'm looking at in my outline when we're preparing motions, and

16   then later on you designate it as confidential, and we just

17   filed it.  I just want to avoid that scenario by having it

18   marked as confidential from the beginning, but I see your

19   point.

20      THE COURT:  I'm wondering, is there -- I don't recall

21   if there's anything -- is there any mechanism for having a log

22   of documents that are identified as confidential and the date

23   they are identified as confidential?

24      MR. HANNA:  That would solve it, if there was a log

25   that says Bate stamp YXZ are confidential.

```
 1              MS. HARDY:  On page 11 of the redlined version, there
 2    is the last sentence on that page addresses that issue, and it
 3    was stricken by Mr. Hanna.
 4              MR. HANNA:  Well, the parties conceded that it be
 5    struck.  And I don't remember the conversation there, but it
 6    wasn't --
 7              THE COURT:  Let me just read this.
 8              MS. HARDY:  It doesn't address the log concept, which I
 9    have no objection to, but it does address identifying documents
10    by Bates numbers so that it's -- there's clarity.  For
11    instance, if there was a confidential designation added after
12    the initial production, we would notify them in writing of the
13    Bates number, so they could then pull anything with that Bates
14    number in their stack of documents, and make sure that it's
15    treated as confidential thereafter, short of a challenge.
16              THE COURT:  Well, I think this, as read, would be
17    counter to the idea that the confidentiality, you know, the
18    confidential designation has to be made on each page.  Because
19    as I read this, it would say you can also designate by sending
20    the Bate stamp number instead of -- so I do think that's
21    contrary.  But I think it should say a party must advise -- a
22    producing party must advise counsel of record of the Bate stamp
23    number and maintain a log of the Bates numbers and the dates on
24    which the documents were designated as confidential.
25              Mr. Hanna, would that address your concern?
```

MOTION HEARING - 7/19/2018

1           MR. HANNA:  Yes, Judge.

2           MS. HARDY:  That's reasonable, and certainly no

3   objection on our end.

4           THE COURT:  All right.  So we were on -- okay.

5           So now on pages 2, starting at 2, 1 to 3, that was an

6   issue that the defense had regarding changing the definition of

7   confidential information from not generally known to the public

8   or third parties to publicly available.

9           MS. HARDY:  That language came from case law in this

10  circuit.

11          THE COURT:  Yeah, I did read that.  I'm just wondering,

12  Mr. Hanna, whether there is any reason for changing it from not

13  generally known to the public or third parties.

14          MR. HANNA:  The Eastern District of Michigan's proposed

15  protective order on their website says it's publicly available,

16  not generally known to the public.  Because I think that's just

17  not as -- it's a little more confusing.  And the parties agreed

18  to, conferred and they previously agreed to that.

19          And I've had a, recently had an order by Judge

20  (unintelligible) nearly identical confidentiality agreement

21  than the one I'm proposing here entered, but --

22          THE COURT:  I don't know that -- it does appear to me

23  that not generally known is a bit broader than publicly

24  available.  It would be my sense -- I haven't -- that's not

25  something that, Mr. Hanna, you've briefed on.  The defense did

 1  identify cases that used the terminology generally not -- not

 2  generally known to the public or third parties.

 3          MR. HANNA:  Judge, I have the default protective order

 4  for the Eastern District of Michigan, if you want to take a

 5  look at it.  It says not publicly available.

 6          THE COURT:  And I have that, too.  But at the same

 7  time, I don't want to minimize the importance of the local

 8  rules.  At the same time, if we're looking for authority for a

 9  proposition, that usually is found within case law.  I haven't

10  seen it, even though that's language in, in the protective

11  order.

12          MR. HANNA:  I don't think that was a disputed issue as

13  far as that particular language in that authority, but I could

14  be wrong, to be honest.

15          THE COURT:  No.  You're right.  But at the same time,

16  it's, it appears to be -- I guess I don't -- what, what is your

17  concern, Mr. Hanna?

18          MR. HANNA:  I just think it's a little -- it's not as

19  clear as what's generally known to the public.  It's publicly

20  available if it's something posted online.  That's publicly

21  available.  If it's a newspaper article, that's publicly

22  available.

23          THE COURT:  See, I think that something might not

24  generally -- might not be generally known -- I think something

25  might be publicly not -- I'm sorry.  Something might not be

```
 1    publicly available but it might be generally known.
 2            MR. HANNA:  Something might be publicly available, but
 3    not generally --
 4            THE COURT:  Might not be publicly available --
 5            MR. HANNA:  Right.
 6            THE COURT:  -- but it might be generally known.
 7            MR. HANNA:  Right.  So it could be better the other
 8    way.
 9            THE COURT:  So --
10            MR. HANNA:  That's a fair point.  It's not a big
11    dispute.  That's fine.  If your Honor feels --
12            THE COURT:  I'll give you an example.  You have some,
13    some allegations in your complaint that are now, you know,
14    generally known to the press, but the source of them is not
15    publicly available.  Do you understand what I'm saying?
16            MR. HANNA:  Yup.
17            THE COURT:  So it can make a difference.  And even
18    though the model says publicly available, I just feel more
19    comfortable going with the language that already should have
20    been sanctioned in the case law.  Maybe not publicly available
21    has been sanctioned in case law.  I haven't seen those cases.
22    And I don't know the source for the local rule.
23            MR. HANNA:  I'm fine either way, Judge.  Whatever you
24    feel is, is more appropriate.
25            THE COURT:  Okay.  There is -- Mr. Hanna added some
```

MOTION HEARING - 7/19/2018

50

1  language about sensitive personal information, i.e., Social

2  Security numbers, home addresses, telephone numbers,

3  confidential personnel information, but he added some more

4  general descriptions.  Is there any objection to those general

5  descriptions?

6        MS. HARDY:  I don't have an objection to the addition,

7  as long as there's not a deletion of what we just talked about,

8  which I understand from the Court, there will not be.  And then

9  the only question I have in terms of what he added is a

10 sentence, a party shall not routinely designate as confidential

11 or make such a designation --

12       THE COURT:  Where are you?  Okay.

13       MS. HARDY:  In that same addition on page 3.  "Or make

14 such a designation without reasonable inquiry to determine

15 whether it qualifies for such designation."

16       I think we've covered that topic previously and the

17 Court worked out that language on relevancy as opposed to

18 reasonable.  So I don't know what that adds at this point.

19       THE COURT:  Mr. Hanna, do you want to address this?

20       MR. HANNA:  It's just saying don't mark things

21 confidential for fear of embarrassment if it's not being marked

22 as confidential, because it should actually be a confidential

23 document in good faith.

