UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARA EDWARDS,

    Plaintiff,

v.

SCRIPPS MEDIA, INC., d/b/a
WXYZ-TV, a Foreign Profit Corporation,

    Defendant.
_____/

Case No: 18-10735

Hon. Paul D. Borman

Magistrate Judge:
Elizabeth A. Stafford

Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
Attorney for Plaintiff
2000 Town Center, Suite 1900
Southfield, MI  48075
(313) 251-1399
mhanna@forthepeople.com

Geoffrey N. Fieger (P30441)
FIEGER FIEGER KENNEY
 & HARRINGTON, P.C.
Attorney for Plaintiff
19390 W. Ten Mile Road
Southfield, MI  48075-2463
(248) 355-5555
g.fieger@fiegerlaw.com

Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM OPPERWALL HARDY
 & PELTON, P.L.C.
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
tdavis@kohp.com

_____/

**Defendant's Supplemental Brief Regarding Attorney-Client and Work
Product Privilege in the Investigation Context**

## Table of Contents

Table of Authorities ................................................................................................ ii

    A.    Internal investigations, including witness statements, are privileged. ...................................................................................... 1

    B.    Attorney-client and work product privilege protects statements and materials given to non-lawyers acting at the direction of counsel. ................................................................. 2

    C.    Plaintiff's authority regarding sexual harassment investigations *acknowledge* the existence of privilege, and turn on waiver. ................................................................................ 4

## Table of Authorities

**Cases**

*Alomari v. Ohio Dep't of Pub. Safety*,
 626 F. App'x 558 (6th Cir. 2015) ...................................................................................2

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*,
 19 F.3d 1432 (6th Cir. 1994) ..........................................................................................3

*Harding v. Dana Transport*,
 914 F. Supp. 1084 (D.N.J. 1996) ....................................................................................4

*In re Kellogg Brown & Root, Inc.*,
 756 F.3d 754 (D.C. Cir. 2014) .......................................................................................3

*Pearce v. Emmi*,
 2018 WL 4103363 (E.D. Mich. Aug. 29, 2018) ............................................................3

*United States v. Dakota*,
 197 F.3d 821 (6th Cir. 1999) ..........................................................................................4

*United States v. Nobles*,
 422 U.S. 225 (1975) .......................................................................................................3

*Upjohn Co. v. United States*,
 449 U.S. 383 (1981) ............................................................................................. *passim*

**Other Authorities**

2 Cutler *et al.*, Successful Partnering Between Inside and Outside Counsel
 § 33:32 (May 2018 update) ............................................................................................2

8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2017 (3d ed) .....................................................1

### A.     Internal investigations, including witness statements, are privileged.

The definitive case on the applicability of attorney-client and work product privilege in internal corporate investigations is *Upjohn Co. v. United States*, 449 U.S. 383 (1981), which "took an expansive view of the privilege in the corporate context." 8 Wright & Miller § 2017 (3d ed.). In *Upjohn*, the corporation investigated "questionable payments," with its attorneys sending questionnaires to numerous managers seeking information about payments to foreign officials, and later interviewing those managers and 33 others. 449 U.S. at 386.

The IRS ultimately began an investigation, and sent a summons demanding the questionnaires and the notes and memorandums regarding the investigation interviews. *Id.* at 387-88. Upjohn declined to produce those materials, citing attorney-client and work-product privilege. *Id.* at 388. The Supreme Court agreed, holding that "[i]n the corporate context… it will frequently be employees beyond the control group" who "will possess the information needed by the corporation's lawyers," including "middle-level" and "lower-level" employees. *Id.* at 391. The Court held instead that "communications… made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel" was privileged, as were the questionnaires. *Id.* at 394-95. The Court also held that attorneys' notes of witness interviews were protected: "If they reveal communications, they are… protected by the attorney–client

privilege. To the extent they do not reveal communications, they reveal the attorneys' mental processes in evaluating the communications."[1] *Id.* at 401.

"As a result of the *Upjohn* ruling, there is little controversy in the federal courts that privilege extends to attorney-client communications and work product generated during internal investigations." 2 Cutler *et al.*, Successful Partnering Between Inside & Outside Counsel § 33:32 (May 2018 update) (citing authorities) (Ex. A). Thus, in *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 569 (6th Cir. 2015), the defendant learned from media inquiries that one of its officers had been fired from a prior job due to sexual misconduct. In-house counsel interviewed the officer to obtain information to provide legal advice to the department on how to respond to the media inquiries. *Id.* at 570. The Sixth Circuit, citing *Upjohn*, held that these communications were privileged, as were communications at a meeting with in-house counsel to discuss an investigation that had uncovered misconduct, for the purpose of giving legal advice on discipline. *Id.* at 571-73.

