UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARA EDWARDS,

      Plaintiff,

v.

SCRIPPS MEDIA, INC., d/b/a
WXYZ-TV, a Foreign Profit Corporation,

      Defendant.

Case No: 18-10735

Hon. Paul D. Borman

Magistrate Judge:
Elizabeth A. Stafford

---

Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
Attorney for Plaintiff
2000 Town Center, Suite 1900
Southfield, MI  48075
(313) 251-1399
mhanna@forthepeople.com

Geoffrey N. Fieger (P30441)
FIEGER FIEGER KENNEY
  & HARRINGTON, P.C.
Attorney for Plaintiff
19390 W. Ten Mile Road
Southfield, MI  48075-2463
(248) 355-5555
g.fieger@fiegerlaw.com

Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM HARDY
VIVIANO PELTON & FORREST,
P.L.C.
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

---

**Defendant's Motion for Protective Order to Quash or
Modify Plaintiff's 30(b)(6) Notice**

Defendant Scripps Media, Inc., d/b/a WXYZ-TV ("WXYZ"), by its attorneys, Kienbaum Hardy Viviano Pelton & Forrest, P.L.C., hereby files its motion to quash or modify Plaintiff's 30(b)(6) notice. WXYZ sought Plaintiff's concurrence in the relief requested in this motion, but such concurrence was not granted, necessitating the filing of this motion.

WHEREFORE, WXYZ respectfully requests that the Court grant WXYZ's motion.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: */s/Thomas J. Davis*
    Elizabeth Hardy (P37426)
    Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

Dated:  February 22, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARA EDWARDS,

      Plaintiff,

v.

SCRIPPS MEDIA, INC., d/b/a
WXYZ-TV, a Foreign Profit Corporation,

      Defendant.

Case No: 18-10735

Hon. Paul D. Borman

Magistrate Judge:
Elizabeth A. Stafford

---

Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
Attorney for Plaintiff
2000 Town Center, Suite 1900
Southfield, MI  48075
(313) 251-1399
mhanna@forthepeople.com

Geoffrey N. Fieger (P30441)
FIEGER FIEGER KENNEY
  & HARRINGTON, P.C.
Attorney for Plaintiff
19390 W. Ten Mile Road
Southfield, MI  48075-2463
(248) 355-5555
g.fieger@fiegerlaw.com

Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

---

**Defendant's Brief in Support of Motion for Protective Order to Quash or
Modify Plaintiff's 30(b)(6) Notice**

# TABLE OF CONTENTS

Concise Statement of the Issues Presented ................................................ iii

Principal Authorities Relied On .............................................................. iv

Introduction ..........................................................................................1

Procedural Background ..........................................................................2

Argument ..............................................................................................3

I.     Plaintiff's 30(b)(6) notice is overbroad, seeks to depose
representatives on irrelevant topics, and seeks to violate
attorney-client privilege...................................................................3

      A.    Plaintiff's "policy" topics (Topics 1-9) are overbroad,
irrelevant, and not proportional to the needs of the
case. ...........................................................................................4

      B.    Topic 10, on the "compensation structure of WXYZ's
anchors," is not relevant or proportional to the needs of
the case. .....................................................................................7

      C.    Plaintiff's topics related to non-privileged Maddox
investigations and his termination (Topics 11-14) are
overbroad and duplicative. ..........................................................9

      D.    Plaintiff's topics regarding WXYZ's process of
answering document requests (Topics 15, 19) invades
attorney/client privilege..............................................................12

      E.    Plaintiff's demand for "all facts…and evidence"
supporting the denials set forth in its answer are
overbroad, unduly burdensome, and an "abuse of the
discovery system" (Topics 16-17) ...............................................14

      F.    Plaintiff inappropriately demands testimony about
WXYZ's privileged legal hold (Topic 18)....................................17

II.    If the Court permits any Rule 30(b)(6) deposition, the Court
should also impose appropriate limitations to ensure
compliance with existing Court orders and to preclude
inappropriate questioning. ............................................................................19

Conclusion ............................................................................................................23

## Concise Statement of the Issues Presented

1. Should the Court quash or modify Plaintiff's 19-topic 30(b)(6) notice because it is overbroad, seeks irrelevant information, is duplicative, and is not proportional to the needs of the case?

2. If the Court does not quash the 30(b)(6) notice in its entirety, should the Court order that Plaintiff be limited to inquiry into factual matters, rather than hypotheticals and opinions?

3. If the Court does not quash the 30(b)(6) notice in its entirety, should the Court order that Plaintiff is limited to a one-day, seven-hour deposition regardless of the number of topics Plaintiff has set forth in her notice, with questioning limited to only the topics as modified by the Court?

4. If the Court does not quash the 30(b)(6) notice in its entirety, should the Court order the deposition take place at WXYZ's counsel's office?