24       THE COURT:  Here's what I don't want and why I don't

25 like that sentence, is I don't want litigation on that.  I

```
1    don't want anyone to say, well, they didn't conduct a
2    reasonable inquiry.  What's the reasonable inquiry?
3              MR. HANNA:  Okay.
4              THE COURT:  And so to me, it's just, if, if an item
5    should not be marked as confidential, then fight about that.
6    Don't fight about whether the other party made a reasonable --
7    do you understand what I'm saying?
8              MR. HANNA:  Yeah.  That was not the thought that -- my
9    thought was just do this in good faith, not -- but I see your
10   point and I have no objection to taking that out, Judge.
11             MS. HARDY:  So does that mean, your Honor, that there
12   will be the additional language as research and development,
13   commercial or other sensitive information, medical records or
14   trade secrets, and it will end there or with the redline
15   changes, and will retain the prior language on that page, that
16   Mr. Hanna had proposed striking?
17             THE COURT:  You mean, so it leaves the not generally
18   known.
19             MS. HARDY:  Or third parties, and that is not made to
20   the public or third parties, or if disclosed to third parties,
21   would require third parties to maintain the information in
22   confidence.  And then adding the language, starting with, "as
23   researched" through the word, two words, "trade secrets."
24             THE COURT:  Do you have any objection to as research
25   and development, commercial or other sensitive?
```

```
 1              MR. HANNA:  That was my proposed language.  No.

 2              THE COURT:  I'm asking whether --

 3              MS. HARDY:  I don't have an objection to at that.

 4              THE COURT:  Okay.  So we'll just strike out, "a party

 5    shall not routinely."

 6              Then there's by way of example, and for purposes of

 7    this protective, and then it's changed to confidentiality

 8    order.  I don't see a substantive difference.

 9              MR. HANNA:  I mean, I think it's a confidentiality

10    order.  It's not a protective order.

11              THE COURT:  It's under rule -- it's, it's really not a

12    substantive change.

13              MR. HANNA:  No.

14              THE COURT:  It's not.  I mean, these are routinely

15    called protective orders, stipulated protective orders is what

16    they are usually called.  But if a confidentiality order, to

17    me, it's, it's of no substance.

18              And so, Ms. Hardy, do you have any objection to

19    confidentiality order?

20              MS. HARDY:  We'll just have to go through and ensure

21    consistency.

22              THE COURT:  Okay.  It says the following categories of

23    documents and information will generally versus may.  I really

24    don't think any judge is going to be hung on whether the order

25    says will generally or may be considered confidential, so...
```

```
 1          MS. HARDY:  You know, the reason we had "will
 2   generally" is because, you know, we've tried to provide some
 3   kind of general parameters of what the parties understand to be
 4   confidential so we know what we can mark and not mark.  And I
 5   mean that, we all have an obligation to do so in good faith,
 6   but we need some kind of guidance as to what appropriately can
 7   be marked, and that's why there's this language about personnel
 8   files and investigatory reports, et cetera.
 9          And I think "will generally" is referring back to "will
10   generally" the parameters being defined by the protective order
11   as opposed to "may," which is much more --
12          THE COURT:  I understand what your intent was.  What
13   I'm saying though, is if a motion for challenging the
14   designation of confidentiality was presented to me, I wouldn't
15   be hung up on what it says in that paragraph.  I would have to
16   look at whether the specific information should be protected.
17   Because these are general categories, but whether or not the
18   document fits within those categories or -- so I just, I think
19   it's saying "will generally" or "may" is not going to be a
20   decisive factor.
21          I guess, Mr. Hanna, I think that you agree that these
22   categories are generally considered to be?
23          MR. HANNA:  Yeah.  These changes stem from the
24   conferral at the beginning where we were, you know, going back
25   to the whole personnel file, and we just said, look, we just
```

 1    don't want there to be a presumption.  If, if they may be, in

 2    as much as you designate them as confidential, then they are

 3    confidential, but --

 4           THE COURT:  Do you agree that these categories are

 5    generally considered?

 6           MR. HANNA:  I agree proprietary information, I agree

 7    social security.

 8           THE COURT:  You agree they are generally?

 9           MR. HANNA:  Those categories, yes.  The whole dispute

10    that we had or what is or is not included in a personnel file.

11           THE COURT:  I understand.

12           MR. HANNA:  Everything else is yes.

13           THE COURT:  If we say the following categories are

14    generally considered, that doesn't mean that that general

15    classification applies to the specific document that you have a

16    dispute about.

17           MR. HANNA:  Yeah.  I mean this stems from the conferral

18    where --

19           THE COURT:  As I said, I'm not trying to rehash that.

20    I'm trying to ask you whether if we change will generally to

21    are generally.  Because you agree those general categories

22    usually are considered to be -- those are areas that are

23    considered to be confidential.

24           MR. HANNA:  If designated properly, yeah.

25           THE COURT:  That's why I'm asking you.

```
 1            MR. HANNA:  I don't think it's --

 2            THE COURT:  If we change it to "are generally," would

 3   that, because -- would that address your concern that saying

 4   "will generally" would create a presumption?

 5            MR. HANNA:  I, at the end of the day, I don't think

 6   that that's going to substantively persuade you one way or

 7   another, if we ever have this issue.  So I have no objection to

 8   whatever the Court feels is more appropriate.

 9            THE COURT:  So you have no objection to -- or maybe how

10   about saying will generally be considered confidential

11   information, subject to this confidentiality order?

12            MR. HANNA:  But I would want --

13            THE COURT:  I don't see the problem with saying

14   provided that they are designated as confidential.  Do you, Ms.

15   Hardy?

16            MS. HARDY:  I do not.

17            THE COURT:  And then afterwards, instead of "the

18   parties reserved," because I do think that's redundant, you

19   could say this order does not create a presumption that the

20   particular document fits within these categories.

21            What about that, Mr. Hanna?

22            MR. HANNA:  That's perfect, Judge.

23            THE COURT:  Okay.  So on (e), instead of what it says

24   there, say this confidentiality order creates no presumption

25   that a particular document fits within the above described
```

1    categories.

2            Ms. Hardy?

3            MS. HARDY:  Acceptable, your Honor.

4            Are you suggesting that we stay with "will generally,"

5    and then add that language?

6            THE COURT:  Yes.

7            MS. HARDY:  Okay.

8            THE COURT:  Mr. Davis, do you need me to repeat it or

9    do you have it?

10           MR. DAVIS:  I have it this time, your Honor.

11           THE COURT:  Okay.  Thank you.  So then we have the

12   legend.  And you all have agreed to the legend?

13           MS. HARDY:  Correct.

14           THE COURT:  On the beginning of page 6, there's some

15   redlining or there's some additional language, including

16   documents deemed confidential or, or motion practice or

17   briefing in this action.

18           Ms. Hardy, do you have any objections to any of this

19   language?

20           MS. HARDY:  Yes, we do, your Honor.  I mean, this just

21   undercuts the whole notion of the --

22           THE COURT:  What part do you have an objection to?

23           MS. HARDY:  That, that it is not applicable to the

24   motion practice or briefing in this action.  There's a

25   procedure which we discussed earlier, that if counsel intends

```
 1    to use a confidential document, they need to provide notice,

 2    and then we have to decide whether or not we want to pursue

 3    having a motion for to have it sealed or whether or not we will

 4    not make that, that motion.

 5              THE COURT:  Okay.  So I thought that this was all about

 6    the admissibility of evidence.

 7              MS. HARDY:  No.

 8              THE COURT:  That this order shall not govern the use --

 9    oh, it says use or admissibility.  So you're saying the use of

10    any --

11              MS. HARDY:  Right.

12              THE COURT:  -- documents in motion practice.

13              So you're saying that if it's -- if any of the

14    confidential documents are used at trial, you don't have to

15    even go through the whole motion to seal practice?

16              MS. HARDY:  Correct.

17              MR. HANNA:  That's, that's the heart of it.  That's

18    why --

19              MS. HARDY:  But that's --

20              THE COURT:  That's what it says.  But when you added

21    the language "in motion practice," that would mean that the

22    procedures in this order for notifying the other party that you

23    plan to use the document in a motion, and giving the other

24    party the opportunity to file a motion to seal, this would

25    negate that?
```

```
 1              MR. HANNA:  No.

 2              THE COURT:  But that's how it reads.  Because it says

 3    this order governs -- shall -- I'm sorry.  This order shall not

 4    govern the use of any evidence in motion practice or briefing

 5    in this action.  I'm taking out all the other words, but that's

 6    what -- that's, as you added it --

 7              MR. HANNA:  Yeah, my intent --

 8              MS. HARDY:  Ability in a motion practice.

 9              MR. HANNA:  -- is we give them notice if we want to use

10    it for motion practice.

11              THE COURT:  That's already in there.  But what I'm

12    saying is that if you add the sentence, "or in motion practice

13    or briefing in this action," it would give the impression that

14    the order doesn't govern what you're supposed to do in motion

15    practice, and it does govern what you're supposed to do in

16    motion practice.

17              MR. HANNA:  So the intent was -- again, this is the

18    whole confusion of the whole --

19              THE COURT:  I'm not talking about the intent.  I'm

20    just -- please, let's just focus, because I want to go through

21    the rest of it.

22              MR. HANNA:  Yeah.

23              THE COURT:  As this is written, it suggests that this

24    order shall not govern the use of confidential documents in

25    motion practice or briefing.
```