B. **Attorney-client and work product privilege protects statements and materials given to non-lawyers acting at the direction of counsel.**

The Supreme Court has long recognized that "attorneys often must rely on the assistance of investigators and other agents" and thus work-product privilege

---

[1] The Court held that the interviewees could be identified, and that the underlying *facts* were not privileged, explaining: "The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at 395-96.

"protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238–39 (1975). Thus, in *Pearce v. Emmi*, 2018 WL 4103363, at *1 (E.D. Mich. Aug. 29, 2018), the court held that a statement taken by Oakland County Sheriff's Department internal investigators, but "at the direction of counsel and because of anticipated litigation" was attorney work product, and thus privileged from discovery. *Id.*

The same is true for attorney-client privilege. The Sixth Circuit has recognized the long-standing principle that "attorney-client privilege extends to communications made to an attorney's agent for the purpose of ultimately receiving legal advice." *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 19 F.3d 1432 (6th Cir. 1994) (table) (citing *United States v. Kovel*, 296 F.2d 918 (2nd Cir. 1961)). That is precisely who the investigator, acting at in-house counsel's direction is: an agent of counsel. Thus, in *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014) (Kavanaugh, J.), the D.C. Circuit rejected the argument that *Upjohn* privilege did not protect "interviews in [internal] investigations [that] were conducted by non-attorneys" at the direction of in-house counsel. The Court cited well-understood law that "communications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by attorney-client privilege." *Id.* (citing 1 Paul R. Rice, *Att'y-Client Priv. in the United States* § 7:18).

    **C.**    **Plaintiff's authority regarding sexual harassment investigations *acknowledge* the existence of privilege, and turn on waiver.**

As WXYZ previously noted, Plaintiff's own authority on internal attorney investigations recognizes that investigatory material is privileged. *See* R. 38, Pg ID 1121-22. Rather, the question in the cases Plaintiff cited—to the extent they are remotely relevant[2]—is whether the privilege was *waived* or not. Thus, in *Harding v. Dana Transport*, 914 F. Supp. 1084 (D.N.J. 1996), the company hired an outside lawyer to perform an investigation, and then used the investigation itself as a "sword" to defend a lawsuit, thus waiving the privilege. *Id.* at 1088-96. But as WXYZ explained, it is *not* relying on its privileged 2017 or 2018 investigations as a defense to Plaintiff's claims. Plaintiff complained in January 2015. WXYZ investigated, and discipline was issued in February 2015. Plaintiff quit December 31, 2016. Thus, the relevant issue—whether WXYZ's actions were adequate to end the harassment *of Plaintiff*—rises or falls on the adequacy of the 2015 investigation. R. 38, Pg ID 1114-15. Any workplace harassment of Plaintiff could not have lasted past December 31, 2016. The 2015 investigation file was produced, and there were no other investigations or resulting discipline before Plaintiff quit.

    The 2017 investigation was prompted by the Rideout press conference, led by Scripps in-house counsel Danyelle Wright. Ex. B, Wright Decl. And the 2018

---

[2] For instance, he cites *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999), which held only that a defendant who talked to an attorney for an Indian tribe, who was not the defendant's personal attorney, could not assert personal privilege.

investigation was led by outside counsel after Plaintiff's counsel sent Scripps a draft complaint. *Id.* Plaintiff's suggestion that the 2017 and 2018 investigation materials somehow support a "prompt and adequate remedy" argument, contrary to WXYZ's own litigation position, is self-serving and absurd, not to mention illogical: a 2017 or 2018 discipline obviously could not have retroactively served to remedy alleged harassment before Plaintiff quit. She has cited no authority to suggest that an entirely separate investigation, post-termination, could even be used in such a defensive fashion, let alone that privilege is "waived" even when the Defendant is not relying on the privileged investigation. And the logic of her argument would mean that *no company* that performs its legal obligation to investigate harassment claims could ever have privilege again regarding those claims, if sued down the line. This would be grossly unjust, and is obviously incorrect as a matter of law. Plaintiff's contrary arguments should be rejected.[3]

Dated:  November 23, 2018

*s/ Thomas J. Davis* (P78626)
Kienbaum Opperwall Hardy & Pelton, P.L.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
tdavis@kohp.com

---

[3] WXYZ is updating its privilege log in light of the Court's recent ruling. WXYZ understands that this five-page brief is limited to the overarching legal issues regarding privilege in the investigation context, and that the December 20, 2018 hearing is not meant to address, one-by-one, each specific item that will be on WXYZ's revised privilege log. If WXYZ's understanding is incorrect, it will make sure that the updated log and supporting declarations for such an item-by-item review are provided to the Court well in advance of the hearing.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Opperwall Hardy & Pelton, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com

310562