# Principal Authorities Relied On

## Cases

*Alvey v. State Farm Fire & Cas. Co.*,
   2018 WL 826379 (W.D. Ky. Feb. 9, 2018) ........................................................4

*Banks v. Office of Senate Sergeant-at-Arms*,
   222 F.R.D. 7 (D.D.C. 2004) ...............................................................6, 13

*Beaudry v. TeleCheck Servs., Inc.*,
   2013 WL 12355782 (M.D. Tenn. Mar. 31, 2013)................................................17

*Byrd v. Wal-Mart Transp., LLC*,
   2009 WL 3055303 (S.D. Ga. Sept. 23, 2009) .................................................1, 19

*Club v. BNSF Ry. Co.*,
   2016 WL 4528452 (W.D. Wash. Aug. 30, 2016) ...............................................13

*Convertino v. U.S. Dep't of Justice*,
   2008 WL 4104347 (E.D. Mich. Aug. 28, 2008) ................................................11

*Cooper v. Charter Commc'ns, Inc.*,
   2016 WL 128099 (D. Mass. Jan. 12, 2016) .........................................................16

*Crocs, Inc. v. Effervescent, Inc.*,
   2017 WL 1325344 (D. Colo. Jan. 3, 2017) ...........................................................8

*Doe v. Heritage Acad., Inc.*,
   2017 WL 6001481 (D. Ariz. June 9, 2017)...........................................................13

*Elezovic v. Ford Motor Co.*,
   472 Mich. 408 (2005) ...........................................................................................18

*Fid. Mgmt. & Research Co. v. Actuate Corp.*,
   275 F.R.D. 63 (D. Mass. 2011) ............................................................................15

*Georgia-Pac. Consumer Prod., LP. v. NCR Corp.*,
   2015 WL 11236844 (W.D. Mich. Feb. 23, 2015)..................................................4

*Gibson v. Ford Motor Co.*,
   510 F. Supp. 2d 1116 (N.D. Ga. 2007) ................................................................17

*Grynberg v. Total S.A.*,
  2006 WL 1186836 (D. Colo. May 3, 2006) ........................................................15

*In re Independent Service Organizations Antitrust Litigation*,
  168 F.R.D. 651 (D. Kan. 1996) .........................................................................15

*JPMorgan Chase Bank v. Winget*,
  2016 WL 7242136 (E.D. Mich. Dec. 15, 2016).................................................15

*Langlois v. McDonald's Rests. of Mich., Inc.*,
  149 Mich. App. 309, 385 N.W.2d 778 (1986) ...................................................18

*M & C Corp. v. Erwin Behr GmbH & Co., KG*,
  165 F.R.D. 65 (E.D. Mich. 1996)......................................................................22

*Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*,
  2018 WL 3358641 (S.D. Ohio July 10, 2018) ...................................................11

*McBride v. Medicalodges, Inc.*,
  250 F.R.D. 581 (D. Kan. 2008)...........................................................................4

*Muro v. Target Corp.*,
  250 F.R.D. 350 (N.D. Ill. 2007), *aff'd,* 580 F.3d 485 (7th Cir. 2009)................19

*Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1 (D.D.C. 2013) ................................................17

*Novartis Pharm. Corp. v. Abbott Labs.*,
  203 F.R.D. 159 (D. Del. 2001)...........................................................................11

*Nozinich v. Johnson & Johnson, Inc.*,
  2011 WL 13124086 (W.D. Tenn. Apr. 4, 2011)...................................................3

*Parrottino v. Bankers Life & Cas. Co.*,
  2014 WL 1516195 (E.D. Mich. Apr. 17, 2014) ...................................................6

*Prasad v. George Washington Univ.*,
  323 F.R.D. 88 (D.D.C. 2017) .............................................................. 1, 6, 7, 12

*Risinger v. SOC, LLC*,
  306 F.R.D. 655 (D. Nev. 2015)............................................................................1

*Safeco of Am. v. Rawstron*,
  181 F.R.D. 441 (C.D. Cal. 1998) ..........................................................................15

*Smithkline Beecham Corp. v. Apotex Corp.*,
  2000 WL 116082 (N.D. Ill. Jan. 24, 2000) ..........................................................12

*Snoddy v. City of Nacogdoches*,
  98 F. App'x 338 (5th Cir. 2004) ............................................................................10

*Stokes v. Xerox Corp.*,
  2006 WL 6686584 (E.D. Mich. Oct. 5, 2006) ........................................................3

*U.S. v. Dist. Council of N.Y.C.*,
  1992 WL 208284 (S.D.N.Y. 1992) ................................................................. 14, 16

*Versata Software v. Internet Brands, Inc.*,
  2011 WL 4905665 (E.D. Mich. Oct. 14, 2011) .....................................................11

*Waters v. Drake*,
  222 F. Supp. 3d 582 (S.D. Ohio 2016)....................................................................4

**Rules**

Fed. R. Civ. P. 26 .......................................................................................................4

Fed. R. Civ. P. 30 ............................................................................................. *passim*

Fed. R. Civ. P. 37 .....................................................................................................10

## Introduction

A 30(b)(6) notice has one purpose: to seek "facts the corporation knows," *Byrd v. Wal-Mart Transp., LLC*, 2009 WL 3055303, at *3 (S.D. Ga. Sept. 23, 2009), through a procedure intended to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it," 1970 Fed. R. 30 cmt. note. A 30(b)(6) deposition is thus "intended to streamline the discovery process," and is not intended to be a "memory contest." *See Risinger v. SOC, LLC*, 306 F.R.D. 655, 663 (D. Nev. 2015). Thus, it "is not appropriate…to use a 30(b)(6) deposition as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period." *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 99 (D.D.C. 2017).