MOTION HEARING - 7/19/2018

```
 1              MR. HANNA:  So does that mean, for example --
 2              THE COURT:  So the paragraph as, as before your
 3    additions, the paragraph means that when you get to trial, if
 4    you want to use a document marked confidential, you just use
 5    it.  You don't have to go through the rigamarole of saying,
 6    hey, I plan on using this document at trial, so therefore the
 7    other party has an opportunity to file a motion to seal.  It's
 8    just you use it in trial.
 9              MR. HANNA:  Well, no because -- I see the way you're
10    interpreting that language, and that was not the intent.  So
11    if, if you want to include it to protect that, or if you want
12    to I guess exclude it to protect what you're suggesting, that's
13    fine.  That was not the intent when it was included.
14              THE COURT:  So why don't we delete -- I think, Ms.
15    Hardy, you don't have any objection to including documents
16    deemed confidential?
17              MS. HARDY:  Yes, that's okay.  It's the, "or in motion
18    practice or briefing in this action."
19              THE COURT:  We'll delete that.
20              MS. HARDY:  And that appears twice.
21              THE COURT:  Yes.  We'll delete both of those.
22              MR. HANNA:  Wait.  So forgive me for my ignorance, so
23    they included, "at trial in this action"?
24              THE COURT:  Right.  Because this language says that the
25    order doesn't govern the use of confidential information at
```

```
 1    trial.
 2              MR. HANNA:  Right.
 3              THE COURT:  And that's -- so that's true.  Everybody
 4    agrees to that.  Right?
 5              MR. HANNA:  Right.
 6              MS. HARDY:  Yes.
 7              THE COURT:  That's what this paragraph says.
 8              MR. HANNA:  Right.
 9              THE COURT:  You changed it to say, "or motion practice
10    or briefing."
11              MR. HANNA:  Right.
12              THE COURT:  This order does govern the use of
13    confidential information in motion practice.
14              MR. HANNA:  By that governing, you're referring to the
15    fact that we would have to say, hey, we intend on using this --
16              THE COURT:  Right.
17              MR. HANNA:  -- in a motion.  You move it to seal.
18    That's fine.
19              THE COURT:  Okay.  Ms. Hardy, at the end, it says,
20    "this order does not affect the applicability of Federal Rules
21    of Procedure 26(c).
22              MS. HARDY:  I just didn't understand what it meant.  I
23    don't know why it was added.  I mean --
24              THE COURT:  Let me just say what I think it means.  I
25    think it means that if there's a dispute regarding whether a
```

1    particular document should be deemed confidential under the

2    agreement, that the court would be required to look at the

3    language of Rule 26(c).

4          Is that what you meant, Mr. Hanna?

5          MR. HANNA:  Yeah.  So I mean the whole, the whole

6    conversation was to ensure that it's not shifting the burden

7    where Plaintiff has to do these things if they want to move for

8    something under seal.

9          So I'm saying that's fine, we'll keep it confidential,

10   we'll let you know before, but the burden is on Defendant to

11   move a document under seal once we provide them notice as

12   indicated in Rule 26(c), protective orders.

13         THE COURT:  Okay.  I didn't think this had anything to

14   do with -- because I think that what I read that as meaning, is

15   that if there is a dispute, that the rules of -- the

16   requirements of Rule 26(c) would be considered by the Court.

17         MR. HANNA:  Correct.

18         MS. HARDY:  It seems harmless.  Again, I'm not quite

19   sure what they are trying to accomplish, but of course the, you

20   know, that rule will be applied and should be considered by the

21   Court.

22         THE COURT:  Okay.

23         MS. HARDY:  We're not attempting to alter anything in

24   Rule 26(c) through this order.

25         THE COURT:  So, so that's --

1           MS. HARDY:  So that's acceptable.

2           THE COURT:  I'll leave that in.

3           We've already talked about the language using Judge

4    Lawson's language, and everybody agreed that that's fine.

5           MS. HARDY:  Correct.

6           THE COURT:  So, Mr. Hanna, you redlined, I think that,

7    Ms. Hardy, you object to the redlining for limitation on use of

8    confidential information under paragraph 3, on page 8?

9           MS. HARDY:  Yes, we do.

10          THE COURT:  Okay.  Mr. Hanna, what was your concern

11   about, "if any and for no other purpose whatsoever"?

12          Or first of all, what was your objection to, "as

13   defined in paragraph 1(a) above," and the language of, "if any

14   and for no other purpose whatsoever"?

15          MR. HANNA:  I honestly don't recall.  It seems kind of

16   harmless either way.  I, I can say that that -- these changes

17   were previously accepted with Ms. Hardy when we conferred.  I

18   honestly don't remember why that -- it seemed like it was just

19   a clarification thing.

20          But as far as the second part, "if any and for no other

21   purpose whatsoever" seems redundant.  Without that, it still

22   defines the limited, the permitted purpose, which is --

23          THE COURT:  Well, it sounds like it's a stylistic

24   issue.

25          MR. HANNA:  Right.

```
 1              THE COURT:  Since there is no objection to the
 2   substance of it, then I think that's just a dispute that we
 3   don't need to resolve.
 4              MR. HANNA:  Agree.
 5              THE COURT:  So I'll just leave that in there.
 6              We already discussed paragraph (b) on 9.  We've already
 7   discussed (d) and (f).
 8              What is the objection, Mr. Hanna, to the end of the
 9   paragraph (h) on page, I think 10?
10              MR. HANNA:  Yeah.  So my initial note, and they
11   previously agreed to this, but my note was we cannot limit our
12   discovery based on third party witnesses' willingness to be
13   bound by confidentiality.
14              For example, if a hostile witness takes a position they
15   will not be bound by the confidentiality order, this order
16   could potentially lead said party to avoid discovery.
17   Providing them a copy of the documentation is one thing.  I
18   would also agree for certain confidential information --
19   anyway.  So essentially we just don't want a situation where we
20   show these -- we have a hostile witness, we're showing them --
21   we want to show them documents, we want to question on them and
22   we're saying you have to agree to this confidentiality order,
23   they are saying we're not going to agree to it, and then I
24   can't conduct discovery.
25              THE COURT:  I thought this is just saying --
```

MOTION HEARING - 7/19/2018

64

1        MR. HANNA:  It says, "and have agreed to be bound by

2    its terms."

3        THE COURT:  So as I read this, that means that if you

4    employ an expert, your expert has to agree to be bound by the

5    terms of this order?

6        MR. HANNA:  I'm not -- I'm okay with that.  If you want

7    to add that, that's fine.

8        THE COURT:  Ms. Hardy, what did you mean by this?  What

9    was the purpose of the second part of (h)?

10       MS. HARDY:  The purpose is just to have a little bit

11   more teeth in it so that the third party individual who has

12   been shown the confidential document understand the

13   significance of the Court's order or of the stipulated order

14   and sign up for the terms of it.  I mean, I don't see it -- I

15   can't imagine why a witness who is operating in good faith

16   would not agree to it.

17       Mr. Hanna can explain to them that what's expected of

18   them, and it just provides greater insurance that the

19   confidentiality will be protected by that third, third party

20   person.