Here, Plaintiff has served Defendant Scripps with a textbook example of an inappropriate catchall 30(b)(6) notice. Plaintiff has propounded *nineteen* categories of inquiry for a single, seven-hour deposition. The topics are extraordinarily overbroad, and are not limited to the relevant facts and circumstances of this case. Many of the topics are retreads of information that relevant decision-makers *did* already testify to (*i.e.*, obviating any "bandying" concern), and would effectively allow Plaintiff to either evade the existing deposition limits, or else to force a new corporate designee into a "memory contest" over details that have been well-

documented in the documentary and testimonial discovery taken to date. Yet other topics reflect further inappropriate efforts by Plaintiff to invade Defendant's attorney-client privilege, including demanding a witness testify as to attorney decisions like responding to RFPs and answering Plaintiff's complaint.

This 30(b)(6) notice is irredeemable, and should be quashed in its entirety. But at the very least, the Court should significantly reduce the number of topics and significantly narrow those that survive. And if any 30(b)(6) deposition is to go forward, the Court should impose other appropriate limitations on that examination consistent with the purposes of Rule 30(b)(6) and existing court orders.

## Procedural Background

On December 13, 2018, Plaintiff served her first proposed 30(b)(6) notice—which contained thirty-seven topics. Ex. A. WXYZ's counsel objected, including to (1) the excessive number of topics; (2) topics that violated existing court orders; (3) obvious requests to depose specific individuals twice—for example, asking WXYZ to produce the person with the "most knowledge" about the 2015 Maddox investigation, when the investigator Erika Storrs was already noticed for deposition; and (4) the failure to state topics with reasonable particularity as to subject matter and time-frame. Ex. B, December 2018 T. Davis-M. Hanna email chain.

Plaintiff's counsel ultimately agreed to withdraw the notice and re-write it and make "changes if necessary," but expressed the belief that the thirty-seven topic

notice was "a standard 30b6 notice." *Id.* Plaintiff later submitted a revised notice, removing some requests that violated existing court orders, but without otherwise correcting the problems. *See* Ex. C, Jan. 14 Notice. WXYZ again objected. Ex. D, Jan.-Feb. 2019 T. Davis-M. Hanna email chain. In response, Plaintiff submitted another 30(b)(6) with some cosmetic changes that did not address WXYZ's concerns, while *adding* two new topics. Ex. E, Current Notice.[1] This motion follows.

## Argument

### I.   Plaintiff's 30(b)(6) notice is overbroad, seeks to depose representatives on irrelevant topics, and seeks to violate attorney-client privilege.

Rule 30(b)(6) depositions are distinctly different from ordinary depositions. The corporate party must prepare a witness to answer not just information within her personal knowledge, but all information "reasonably available" to the corporation on particular topics. *Id.* Given these requirements, an "overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice. If the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *McBride v. Medicalodges, Inc.*, 250

---

[1] The deposition notice also demands documents, which—at best—should be treated as a Rule 34 request for production, triggering all the procedural requirements of that rule. *See* R. 30(b)(2); *Stokes v. Xerox Corp.*, 2006 WL 6686584, at *3 (E.D. Mich. Oct. 5, 2006); *Nozinich v. Johnson & Johnson, Inc.*, 2011 WL 13124086, at *2 (W.D. Tenn. Apr. 4, 2011). WXYZ will serve objections and responses, consistent with Rule 34, if the notice is not quashed in full.

F.R.D. 581, 584 (D. Kan. 2008). Thus, to "allow Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Id.*; *accord Georgia-Pac. Consumer Prod., LP. v. NCR Corp.*, 2015 WL 11236844, at *1 (W.D. Mich. Feb. 23, 2015) ("the requirement of 'reasonable particularity' found in Rule 30 has been construed to mean that the areas of inquiry must be designated with "painstaking specificity" in order that Rule 30(b)(6) function effectively").

Further, the December 2015 amendments to the Rule 26—intended to restore "proportionality as an express component of the scope of discovery" even for otherwise proper subjects of inquiry—applies to Rule 30(b)(6). *See* 2015 and 1983 Fed. R. Civ. P. 26 cmt. notes; 2015 Fed. R. Civ. P. 30 cmt. note; *see also, e.g., Alvey v. State Farm Fire & Cas. Co.*, 2018 WL 826379, at *6 (W.D. Ky. Feb. 9, 2018). Consistent with these rules, courts are "encourage[d]…to be more aggressive in identifying and discouraging discovery overuse." *Waters v. Drake*, 222 F. Supp. 3d 582, 605 (S.D. Ohio 2016). Such overuse is on display here.

### A.    Plaintiff's "policy" topics (Topics 1-9) are overbroad, irrelevant, and not proportional to the needs of the case.