21       MR. HANNA:  But if it's a hostile witness and they

22   don't agree, that means I can't --

23       THE COURT:  Who would be hostile?  I'm just trying to

24   figure out who you're referring to.  Because if you are talking

25   about people who are employed by the parties, by the attorneys,

```
 1    I'm not sure I'm understanding what you mean by a hostile

 2    witness.

 3            MR. HANNA:  Former employees who want nothing to do

 4    with this, and they think -- and they think they could not have

 5    to answer questions by not agreeing.

 6            THE COURT:  Those aren't going to be people who are

 7    employed by you.  You're saying former employees of WXYZ or who

 8    do you mean?

 9            MR. HANNA:  Okay.  So again, Defendants previously

10    agreed, and that was the discussion that I had with them,

11    saying look, I don't want a hostile witness, dada-dada-da.  But

12    I see your point, Judge.  And you are correct, this paragraph

13    says persons retained by the parties.  So I guess you're

14    limiting it to my expert witness, for example, and for that, I

15    have no objection.

16            THE COURT:  Okay.  Ms. Hardy, is that how you see this

17    paragraph?

18            MS. HARDY:  It is, your Honor.  It includes mediators,

19    other professionals who are employed to assist the parties in

20    the litigation process.

21            MR. HANNA:  Yeah.  There's no objection to that, of

22    course.

23            THE COURT:  Okay.  So we'll leave that language in.

24            And it says that the persons listed in subparagraphs --

25    I'm not sure which subparagraphs.
```

MOTION HEARING - 7/19/2018

66

```
1          MS. HARDY:  (c), (d) and (e) at this point because (f)
2    has been eliminated.
3          THE COURT:  (c) or (d).
4          MS. HARDY:  So that includes the independent
5    contractors, experts, consultants, deponents, witnesses.  And
6    it's merely seeking that they be advised of the agreement and
7    the requirements and their obligation to maintain
8    confidentiality.
9          MR. HANNA:  So I guess the issue that I was
10   illustrating in (h) actually applies to this one because this
11   includes deponents and witnesses.  And I wouldn't want any
12   third party witnesses to where, a situation where we're
13   required to get them to agree to certain procedure for us
14   before we can question them on issues.
15         THE COURT:  Okay.  So are you saying that if, Ms.
16   Hardy, that if, if Mr. Hanna is interviewing a former employee
17   of WXYZ, and shows them documents that are relevant to that
18   former employee's testimony, that that former employee is going
19   to be bound by confidentiality?
20         MS. HARDY:  That they will be informed and of their
21   obligation to keep confidentiality, but subparagraph (j) does
22   not require that they agree to be bound by the agreement.
23   That's, that is restricted in (h) to persons retained by the
24   parties in the litigation.  So with respect to experts and
25   mediators --
```

```
 1          THE COURT:  I'm not talking about experts and mediators
 2   or people who are retained.  I'm talking about to the extent
 3   that Mr. Hanna, like I said, is interviewing a former employee
 4   of WXYZ, and shows that former employee relevant documents,
 5   documents that are relevant to that former employee's
 6   testimony, I don't see how that witness or potential witness is
 7   going to be bound by this confidentiality agreement.
 8          MS. HARDY:  But we're not asking that they be bound by
 9   the confidentiality agreement in (j), merely that they go
10   through the paces of informing them of the confidentiality
11   order and that they should keep information confidential.  It's
12   not that they are bound by anything, but it's again, kind of a
13   deterrent, and it will help to limit the amount of information
14   that might otherwise be talked about.
15          So with, with just the former employee scenario, it's
16   just taking that one extra step to say, by the way, this
17   information is confidential, we're asking you to maintain that
18   confidentiality.  We wouldn't have any right of recourse
19   against the individual.
20          THE COURT:  It says it must be kept confidential, and
21   that is the part that is giving me pause.
22          MS. HARDY:  Well, I guess "must" is just a little bit
23   stronger word to impress upon the individual of the importance
24   of it.  But we wouldn't have any right of recourse against that
25   person because they are not signing anything and not agreeing
```

```
 1    that they are bound by the order.  They are just being advised
 2    of the importance of the confidentiality with the hopes that
 3    will have an impact on their conduct.
 4              THE COURT:  Mr. Hanna?
 5              MR. HANNA:  May I suggest that we end this sentence at
 6    "confidentiality order" and so that way, so it would read
 7    persons listed in those paragraphs were provided copies of
 8    confidential documents for purposes of the prosecution -- well,
 9    I would first add who were provided copies for purposes of the
10    prosecution with this litigation, because if it's just us
11    talking about something, that's not the documents.  Shall be --
12              THE COURT:  We talked about showing documents, not just
13    providing them with copies, but showing them documents.
14              MR. HANNA:  Okay.  So because that was disputed
15    language.
16              THE COURT:  Are shown --
17              MR. HANNA:  Right.  So just for the record, that
18    paragraph, that first sentence should be included, correct,
19    "were provided copies."
20              MS. HARDY:  Yes.  I'm glad the Court pointed that out
21    because I object to providing copies.  I don't think this order
22    would ever allow either side to give somebody actually a copy
23    of the document.  They can show it to them in the course of
24    interviews.
25              THE COURT:  That was my understanding.
```

1              MS. HARDY:  Yeah.

2              MR. HANNA:  No.  I didn't mean -- what I meant was show

3      them copies.  So what I meant --

4              THE COURT:  So, Ms. Hardy, do you have any objection to

5      saying persons listed in the subparagraphs who are shown --

6              MS. HARDY:  No, no objection, your Honor.

7              THE COURT:  -- confidential documentation.

8              MR. HANNA:  Okay.  And then of confidential

9      documentation, for the purposes of prosecution of this

10     litigation, shall be advised of the existence of the

11     confidentiality order, and end there.  So we're not threatening

12     them and scaring them from participating in discovery, but also

13     advising them that there is a confidentiality order.

14             MS. HARDY:  I think I have a suggestion.  To make it

15     just a little simpler, that they are advised of the existence

16     of the order and that confidential information should be kept

17     confidential, and take out the language that regarding the

18     requirement that information.

19             I mean, what witnesses have to understand what we're

20     expecting of them, for them to be able to abide.  And this is

21     simply making them aware of what the expectations are.

22             THE COURT:  Mr. Hanna, do you have any objection to

23     "should be kept confidential"?

24             MR. HANNA:  Maybe and that information that they

25     learned from the document -- that they learn from the

```
 1    confidential documentation should be kept confidential.
 2              THE COURT:  I don't know that that's --
 3              MR. HANNA:  Well, I guess it says that designate as
 4    confidential should be kept confidential.  That's fine.
 5              THE COURT:  Okay.  So we'll change that to "should be
 6    kept confidential."
 7              MR. HANNA:  We're taking out the "requirement" and
 8    "must," and changing "must" to "should."
 9              THE COURT:  Yes.  That's, that's right, Ms. Hardy?
10              MS. HARDY:  That's correct, your Honor.
11              THE COURT:  We've addressed the end of paragraph -- of
12    page 11 to have a log created.
13              MS. HARDY:  Yes.
14              MR. HANNA:  That's correct, Judge.
15              THE COURT:  I think that that also takes care of the
16    top of page 12, correct?
17              MS. HARDY:  Yes.
18              MR. HANNA:  Yeah.  I mean page --
19              MS. HARDY:  It does from our perspective.
20              MR. HANNA:  Page 12 just, I guess, reiterates that the
21    producing party must subsequently designate the document as
22    confidential by reproducing a copy of said discovery with the
23    original -- I mean, it's redundant.
24              THE COURT:  We've already dealt with that.
25              MR. HANNA:  Correct.
```

1      THE COURT:  Okay.  What's the deal on page 12?

2      MS. HARDY:  I would think that Plaintiff would want

3  this provision.  I mean, if we were to subpoena medical records

4  of the plaintiff, telephone records, that gives them an

5  opportunity to indicate that those third party documents should

6  be -- have a confidential label on them and treat it pursuant

7  to the protective order.  There may be instances when the

8  defendant would want to mark as confidential.  I think, though,

9  this, the circumstance would more often arise with respect to

10  the plaintiff.

11      THE COURT:  Mr. Hanna?

12      MR. HANNA:  I mean, I'm just trying to take a look at.

13  What I do know is they previously agreed to the language we

14  proposed, but I'm trying to backtrack and think what was the

15  issue here.

16      I mean, would Defendants agree to the language they

17  previously agreed to?  Are they objecting to it and do they

18  have a reason for objecting to what they previously agreed to?