Plaintiff's first nine topics are all purportedly related to various "policies" at WXYZ. While these requests ostensibly have been narrowed—Plaintiff's earlier notice sought a deponent to testify on every "application" of each of these policies

anywhere at any Scripps station nationwide, *see* Ex. C—these topics remain vague, overbroad, irrelevant, and not proportional to the needs of the case. The first topic is illustrative. It demands WXYZ produce a corporate designee to discuss WXYZ's (a) "policies and procedures concerning anti-harassment, equal employment opportunity, sexual harassment, and retaliation," (b) "the complaint and investigative process concerning same," and (c) "from 2014 to 2018." Ex. E, Topics 1-9. The request then has a confusing disclaimer that the "topic is limited to the general application of these policies and procedures, not their specific application in any other matter, and their application in this matter." *Id.*

It appears that, disclaimer notwithstanding, Plaintiff still seeks to depose a witness on the application of various policies unrelated to the 2015 Maddox investigation. The topic does not simply ask how these various policies applied to the 2015 Maddox investigation. That is made clear by the five-year temporal scope, the fact that the policy questions are not limited to the issues at hand, and the fact that Plaintiff has another topic specifically related to the Maddox investigation.[2] Nor is it clear what Plaintiff could possibly mean by a "general application" as opposed

---

[2]For instance, WXYZ's anti-harassment policy applies to harassment based on "race, sex, sexual orientation, gender, color, religion, age, genetic information, disability, national origin or on any other basis which would be in violation of any applicable federal, state, or local law." Ex. F. And WXYZ's Equal Opportunity Policy covers the same protected categories, and applies to "All personnel actions, including, but not limited to, recruitment, selection, hiring, training, transfer, promotion, termination, compensation and benefits…." Ex. G.

to a "specific application" of a policy; it thus appears that she still inappropriately

seeks information about how other investigations unrelated to Maddox "generally"

proceeded. The rest of the policy topics follow the same pattern. Ex. E, Topics 2-9.

These requests are thus inappropriately overbroad and unduly burdensome,

with courts rejecting similar requests. *See, e.g., Prasad v. George Washington Univ.*,

323 F.R.D. 88, 98 (D.D.C. 2017) (rejecting as overbroad "topics [that] essentially

require a witness to testify as to every event, communication, policy, practice,

training, and response—including rejected responses—that Defendant's employees

considered in connection with Plaintiff's claims"); *Parrottino v. Bankers Life & Cas.

Co.*, 2014 WL 1516195, at *5 (E.D. Mich. Apr. 17, 2014) (holding 30(b)(6) topic on

"[a]ll computer, software, and equipment policies; including the underlying rationale

of those policies and an understanding of their practice/execution" overbroad and

unduly burdensome); *cf. Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7,

18–19 (D.D.C. 2004) (rejecting as "absurdly overbroad" 30(b)(6) notice that "reads

like an interrogatory or a section of a request for production of documents").

*Prasad* is particularly instructive. Similar to this case, the plaintiff alleged that

her university did not adequately respond to sexual harassment by a student. 323

F.R.D. at 90. Plaintiff originally served a fifty-four topic Rule 30(b)(6) notice, before

withdrawing it over objection and serving a new, 10-topic notice. *Id.* at 97. That new

30(b)(6) notice contained, as one topic, the University's "policies, procedures,

-6-

practices, and trainings concerning Title IX and student discipline related to harassment, sexual harassment, assault, sexual assault, stalking, domestic violence, sexual violence, intimate partner violence, and dating violence during [a four-year, eight month] Period." *Id.* at 98; *see also id.* at 95. The Court found that this topic covered an "impermissibly broad range of subjects over a significant number of years, making it difficult not only for Defendant to designate and prepare a witness— or identify and prepare multiple witnesses," but also "for Plaintiff to abide by the presumptive seven-hour time limit for depositions." *Id.* at 98. The court thus denied Plaintiff's request for the deposition on this topic. *Id.* at 99-100.

Plaintiff's overbroad topics likewise cover issues that the Court have already ruled outside the scope of discovery—such as the Court's ruling that Plaintiff cannot depose witnesses about unrelated investigations. *See* R. 72, pp. 5-6. The notice also includes topics that are plainly outside the scope of the case, such as the unexplained request for a witness to discuss Equal Employment Opportunity policies and non-sexual harassment policies. Topics 1-9 should be quashed.

### B. Topic 10, on the "compensation structure of WXYZ's anchors," is not relevant or proportional to the needs of the case.

Next, Plaintiff demands that a witness testify regarding "the compensation structure of WXYZ's Anchors from 2014 to present." This request is not relevant and not proportional to the needs of the case, and on that ground should be quashed. *See, e.g.*, *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344, at *7 (D. Colo. Jan. 3,

-7-

2017) (quashing Rule 30(b)(6) topic on compensation based on relevance). Here, Plaintiff—who was a reporter—does not have any sort of equal pay or discriminatory pay claim vis-à-vis anchor's pay. Nor does she allege a failure to hire or promote claim related to an anchor position. Indeed, by Plaintiff's own admission, (1) she only ever filled in as an anchor on an ad-hoc, as-needed basis, with Plaintiff claiming this last happened on February 1, 2014—a year before she complained of harassment; (2) she never inquired about why she did not fill in as an ad-hoc anchor thereafter; (3) does not know whether she "lost" any anchoring opportunities at WXYZ after her 2015 complaint; and (4) did not apply for a "promotion" to anchor while at WXYZ or indicate interest in a promotion. *See* Ex. H, Pl's Resp. to 2nd Set of Interrogs. No. 1; Ex. I, Pl's Dep. 301-308; 434-37, 492.

Nor, in any event, does Plaintiff—who has no employment-related expert—have any evidentiary basis to suggest that she was denied an anchor position at WXYZ. Indeed, when Plaintiff inquired into this topic with former news director Dave Manney, he made clear that even a reporter who (unlike Edwards) expressed an interest in becoming an anchor, it would be "pretty rare" to go from reporter to anchor in a larger TV market like Detroit; rather, she would need to start in a smaller market more forgiving of a "rookie anchor." Ex. J, Manney Dep. 245-46.