19      THE COURT:  Well, let me ask you this, because this has

20  a specific time period of within 15 days.  I'm not seeing that

21  in your language.  And it says to reference by a Bate stamp

22  number.  When I read the part you struck out, it appears to be

23  a little more specific about the process.  And instead of -- I

24  mean, I'd rather hear from you whether there are any specific

25  portions of the original language that you're objecting to that

```
 1    you have a problem with.
 2            MR. HANNA:  I think the objection was to have them --
 3    initially was that to have Defendant designate documents that
 4    we obtain from third parties, for example, as confidential, but
 5    I think the Court has already addressed that issue, that any
 6    party can designate a document as confidential.
 7            THE COURT:  Okay.  So if you --
 8            MR. HANNA:  I don't -- it's fine.  If you --
 9            THE COURT:  Okay.
10            MR. HANNA:  If you feel like that language is more
11    appropriate, Judge, I'm happy to go with it.
12            THE COURT:  Okay.  We'll leave the defendant's language
13    in there.
14            And we already talked about on page 14 the 14 days in
15    the copies.
16            Then on page 15, there's a five days versus ten days.
17            MR. HANNA:  Well, the first one is, "includes through
18    electronic correspondence to counsel of records."
19            THE COURT:  Okay.  Okay.
20            MR. HANNA:  I mean, Defendants have taken a position in
21    this legislation that they are not accepting electronic service
22    of any discovery.  So we initially e-mailed them our
23    plaintiff's discovery requests, and they said no, mail it to
24    us, and then the dates changed.  But I just want to be able --
25            THE COURT:  Ms. Hardy, do you have any objection to,
```

1  "which includes electronic correspondence to counsel of

2  record"?

3          MS. HARDY:  In this limited instance, no.  We aren't

4  accepting documents, as Mr. Hanna, or production of discovery

5  because it's gotten too chaotic, e-mails going back and forth.

6  So we, we don't otherwise want to waive our right under the

7  rules to have discovery produced via U.S. mail.  But in this

8  instance --

9          THE COURT:  Okay.

10          MS. HARDY:  -- it's acceptable.

11          THE COURT:  We have the five or ten days.

12          MS. HARDY:  I think ten days makes more sense for both

13  sides.  I don't know why we would want to truncate it to five

14  days.  We both have busy schedules and documents need to be

15  reviewed, discussed with clients.  I mean, it just seems ten

16  days is more sensible.

17          MR. HANNA:  I think the initial concern there was how

18  does that play, for instance -- I mean, a lot of times when I'm

19  preparing my motion for summary judgment or whatever, I don't

20  necessarily know all the documents that I'm going to use for

21  that motion, and I just don't want to be having to make these

22  disclosures on documents so far in advance.  That was the

23  concern.

24          THE COURT:  Well, yes, it does require some

25  organization, but I do think that -- I'm not aware of any

```
1   instances where responses are required in as few as five days.

2   I do think that tends to be a short period of time.

3              MR. HANNA:  That's fine.  Ten days is fine, Judge.

4              THE COURT:  I think we've already talked about the fact

5   that I believe that the "requesting party" is more accurate

6   than the "producing party."

7              Is there any objection to the burden of proving the

8   designated -- information meets the definition of confidential

9   -- I think that that's actually a little bit imprecise because

10  the burden of demonstrating the need for a protective order is

11  not necessarily equivalent to the definition of confidential.

12             I don't know whether you want to say, you know, maybe

13  the -- that's a legal matter regarding the burdens.  You can

14  say that this order does not affect the burdens of --

15             MS. HARDY:  I would agree with that.  I mean, I don't

16  know why we'd be defining burdens in this order.  I mean, we're

17  not altering --

18             THE COURT:  The law.  So you can say --

19             MS. HARDY:  -- law, the court rules.

20             THE COURT:  -- this order does not -- and it already

21  has stated that Federal Rule 26(c) applies.  So to the extent

22  that you want to say this order does not -- is not meant to

23  alter the legal burdens for demonstrating the appropriateness

24  of a protective order, something along those lines.

25             So, Mr. Hanna, what's your objection to the procedures
```

 1   for disclosing to other persons?

 2           MR. HANNA:  I'm just trying to find that real quick,

 3   Judge.

 4           I believe, so, so for example, if I want to get a

 5   declaration from a third party witness, I'm going to need to

 6   get permission from them to disclose that information.  I mean,

 7   isn't it enough that I'm required to tell them, hey, there's a

 8   confidentiality order in place and you must maintain it

 9   confidential?  Do they -- I don't think they should have access

10   to my litigation strategy.

11           THE COURT:  Why isn't the -- why isn't that covered by

12   the section dealing with use of showing confidential documents

13   to a witness or a potential witness?

14           MR. HANNA:  It is, so this should be taken out.  It's

15   already covered.

16           THE COURT:  I thought that this was talking about

17   disclosure to a party's -- other than those permitted access.

18   So, Ms. Hardy, can you address this?

19           MS. HARDY:  You're correct, your Honor.  I mean, page 9

20   of the redacted document has language concerning witnesses,

21   deponents, et cetera, and what the, under what conditions they

22   can use confidential documents.  And those are the permitted

23   purposes.  And this section on page 16 is intended to address

24   people who are not covered under the permitted purposes.  If

25   they want to make a disclosure to such a person, then there's a

```
 1   procedure to follow.  So it should be, should be a provision

 2   that they are interested in having, because it provides yet

 3   another option for more disclosure as long as the process is

 4   followed.

 5        MR. HANNA:  Ms. Hardy previously agreed to take it out.

 6   But as long as we're clear that that doesn't --

 7        THE COURT:  I think what happened, Mr. Hanna, was Ms.

 8   Hardy was trying to agree to things in order to get an

 9   agreement and they weren't able to get an agreement.  So then

10   having filed the motion, then she says, well, these are

11   actually provisions that I do want.  Now, they are before the

12   Court.  So the fact is that you all didn't come to an agreement

13   and a motion was filed.  Your motion was filed.  And now I'm

14   trying to come to an agreement on the portions of the order

15   that were in dispute.

16        MR. HANNA:  Yeah.  So I have no objection, as long as

17   this doesn't include witnesses and potential witnesses, that's

18   fine.

19        THE COURT:  And the thing about it also is that now

20   you'll have the opportunity to get a transcript of this

21   hearing, to the extent --

22        MR. HANNA:  Right.

23        THE COURT:  -- that you have any concerns, this was

24   going to be somehow misconstrued, you have it on the record

25   that that is not Ms. Hardy's intent.
```

```
 1              MR. HANNA:  Exactly.

 2              THE COURT:  Okay.  Inadvertent production of privileged

 3    material.  Are any portions of this section as modified by Mr.

 4    Hanna in dispute?

 5              MS. HARDY:  Oh, I'm sorry, your Honor.  Could you

 6    repeat your question?

 7              THE COURT:  Inadvertent production of privileged

 8    material.  Mr. Hanna made some additions.

 9              MS. HARDY:  Yes.

10              THE COURT:  Are any of them in dispute?

11              MS. HARDY:  He's tried to limit the scope of what needs

12    to be returned, and we want to include not just hard copies,

13    but all electronic copies.

14              THE COURT:  So as I read his, I believe it was in one

15    of his documents, the concern being that at the end of this

16    litigation, he would have to undertake perhaps expensive

17    measures to make sure that his firm's e-mail system and network

18    system doesn't contain any documents.

19              MS. HARDY:  Well, yes, take reasonable efforts.  And

20    one of the reasons for concern is if you look at page 20, he

21    expressly inserts language saying he can maintain any

22    electronic versions as confidential and password protected.

23    So, you know, we want a reasonable but good faith effort to

24    ensure that they are not retaining confidential documents, and

25    in today's business world, that does require that you take
```

```
1    steps to ensure that you have them off your servers, and not
2    just out of your e-mail box, but off your server.  And I'm sure
3    Morgan & Morgan, which is a large firm, has a procedure for
4    doing that.
5              MR. HANNA:  So we're in I think 30 or 40 states, we
6    have 50 offices and we just adhere to the largest policies for
7    document retention in those states.  And some of those states
8    require 5-year retention of electronic correspondence, et
9    cetera.  So, and we are required to maintain these electronic
10   copies of these files in Client Profile.  So it's virtually
11   impossible for me to -- and I've had this discussion with her
12   and the costs involved.
13             Now, as far as hard copies, happy to return.  As far as
14   -- and I asked her what do you mean by deleting electronic
15   correspondence?  Do you want me to go on my e-mail and press
16   delete?  Okay, that's easy.  But that doesn't delete anything.
17   If you know how these e-mail communications work, there's
18   always a stamp on there somewhere.
19             And as far as -- I said look, we have Client Profiles,
20   is the system we use.  I can make this file password protected
21   so no one else but me can get in there and my team.  I can
22   return all the hard copies but it's virtually impossible to
23   actually delete electronic copies if you want us -- and again,
24   I'm being technical but --
25             THE COURT:  It has to be accessible.  I mean, there's
```

```
 1   one thing -- so if you delete something from your inbox, it
 2   still exists in the network?
 3            MR. HANNA:  Yeah.
 4            THE COURT:  But then if, if I want to have access to my
 5   deleted e-mail, the Government has not made it easy at all.
 6   It's out there somewhere in Ether, but it's not something
 7   that's reasonably accessible to me.  If someone said can you
 8   pull up that e-mail that you sent me year ago, I would need an
 9   IT specialist to do that.
10            Are you saying that there's no way for you to remove it
11   from your accessibility?
12            MR. HANNA:  If -- like, so that's what we talked about.
13   I said if you want us to hire a professional, if Defendants are
14   willing to pay the costs, that's fine.  If all you're asking
15   for, is for me to go press "delete" on my inbox, no problem.
16            But, for example, we have Mimecast.  So I've deleted
17   e-mails from three years ago that I need them, and I can look
18   them up, and Mimecast has a backup drive of all these e-mails
19   for, like, four or five years.  So I want to make sure I can
20   comply with this order.
21            Now, to protect their interests, I'm willing to delete
22   all hard copies.  I'm willing to -- all my files in my, in my
23   computer, will be password protected, but I don't want to make
24   promises that I don't know if I can keep.
25            THE COURT:  When I was at the U.S. Attorney's Office,
```