Finally, even if Plaintiff had any non-speculative basis for inquiring into anchor salary, as written this topic is still significantly overbroad. As written, WXYZ

would be required to produce a witness who would have memorized the salary and benefits information of every anchor who worked at WXYZ for a period of five-plus years. None of that is necessary, and would be inappropriate even as a document request or interrogatory, let alone as a memory contest by a witness.

### C.   Plaintiff's topics related to non-privileged Maddox investigations and his termination (Topics 11-14) are overbroad and duplicative.

Next, Plaintiff sets forth a number of topics that appear to be calculated to serve as second depositions of several key decision-makers in the Maddox investigation, contrary to the numerical limitations on depositions ordered by this Court, and in violation of Rule 30(a)(2)(A)(ii)'s prohibition on multiple depositions of the same person. In Plaintiff's original 30(b)(6) notice, she sought to depose the "corporate representative with the most knowledge" of any investigations/ complaints about Maddox, "remedial measures" taken in response, and Maddox's termination. Ex. A, Topics 8, 9, 10, 12. WXYZ specifically objected that the "most knowledgeable" persons were already deposed or scheduled to be deposed; for instance, Erika McDaniels Storrs was the most knowledgeable person on the topic of the 2015 investigation, and Plaintiff was deposing her individually. Ex. B, Ex. D.

Plaintiff's current topics 11-14 drop the "corporate representative with the most knowledge" qualifier, and limits the requests to non-privileged investigations, but otherwise are nearly verbatim. *See* Ex. E. These topics thus remain unnecessarily duplicative and inappropriate: Plaintiff's deposition of Storrs is scheduled for today,

and she has already deposed Murri and Fernandez at length about the 2015 investigation, the remedial actions taken, and about Maddox's termination. Further, Plaintiff has already been provided with the non-privileged investigation documents.

Given that a Rule 30(b)(6) deposition's purpose is to prevent the situation where employees all disclaim knowledge of key events known to *someone* at the company, *see supra* at 1, and given that this concern is not at issue here, there is an extreme risk that Plaintiff's purpose in propounding these topics is to put WXYZ in the position where either (1) it must designate the *same* witnesses again, giving Plaintiff a second deposition of these witnesses using 30(b)(6) as a pretext; or (2) it must educate an unrelated person on the contents of voluminous documents and testimony that Plaintiff is already well aware of, with the risk that Plaintiff will try to disadvantage WXYZ if that witness is unable to remember all of this information, *see* Fed. R. Civ. P. 37. The fact that Plaintiff has, even at the meet-and-confer stage, refused to explain the purpose of these duplicative requests all but confirms that Plaintiff's goal is tactical, rather than a legitimate desire to obtain information. *See infra.* Such gamesmanship is not the purpose of Rule 30(b)(6). The Court should thus strike these topics as duplicative and cumulative. *See, e.g., Snoddy v. City of Nacogdoches*, 98 F. App'x 338, 340 (5th Cir. 2004) (affirming order quashing 30(b)(6) deposition where plaintiff had "already obtained the information he was seeking by deposing" the relevant individual witnesses); *Convertino v. U.S. Dep't of*

*Justice*, 2008 WL 4104347, at *9 (E.D. Mich. Aug. 28, 2008) (holding where "employee best qualified to testify" would be individually deposed, a 30(b)(6) deposition "would result in superfluous, unproductive discovery and is not necessary for [the plaintiff] to receive the information he needs."); *Versata Software v. Internet Brands, Inc.*, 2011 WL 4905665, at *2 (E.D. Mich. Oct. 14, 2011) (finding 30(b)(6) deposition notice "unreasonably cumulative, duplicative, and overly burdensome" where relevant individual deponents had same information).[3]

Even if these topics were not duplicative—and they are—they are also inappropriately overbroad as a 30(b)(6) topic insofar as they demand "all facts" about numerous, broad topics, including "the facts and findings from the 2015 investigation" and "[t]he facts, considerations, and discussions leading up to and surrounding Malcom Maddox's termination." Ex. E. As in *Prasad*, these sorts of topics that "essentially require a witness to testify as to every event, communication…and response—including rejected responses—that Defendant's

---

[3] In refusing to withdraw this request, Plaintiff cited *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 2018 WL 3358641 (S.D. Ohio July 10, 2018), but even *Majestic* recognized a party may, "in response to a 30(b)(6) notice, designate prior depositions as responsive and offer to be bound by the testimony given in those depositions in lieu of having to produce the same witnesses to answer the same questions again." *Id.* at *12; *accord, e.g.*, *Novartis Pharm. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001) (permitting this procedure to avoid duplicative discovery). If the Court were to refuse to quash these topics, WXYZ would likely designate prior testimony in lieu of forcing witnesses to appear for second, duplicative depositions—particularly given the repetitive questions and constant threats towards the witnesses and counsel the first time around. *See infra* at 19-21.

-11-

employees considered in connection with Plaintiff's claims" are inappropriately overbroad. 323 F.R.D. at 98. Plaintiff has deposed all of the relevant individual decision-makers. It is inappropriate to expect WXYZ to produce one (or all) of those witnesses again, or else try to force some other witness to memorize all the information that those witnesses have already provided.