MOTION HEARING - 7/19/2018

```
 1    Ms. Hardy, they did have a similar thing, which I found to be
 2    quite handy, that if I wanted to look at an old e-mail from
 3    five years ago, and I deleted it out of mine, I could do a
 4    search.  And I don't know how I would remove that from the
 5    availability.
 6            But if Mr. Hanna was the only one who was able to
 7    access that with a password protection, and he's bound by this
 8    agreement, you know, after, to not disclose any of that
 9    confidential information after the litigation is over --
10            MS. HARDY:  Well, I --
11            THE COURT:  -- does that address your --
12            MS. HARDY:  I guess I'm not sure what he's proposing.
13    I mean, he's got quite a team of lawyers working on this
14    already, or people in his law firm, because every e-mail I get
15    has about ten people copied.  So I don't know whether he's
16    talking about after the fact, he'd have them delete everything,
17    and then only retain confidential information in a password
18    protected.  But right now --
19            THE COURT:  Let me ask Mr. Hanna.
20            MS. HARDY:  -- many other people have access.
21            THE COURT:  What are you saying?
22            MR. HANNA:  So the way it works for us is we have a
23    system called Client Profiles, and whatever document comes in,
24    we save it in there.  That system that has all the documents
25    also has a backup of all e-mails I've ever sent on there.  I
```

```
 1    can make that system confidential.  Any hard documents, happy
 2    to return.  But the correspondence going back and forth on my
 3    e-mail --
 4              THE COURT:  No.  That's not the question, though.  The
 5    question is how many, how many attorneys currently, or how many
 6    people in your firm currently have access to any documents?
 7              MR. HANNA:  They have -- we don't have anything -- we
 8    don't have a protective order in place.  That file is not
 9    confidential.
10              THE COURT:  That's not my question.  My question is how
11    many attorneys, for example --
12              MR. HANNA:  Right.
13              THE COURT:  -- right now, have access to the discovery
14    in this case?
15              MR. HANNA:  Right now, before protective order?
16    Everyone, everyone in my firm has access to it.
17              THE COURT:  I mean, really the protective order says
18    that other attorneys can view it anyway.
19              MR. HANNA:  Right.
20              THE COURT:  So I'm just asking you, it's not a matter
21    of before or after.
22              MR. HANNA:  Right.
23              THE COURT:  How many attorneys have access to the
24    discovery in this case?
25              MR. HANNA:  Every attorney in my firm can click on that
```

```
 1    file.  So over 400, I guess, can click on that file, not that
 2    anybody would really care.  So they, they technically have
 3    access.
 4              THE COURT:  They might.  So I would actually do
 5    something to -- are you able to do something --
 6              MR. HANNA:  Yes.
 7              THE COURT:  Okay.
 8              MR. HANNA:  So as far as --
 9              THE COURT:  This case includes salacious allegations,
10    so, yes.
11              MR. HANNA:  Sure.  I am happy to do that.
12              THE COURT:  Peeping people might be happy to look.
13              MR. HANNA:  Okay.
14              THE COURT:  So let's say this case is closed.
15              MR. HANNA:  Right.
16              THE COURT:  Is there a way for you to -- you said you
17    could put a password protection on it.
18              MR. HANNA:  Yes.
19              THE COURT:  Would that preclude other inquiring minds
20    from accessing the documents?
21              MR. HANNA:  Yes.  So then what I would intend to do,
22    once this order is placed, is put a password on that, and then
23    I would obviously give that password to my paralegals and the
24    couple other attorneys that are assisting in this litigation.
25              You know, Jeff Fieger is my co-counsel on this, so I
```

MOTION HEARING - 7/19/2018

```
 1    would have to confer with them as to what measures they may

 2    have in Jeff's firm.  But that's why I really think this

 3    resolves their, their concerns.

 4          And so I wrote, my proposed changes were hard copies,

 5    and then I wrote, "delete all electronic copies in their e-mail

 6    inbox, sent mail, deleted mails, or other e-mail folders as

 7    well as container hard drives and network."  And then I wrote,

 8    and I added, "to the extent practicable."

 9          Because I honestly, I know enough about the IT world to

10    know I don't know much, and I don't know how you actually

11    delete anything.  And I think, like you mentioned, Judge -- and

12    I interned before at the U.S. Attorney's Office in the Southern

13    District of Florida.  And I know, like you mentioned, they have

14    these capabilities of pulling up e-mails out of nowhere.  So I

15    just don't want to be bound by something I can't adhere to.

16          THE COURT:  But you would be able to password protect

17    and preclude people who are curious from, in your firm, from

18    looking at any of these documents?

19          MR. HANNA:  Yeah.  And I think that would apply to all

20    the attorneys.  I mean, as far as the system administrators, or

21    the IT professionals, do they have backup access?  I couldn't

22    tell you.

23          THE COURT:  I think that when you -- the way it's, it's

24    written is "maintain" sounds like you're trying to keep it.

25    Maybe if it's -- if it's shall protect any electronic versions
```

1   as confidential and password protected to the extent that

2   deletion is not reasonably practicable?

3           MS. HARDY:  And who all would have access to the

4   password protected?  That's --

5           THE COURT:  What I heard Mr. Hanna say is that he would

6   have that.  The order will require for him to put password

7   protection that would preclude other people from accessing

8   those documents.

9           MS. HARDY:  Well, I heard him say that with respect to

10  the 400 people who currently would have access.

11          THE COURT:  And that's what --I think that to the

12  extent something is password protected, the password can be

13  changed.

14          MR. HANNA:  So --

15          THE COURT:  So, Mr. Hanna, are you saying that you

16  would protect, put a password on to protect anyone but you

17  being able to access those documents?

18          MR. HANNA:  No.  Anybody but me and my team working on

19  it.  So if there's like two or three other attorneys or

20  paralegals and staff, they have to be able to access it, too.