### D.    Plaintiff's topics regarding WXYZ's process of answering document requests (Topics 15, 19) invades attorney/client privilege.

Plaintiff next proposed two topics demand that a witness testify about (1) "Defendant's discovery responses, including the search conducted to determine what responsive documents exist, and collection of responsive documents" to some 19 specific RFPs, and (2) electronic discovery searches and responses—including 10 subparts—without limitation to any specific RFPs. Ex. E, Topics 15, 19. These requests mirror Plaintiff's earlier demand to depose the "IT professional who conducted" electronic searches, Ex. K, Hr'g Tr. 88:21-22—with the Court stating, in response, that "I don't know that you do have that right." *Id.* at 89:2-3.

The Court's inclination at the December 20, 2018 hearing was correct—it is improper, and an invasion of attorney-client privilege, for Plaintiff to demand a witness testify about counsel-led document productions. *See, e.g.*, *Smithkline Beecham Corp. v. Apotex Corp.*, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000) ("answering requests for production and interrogatories customarily is performed with the assistance of counsel. Thus, the proposed area of inquiry improperly

-12-

trespasses into areas of work product and attorney-client privilege."); *Club v. BNSF Ry.*, 2016 WL 4528452, at *5 (W.D. Wash. Aug. 30, 2016) (rejecting nearly-identical request on overbreadth and privilege grounds where "all discovery requests were overseen by attorneys for its organization"). These topics should be quashed.

Further, this request is substantially overbroad and duplicative. Plaintiff has, in the course of this litigation, served eighty-five requests for production on a wide range of topics, and a wide range of custodians. This topic asks for a witness to discuss the "discovery responses, *including* the search…" for the specified requests—which, as written, means that a witness would need to be able to discuss the contents of the thousands of documents produced. That is plainly overbroad and improper. *See Banks*, 222 F.R.D. at 18–19. Even if just limited to the "search and collection" process, these two topics would collectively require a single witness to be prepared to discuss how 85 separate RFP responses came together, without any specific showing by Plaintiff that there are problems with the production that justify an intrusive inquiry into an attorney-guided process. *See infra* at 18. That is overbroad and unduly burdensome. *See Doe v. Heritage Acad., Inc.,* 2017 WL 6001481, at *13 (D. Ariz. June 9, 2017) (declining to "compel a party to disclose methodology, search terms, and custodians" used in responding to RFPs "absent a specific showing that the responding party did not make reasonable and adequate efforts to preserve and collect relevant information," and a showing of relevance and

-13-

proportionality); *Club*, 2016 WL 4528452, at *5 (noting that proponent of 30(b)(6) topic did not justify demand by showing that document search was inadequate); *cf. U.S. v. Dist. Council of N.Y.C.*, 1992 WL 208284 at *12 (S.D.N.Y. 1992) ("[h]owever liberal the discovery rules are, they could not reasonably be construed as requiring a party...to make a Rule 30(b)(6) deponent...the repository of all information known to counsel so that she could then provide it to an adversary.").

Finally, Topic 19—which contains 10 detailed subparts about ESI, metadata, and the like—is particularly inappropriate given that the parties agreed in their Rule 26 plan that documents could be produced in print format, and only needed to be produced natively upon a party's request. *See* R. 8, ¶ 7. Plaintiff has not requested material in native electronic format, and the time for her to make additional document requests has now passed. This portion of the topic is thus likewise irrelevant and not proportional to the needs of the case.

### E.    Plaintiff's demand for "all facts…and evidence" supporting the denials set forth in its answer are overbroad, unduly burdensome, and an "abuse of the discovery system" (Topics 16-17)

Next, Plaintiff demands a witness testify as to the "facts underlying, and evidence supporting, any denials or any factual allegation in Plaintiff's Complaint as set forth in Defendant's answer," and the "facts underlying, and evidence supporting, Defendant's answer and affirmative defenses." Ex. E, No. 17, 18. These sorts of requests are well recognized as being improper—even an "abuse of the

discovery process"—when presented in a *written* format like interrogatory request. *See, e.g.*, *Grynberg v. Total S.A.*, 2006 WL 1186836 at *5-7 (D. Colo. May 3, 2006) (requiring identification of "all material facts supporting the denial or affirmative defense," the "witnesses with knowledge of those facts," and "all material documents supporting the denial or affirmative defense is unduly burdensome as a matter of law and an abuse of the discovery system."); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998) (interrogatories requiring identification of all facts, documents or witnesses supporting a denial were unreasonably burdensome).

Consequently, courts likewise find overbroad Rule 30(b)(6) topics that similarly seek "all facts" supporting the responses drafted by attorneys in pleadings.[4] *See, e.g.*, *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (holding that under Rule 30(b)(6), a corporate party is not required to "marshal all of its factual proof and prepare a witness to be able to testify on a given defense or counterclaim," as that demand is "overbroad, inefficient, and unreasonable," and "also implicates serious privilege concerns."); *see also, e.g.*, *JPMorgan Chase Bank v. Winget*, 2016 WL 7242136, at *4 (E.D. Mich. Dec. 15, 2016) (holding that such

---

[4] As one court further observed—even in the absence of overbreadth—"complaints and answers, including affirmative defenses, are drafted by attorneys, and asking a 30(b)(6) witness, usually a non-lawyer, to answer this type of questions after being prepared in the manner of 30(b)(6) witnesses makes it extremely difficult to distinguish between" facts and counsel's mental impressions. *Fid. Mgmt. & Research Co. v. Actuate Corp.*, 275 F.R.D. 63, 64 (D. Mass. 2011).