21  But it would not be the general --

22          THE COURT:  I'm saying after the case is over, could

23  you change the password so the whole team doesn't get to see

24  it?

25          MR. HANNA:  Yeah.  I don't -- I mean, I think so.  I

1    think so.  I think after the case is over, I could re-change

2    the password.  If we want to spell that out, after the case is

3    over, I can re-change it so nobody but myself has it.  That

4    should be fine.

5            MS. HARDY:  And including the Fieger firm?

6            THE COURT:  I can't speak for --

7            MS. HARDY:  Well, he's a, you know, an attorney who has

8    appeared in this case, so he's obligated by the --

9            MR. HANNA:  He's obligated by the confidentiality

10   order.  Right.  So I just, I don't know what type of system

11   issues they have.  That's why I think --

12           THE COURT:  So --

13           MR. HANNA:  -- unless you're --

14           THE COURT:  -- I wish that that is something that you

15   would have addressed with him before today.  Because that's

16   clearly going to be an issue, that WXYZ is going to want to

17   make sure that there aren't documents laying around and

18   accessible after the case is resolved.

19           MR. HANNA:  I mean, with my language, Judge, if they

20   were to return all hard copies and anything in the e-mail

21   inbox, sent mail, deleted mail or other e-mail folders, unless

22   you're like an IT professional, who is going to --

23           THE COURT:  But I try to reframe in the way that, and

24   as I said, to make it only you have access to it, but that

25   doesn't resolve what's going to happen with the Fieger firm.

MOTION HEARING - 7/19/2018

1          MR. HANNA:  Right.

2          THE COURT:  And that's why I'm saying I wish that you

3    would have had that conversation with him, because that's an

4    issue that needs to be resolved.  We need to know what the

5    Fieger firm, what their systems -- what his systems are like.

6          MR. HANNA:  Yup.

7          THE COURT:  So that all of his employees won't have

8    access do those documents.

9          MR. HANNA:  All the employees not working on the case.

10   Or you're talking about after?

11         THE COURT:  Once the case is done.

12         MR. HANNA:  Right.

13         THE COURT:  I do think at this point, all reasonable

14   steps should be taken to limit the number of people who have

15   access to, as I said, what will be, I anticipate salacious

16   depositions, responses to discovery requests.  This seems to be

17   a case that can, can become very personal.  And, and I think

18   that there do need to be steps taken to make sure that

19   inadvertent disclosures of the details of this case don't end

20   up in the media in a way that hurts either side.

21         But after the case is over, then what I'm understanding

22   the defense wants, and I think is fair, is to the extent you

23   can't destroy all the electronic information, that it be under

24   a tight lock and key with, as I said in your firm, if you could

25   just make yourself the only person with the password.  But we

 1   need to know what Fieger's firm is.

 2           MR. HANNA:  Yes.  So perhaps the part I can confer and

 3   speak with Ms. Hardy afterwards, I think they are getting the

 4   protection they need.  This is just out of an abundance of

 5   caution on my end, because I know enough about IT to know I

 6   don't know anything.  And so I said all hard copies, anything

 7   in my inbox, out box, that -- yeah.

 8           THE COURT:  Like I said, I think that if everything can

 9   be protected and you're bound by the agreement --

10           MR. HANNA:  Yeah.

11           THE COURT:  -- that doesn't address Mr. Fieger.

12           Ms. Hardy, is there something else you wanted to say

13   about that?

14           MS. HARDY:  Well, no, your Honor.  I think this is

15   going to take a little bit of time for Mr. Hanna to get back to

16   us after he consults with Mr. Fieger about their law firm IT

17   procedures.  But I'm comfortable with the password protection

18   if it's limited just to Mr. Hanna.  I don't know why Mr. Fieger

19   would have an interest in retaining an independent, you know,

20   access at his firm.  If he does, then that can --

21           MR. HANNA:  He has the documents as well.  So what he

22   has and how he -- what systems he use and how they are

23   organized, I just can't speak to that.  I'm just saying on my

24   end, I know how --

25           THE COURT:  I understand that.  As I said, this is

```
 1   something, because this was in dispute, I would have
 2   appreciated it if you had investigated this before we came here
 3   today.  Because I think that we've gotten through everything
 4   else, and now there is just a something that we can't resolve
 5   today without knowing Mr. Fieger's electronic storage system.
 6             MS. HARDY:  Your Honor, one other suggestion that Mr.
 7   Davis just had is to stay with the language in Defendant's
 8   proposed order for now, and then if there's refinements to how
 9   that process will work, to ensure that electronic information
10   is no longer available, they can -- we can have an amendment to
11   it.  But at least that way, we would be able to get this
12   finalized today, because this is held up even being able to get
13   to first base in discovery.
14             THE COURT:  Well, I think that in order to finalize it
15   today, then we're going to have to say for Mr. Fieger, he has
16   to return all media, unless he can come up with another
17   mechanism the way that you have, Mr. Hanna, from his firm.
18             MR. HANNA:  Return all hard copies?
19             THE COURT:  No, media, electronic media.
20             MR. HANNA:  How do you return -- you mean delete?
21             THE COURT:  Yes.  Yes.  Including --
22             MR. HANNA:  I mean, I think to the extent deletion is,
23   is not reasonably practicable language, I think that should be
24   fine.  I mean, ultimately, if that's the Court's order and it's
25   reasonably practicable to go ahead and just go in there and
```

```
 1   delete it, no problem.  So I think with my proposed language of

 2   hard copies and explanation of what they mean by electronic

 3   documents --

 4           THE COURT:  It's to protect any electronic versions

 5   with password protection.  Your firm is Hanna & Hanna, you

 6   said?

 7           MR. HANNA:  Morgan & Morgan.

 8           THE COURT:  I'm sorry.  Morgan & Morgan.  And then

 9   specify at Morgan & Morgan, that that means that only you, Mr.

10   Hanna, would have the password.

11           MR. HANNA:  After the completion of the case.  But

12   before, that's not the case.

13           THE COURT:  Right.

14           MR. HANNA:  Right.

15           THE COURT:  And I think for Fieger & Fieger, or Fieger

16   -- what, is it Fieger?

17           MS. HARDY:  Fieger, Fieger, Kenney & Harrington.

18           THE COURT:  Okay.  At Fieger & Fieger, then that means

19   that, that all electronically copied or stored versions shall

20   be deleted.

21           MR. HANNA:  I would say maybe shall be deleted to the

22   extent practicable.

23           MS. HARDY:  Well --

24           THE COURT:  No.  I'm saying is that you're saying that

25   you need to talk to him, then you need to talk to him.  And if
```

1    there can be an amendment to say this is not reasonably

2    practicable and this is how we can do it, then that can be

3    changed.

4              MR. HANNA:  Well, can we change it for him then to be

5    deleted or password protected?

6              THE COURT:  I don't want to just make it vague.  We

7    need to have the specific information from Mr. Fieger.

8              MR. HANNA:  Right.  So I'm saying he can delete it or

9    have it password protected.  And he's the only one that can

10   access it similar to how I have it.

11             THE COURT:  But I don't know whether -- I haven't heard

12   from him that he would have the same obstacles as Morgan &

13   Morgan for deleting the electronic files.

14             MR. HANNA:  I mean, I'm just trying to avoid a

15   re-hearing or reissue, so if you --

16             THE COURT:  I understand.  But the reason why we don't

17   know is because you didn't come in with that information.  I'm

18   not going make that decision blindly.  I don't know whether he

19   can easily, whether he can practicably delete the electronic

20   versions.  If he can do that, then he should do that.

21             MR. HANNA:  Okay.  So --

22             THE COURT:  If he can't, and there's specific

23   information that we have that says that he can't do so, then I

24   need to know -- you let us know that you have the ability to

25   password protect, so that nobody else but you and really

1    sophisticated IT people can access the documents.