30(b)(6) topics are overbroad, and that "to prepare a non-lawyer witness to testify on [such] topics…"would almost certainly result in the disclosure of work product privileged information"); *Dist. Council of N.Y.C.*, 1992 WL 208284 at *12. Here, Plaintiff has filed a ninety-five paragraph complaint, covering every conceivable aspect of this case and more. *See* R. 1. It includes, among other things, broad-based factual statements, and argumentative and legally-tinged allegations. *See id.* To demand that WXYZ have a witness explain *why* counsel admitted or denied every paragraph of Plaintiff's complaint is grossly overbroad, invasive of privilege, and an abuse of the discovery process.

Moreover, WXYZ's affirmative defenses are all legal concepts (or involve the application of law to facts within Plaintiff's own knowledge, like mitigation of damages), and thus by definition seek inquiry into counsel's mental processes and impressions as to how those legal defenses could apply. *See, e.g.*, *Cooper v. Charter Commc'ns, Inc.*, 2016 WL 128099, at *2 (D. Mass. Jan. 12, 2016) (precluding 30(b)(6) topic on affirmative defenses that involved "interpretation" of facts, or that "raise[d] legal arguments that are not, to a significant extent, fact dependent" as "[q]uestions about the facts, circumstances, and evidence supporting these defenses would almost certainly—and quickly—stray into the forbidden territory of a lawyer's mental impressions). There is no justification for this topic either.

-16-

Finally, WXYZ's concern with these topics is particularly acute given that Plaintiff's counsel has relentlessly sought to depose WXYZ's in-house counsel *and* outside counsel, precisely to inquire into work-product and privileged conversations—with the Court rejecting these attempts. *See* R. 72. These 30(b)(6) topics appear to be merely another means towards that improper end. There is no justification for these overbroad, abusive, and improperly-motivated topics.

### F.   Plaintiff inappropriately demands testimony about WXYZ's privileged legal hold (Topic 18).

Plaintiff's Topic 18 demands a witness testify about "WXYZ's legal hold process including all details of that policy and specific steps that were taken in this case to implement the hold." Ex. E. This is inappropriate. Legal hold memorandums are privileged. *See, e.g., Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116 (N.D. Ga. 2007) (request for production of legal hold notice defendant communicated to its employees denied as not reasonably calculated to lead to discovery of admissible evidence and likely to contain work product); *Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 22 (D.D.C. 2013) ("litigation hold letters are generally privileged").

Likewise, while "[t]he fact of a litigation hold is not privileged or protected by work product… the mental thought processes of lawyers authoring and promulgating litigation holds is privileged or protected." *Beaudry v. TeleCheck Servs., Inc.*, 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013). Here, Plaintiff

-17-

is well aware of the <u>fact</u> that a litigation hold was issued in this case, but her topics does not seek simple, unprivileged facts. Rather, on its face, the topic seeks the privileged process information itself: the "policy" of Defendant's counsel regarding holds, and counsel's steps in promulgating the specific hold here. Insofar as Plaintiff's own topic purports to disclaim privileged materials, Ex. E, Topic 18, the entire topic should be appropriately quashed.

Moreover, this request—like the requests related to document requests—is not relevant or proportional to the case. Plaintiff has never explained, let alone made any showing, to suggest that there are any issues related to WXYZ's document production, apart from the misleading and error-filled "second motion to compel" related to a few employees' text messages. *See* R. 94. This failure is all the more telling given that Plaintiff's claims necessarily rest on information within her own personal knowledge, and her own actions.[5] Nevertheless, despite the fact that all, or nearly all, of the relevant events in this case occurred three or more *years* before Plaintiff's suit, WXYZ produced a significant number of documents, including the relevant official records like the 2015 investigation file and Maddox's discipline

---

[5] *See e.g.*, *Langlois v. McDonald's Rests. of Mich., Inc.*, 149 Mich. App. 309, 317–18, 385 N.W.2d 778, 782 (1986) ("plaintiff cannot rely upon incidents of sexual harassment of which she was unaware to establish that she was subjected to a hostile work environment for purposes of the [ELCRA]"); *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 427 (2005) ("when an employee requests confidentiality in discussing workplace harassment, and the request for confidentiality is honored, such a request is properly considered a waiver of the right to give notice.").

letter. Plaintiff's topic demanding a witness to discuss privileged litigation hold information should be quashed for this reason too.

## II.   If the Court permits any Rule 30(b)(6) deposition, the Court should also impose appropriate limitations to ensure compliance with existing Court orders and to preclude inappropriate questioning.

If the Court permits any Rule 30(b)(6) deposition at all, it should impose clear limitations on the conduct of Plaintiff's counsel consistent both with the objectives of the Rule 30(b)(6) deposition, the deposition limitations of the federal rules, and the Court's earlier orders in this case.