2            MR. HANNA:  Right.

3            THE COURT:  I don't know what Mr. Fieger's setup is.

4            MR. HANNA:  So perhaps, Judge, we can say delete it,

5    and delete the documents, or unless it's -- unless they are not

6    able to delete it, and at which point they can have it password

7    protected, which is the kind same scenario that's going on for

8    Morgan & Morgan?

9            THE COURT:  I think that what I would prefer is to

10   actually know what we're dealing with, and so the order can say

11   that, or the stipulation and order can say that if Mr. Fieger's

12   firm cannot -- if it's -- if it cannot as a practical matter

13   delete all the electronic files, then this order will be

14   amended to reflect measures that his firm will take to protect

15   the documents so that it is specific to his firm.  We can be

16   specific to Morgan & Morgan here.  I can't be specific to Mr.

17   Fieger.

18           MR. HANNA:  So, yeah, as long as there's that mechanism

19   for them to clarify if, if they are having -- if they deal with

20   the same situation we deal with, then I think that should be

21   sufficient.

22           THE COURT:  Mr. Davis, have you taken notes about that?

23           MR. DAVIS:  I have, your Honor.  I don't think we have

24   a specific -- I have.  And I think we can work any -- no

25   disputes out, but it sound like there's a lot of moving pieces.

 1    I'm sorry, your Honor.  I should stand up.

 2         I think that I have it covered, so and I'm sure we can

 3    work that out.

 4         THE COURT:  Okay.  So what I'm going to want the

 5    parties to do, I'm going to ask Mr. Davis and Ms. Hardy to

 6    revise the confidentiality order, protective order, whatever

 7    you want to call it, like I said, I feel like it's the same

 8    thing, and present it to Mr. Hanna.

 9         I think that the only area where you all should need to

10    have any conversation would be regarding this last portion,

11    because I think otherwise we've addressed everything.

12         MR. HANNA:  So we're taking out the proposed language

13    that Plaintiff added that was previously conferred on, right?

14    And we're keeping their version and just adding, "to the extent

15    deletion is not reasonably practicable," is that, is that what

16    I'm understanding, Judge?

17         THE COURT:  No.  We're saying specifically for -- well,

18    to the extent that deletion is not reasonably practicable, that

19    at Morgan & Morgan, any remaining electronic documents would be

20    password protected and you would be the only person with the

21    password.

22         MR. HANNA:  Would be password protection after the

23    closure of the matter?

24         MS. HARDY:  Right.

25         THE COURT:  Yes.  Yes.  Now, after discussing it with

MOTION HEARING - 7/19/2018

```
 1   Mr. Fieger, you find out he has the same obstacles or that he
 2   can password protect it so that only he could access the
 3   documents, and Mr. Davis and Ms. Hardy agree, then --
 4          MR. HANNA:  I want to also check the Michigan -- well,
 5   okay.
 6          THE COURT:  You want to do what?  Because it hasn't
 7   been raised now, you're going to check something.
 8          MR. HANNA:  To see if -- I've been licensed in Michigan
 9   as a lawyer for about a year now.  I just want to make sure
10   that they don't -- like in Florida, where I previously
11   practiced, you have to maintain documents for a certain amount
12   of time.  I'm assuming that that's not the case here, where I'm
13   required to -- so I can delete them properly, and that isn't
14   the requirement then.  Not a problem.
15          THE COURT:  Okay.  Well, we found out for you, Mister
16   -- like I said, I don't know anything in that regard, and I do
17   know that stipulated protective orders do say that the
18   documents have to be destroyed after the litigation has been
19   complete.  So I'm not aware of any --
20          MR. HANNA:  I think this is something we can confer on
21   and I'll get an answer as fast as I can from Mr. Fieger.  And
22   then if he can delete them, then I'll just say just make it for
23   the Fieger law firm, they can.  If they can't, then they need
24   the same procedure as us, I will tell, you know, counsel for
25   defendant, then we can --
```

```
 1            MR. DAVIS:  Your Honor, I would just, based on what the
 2    Court has been saying, it seems like getting this order on file
 3    is important.  So if he can tell me that by the end of the day,
 4    make any changes specific to the Fieger firm, that's fine.
 5    Otherwise, I would recommend that at the end of the day, we
 6    would just submit this with the language your Honor suggested
 7    that the Fieger firm could come in and ask for an amendment
 8    later.  But I don't think we should hold this up.  I don't know
 9    if Mr. Fieger is available.  We need to get this on file.  So
10    that would be my recommendation.
11            MR. HANNA:  I believe Mr. Fieger actually has a trial
12    or is in the middle of trial prep.  And I have to travel for an
13    FBI deposition for Chicago in the next couple days.  If we
14    could just get a couple days to get back to you, I can get on
15    that.  I don't know if by close of business is --
16            THE COURT:  I think --
17            MR. HANNA:  If I could get a week?
18            THE COURT:  Are you having, Mr. Davis, is there
19    something, some concern particular concern that you have for
20    something that's scheduled?
21            MS. HARDY:  I have a concern, and I think Mr. Hanna
22    will likely share this concern, that we haven't started
23    depositions, we haven't exchanged documents.
24            THE COURT:  I understand that.  So I understand time is
25    of the essence.  I don't know -- that's why I was asking if
```

MOTION HEARING - 7/19/2018

1    there's something specific scheduled that would impact.

2           MS. HARDY:  There is not.  It's just a general concern

3    about the scheduling order.  I think we're already pushing,

4    we're going to have to amend it because this has been held up

5    for so long.

6           THE COURT:  So what about if it's -- if the final

7    version is presented to me by next Wednesday?

8           MR. HANNA:  That should be sufficient.

9           MS. HARDY:  That's acceptable from our point of view.

10          THE COURT:  All right.  And I really, really hope

11   that --

12          MR. HANNA:  Judge, I have a deposition next Wednesday

13   in Chicago of -- in a matter against the United States.  Can we

14   do it next Thursday?

15          THE COURT:  Really, I don't know that you have to --

16   you don't have to come back to court.

17          So are you saying that you won't have time to -- it

18   sounds like you just need to talk to Mr. Fieger, figure out

19   what you need to do to edit the last paragraph.

20          MR. HANNA:  I'm just asking for one more day, Judge,

21   because I know I'll be back in town.

22          THE COURT:  Okay.  Any objection to one more day, Ms.

23   Hardy?

24          MS. HARDY:  No, your Honor.

25          THE COURT:  All right.  Well, please make sure that any

MOTION HEARING - 7/19/2018

```
 1    objections to the language are thought out and reasonable, and
 2    hopefully there won't be any objections to the language.
 3            This is something, as I said, that hopefully, as you go
 4    forward, you guys will be able to work this out without needing
 5    court intervention.  This is unusual that -- I've never had to
 6    go through paragraph by paragraph like this.  And this case is
 7    one that could end up being super expensive and just waste a
 8    lot of time or it's one you can get through discovery, maybe
 9    have -- I think does your schedule already, you have a
10    facilitation that's required?  Is that part of the scheduling
11    order?
12            MS. HARDY:  No, I don't -- I don't believe so.
13            THE COURT:  Maybe that's a different case.
14            MS. HARDY:  Judge Borman does require facilitation at
15    some point, but I don't --
16            THE COURT:  So this is already going to be ugly enough,
17    in a lot of ways.  It doesn't have to be ugly about little
18    stuff.
19            MS. HARDY:  Thank you so much for your time.
20            MR. HANNA:  Thank you for your time, Judge.
21            THE COURT:  Thank you.
22            MS. HARDY:  An extraordinary amount of time today.
23            THE CLERK:  All rise.  Court is in recess.
24       (Proceedings concluded, 12:41 p.m.)
25
```

```
 1                         *       *       *

 2

 3

 4                    CERTIFICATE OF REPORTER

 5

 6        I certify that the foregoing is a correct transcript

 7   from audio recorded proceedings in the above-entitled cause on

 8   the date hereinbefore set forth.

 9

10

11                   s/ Christin E. Russell

12          CHRISTIN E. RUSSELL, FCRR, CRR, RMR, CSR

13               Federal Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```