*First*, the Court should limit Plaintiff's counsel to factual questions. That is the purpose of a Rule 30(b)(6) deposition—to seek information on "facts the corporation knows." *Byrd*, 2009 WL 3055303, at *3. By contrast, "[h]ypothetical questions…are never appropriate," nor is it permissible to ask a 30(b)(6) witness "to assess another witness's testimony." *Id.* Thus, a party has no cause to complain about a Rule 30(b)(6) witness's inability to answer "elaborate hypothetical questions," and a party's counsel cannot ask such "witnesses to speculate as to the state of mind of other, sometimes hypothetical, people" or ask them "questions that were compound and confusing." *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007), *aff'd,* 580 F.3d 485 (7th Cir. 2009). Unfortunately, all of those tactics have been frequently employed in this matter; one illustrative example of Plaintiff's repetitive, badgering hypotheticals is as follows:

-19-

Q.   She asks you -- well, if you did recall that, you had direct knowledge that others were treating her differently and worse because of the rumors, what steps would you have taken to alleviate that concern and issue?

A.   I don't know.  That's what was coming out in the investigation.

Q.   Well, if that information did come out in the investigation, would you have issued a statement to quell those rumors?

A.   I don't know.

MS. HARDY:  Objection, form.

A.   I don't know.

BY MR. HANNA:

Q.   Do you think it would have been appropriate to do so?

A.   That's speculative.  I don't know.

Q.   Well, as you sit here today, do you think it would be appropriate to do that?

A.   I don't know -- I don't know if it would be appropriate because there's other things – factors involved about how we take care of disciplinary issues and protecting all parties in a situation like this.

Q.   Let's assume in Tara Edwards' investigation others did come out and advise that they did treat her differently as a result of rumors.  If you were aware of that fact, would you have issued some kind of statement to advise these individuals that – of anything?

A.   I don't --

MS. HARDY:  Objection, form.  You're not asking about facts.  You're just asking speculative questions about what he would have done if such and such were the case, and that's –

-20-

> MR. HANNA:   Counsel, please stop coaching your witness on the record.
>
> MS. HARDY:  -- not what a deposition is about. I'm not coaching the witness.  I'm pointing out the fact that –
>
> THE WITNESS:  You keep asking me –
>
> MS. HARDY:  -- you are asking him all these scenarios about what he would have done under certain circumstances which are not -- it's not -- it's not asking him about what happened.  You're asking him about what he might have done if this or that had been established.  That's just not appropriate.

Ex. L, Fernandez Dep. 166-68. This valid objection was then followed by Plaintiff's tactical threat to contact the court. *Id.* This sort of questioning would be particularly inappropriate at a 30(b)(6) deposition, and it should not continue.

*Second*, the Court should make clear that Plaintiff is limited to one day of seven hours, consistent both with the federal rules and the Court limitation on the total number of depositions Plaintiff was permitted in this case. *See* R. 72, p. 4. Plaintiff's decision to propound some 29 topics and subparts should not give her the ability to unilaterally expand her deposition time beyond the appropriate limits in order to accommodate the sheer volume of her requests. *See E.E.O.C. v. The Vail Corp.,* 2008 WL 5104811, at *3 (D. Colo. Dec. 3, 2008) (ordering, in response to similar circumstances, that "[g]iven the number of topics… Plaintiffs are advised to carefully prioritize the topics prior to conducting the deposition, as no extension of

the deposition beyond seven (7) hours will be permitted without a showing of absolute necessity based solely upon the conduct of Defendant….")

Likewise, Plaintiff should be precluded from questioning 30(b)(6) witnesses on matters outside of the scope of the topics that WXYZ has designated that witness to address. To allow Plaintiff to question the 30(b)(6) witness on unrelated matters would effectively allow Plaintiff to evade the Court's ruling that she is limited to 15 depositions; she would be asking questions not of the corporation, but of the individual witnesses personally. *See* Fed. R. Civ. P. 26(c)(1)(D) (permitting court, for good cause shown, to limit topics of inquiry at deposition); *accord, e.g.*, *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 216 (E.D. Pa. 2008) (providing that witness need not answer question outside scope of 30(b)(6) notice).

*Third*, the Court should order that the deposition take place at Defendant's counsel's office. As a general rule, a 30(b)(6) deposition takes place "at the corporation's principal office and place of business," with the Court authorized to select any location in the event of a dispute. *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 165 F.R.D. 65, 67 (E.D. Mich. 1996). Here, Defendant Scripps is located in Cincinnati, but as the events in question occurred at WXYZ—and due to space and security concerns involved in holding a deposition at that TV station— Defendants would designate its counsel's nearby office as the location instead of on the physical premises of WXYZ itself.

-22-

**Conclusion**

WXYZ respectfully requests that the Court grant a protective order quashing or modifying Plaintiff's 30(b)(6) notice. If the Court does not quash the notice entirely, the Court should also impose appropriate limitations on the conduct of any 30(b)(6) deposition.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: */s/Thomas J. Davis*
  Elizabeth Hardy (P37426)
  Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
Dated: February 22, 2019  tdavis@khvpf.com

-23-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/Thomas J. Davis*

Thomas J. Davis (P78626)

Kienbaum Hardy

Viviano Pelton & Forrest, P.L.C.

280 N. Old Woodward Ave., Ste. 400

Birmingham, MI  48009

(248) 645-0000

tdavis@khvpf.com

318800