UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TARA EDWARDS**,

Plaintiff,

v.

CASE NO. 2:18-cv-10735-PDB-EAS

Hon. Paul D. Borman

**SCRIPPS MEDIA, INC**., d/b/a
**WXYZ-TV**,
a Foreign Profit Corporation,

JURY DEMAND

Defendant.

_____/

MICHAEL N. HANNA (P81462)
**MORGAN & MORGAN, P.A**
2000 Town Center
Suite 1900
Southfield, MI 48075
Tel: (313) 251-1399
mhanna@forthepeople.com


GEOFFREY N. FIEGER (P30441)
**FIEGER, FIEGER KENNEY &
HARRINGTON, P.C.**
19390 West Ten Mile Road
Southfield, MI  48075
Tel:   (248) 355-5555
g.fieger@fiegerlaw.com
*Attorneys for Plaintiff*

ELIZABETH P. HARDY (P37426)
THOMAS J. DAVIS. (P78626)
**KIENBAUM HARDY VIVIANO
PELTON & FORREST P.L.C.**
280 N Old Woodward Ave., Suite 400
Birmingham, MI  48009
Tel:  248-645-0000
ehardy@kohp.com
tdavis@kohp.com
*Attorneys for Defendant*

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
FOR PROTECTIVE ORDER TO QUASH OR
MODIFY PLAINTIFF'S 30(B)(6) NOTICE (D.E. 110)**

## **INTRODUCTION**

Defendant's Motion is meritless and vexatious.   Plaintiff has served a textbook Fed.R.Civ.P. 30(b)(6) (hereinafter "30(b)(6)") notice, conferred with Defendant for months to avoid unnecessary motion practice, and provided case law supporting *each and every one* of its textbook 30(b)(6) topics.   In its Motion, Defendant cites the incorrect standard for 30(b)(6) notice, makes unfounded conspiratorial accusations concerning what they purportedly believe Plaintiff's 30(b)(6) notice is attempting to delve into and misrepresents the scope of its policies and practices in an effort to limit the notice based on illusory distinctions. Plaintiff repeatedly asked Defendant to specifically state its objections so that she could craft her notice in a mutually agreeable manner, but Defendant refused.[1]   In an effort to alleviate Defendant's unfounded concerns and avoid unnecessary motion practice, Plaintiff amended the 30(b)(6) notice on two separate occasions, though she was not required to do so for her textbook topics, and provided case law supporting every topic in the 30(b)(6) notice, to no avail.

Additionally, Defendant fails to specify serious injury or harm in its Motion that would justify a protective order.   Instead, Defendant raises generalized

---

[1] *See*, *e.g.* D.E. 110-3 at p. 2 ("This is a standard 30b6 notice. For the third time, I am asking you to specifically outline what issues you take for each request, if any.   I want this clear and on the record, that you are refusing to outline the specific issues you purportedly have and proposed resolution for said issues, and also refusing a conference call to discuss same.")

objections that Plaintiff's topics are overbroad or duplicative.  However, Plaintiff has identified, with reasonable particularity, the topics for the 30(b)(6) witness(s). Defendant also incorrectly states that some topics seek information that is available elsewhere.  Defendant clearly misunderstands the purpose of a 30(b)(6) deposition as it binds the corporation to its answers and no 30(b)(6) deposition has been conducted yet, so this information is not duplicative.  The 30(b)(6) notice is proper, and the Defendant's motion to quash should be denied.

## PROCEDURAL BACKGROUND

On December 13, 2018, Plaintiff served a 30(b)(6) notice containing textbook topics for an employment litigation case.  *See* D.E. 110-1.  On December 22, 2018, Defendant sent an email correspondence regarding Plaintiff's notice and made general make-work objections to Plaintiff's entire notice that were substantively baseless.  *See* D.E. 110-3 at 6.  For example, Defendant took issue with the "corporate representative with the most knowledge" language, claiming that this language converts a 30(b)(6) notice to a Rule 30(b)(1) notice for a specific, unnamed person, and accused Plaintiff of "requesting 37 individual depositions".  *Id*.  Clearly, the "corporate representative with the most knowledge" language is commonly utilized in 30(b)(6) notices, and Defendant's accusations are

unfounded.[2]   While the first 30(b)(6) notice was proper, Plaintiff withdrew and amended the notice, including the removal of the "corporate representative with the most knowledge" language to alleviate Defendant's concern that Plaintiff is attempting to circumvent the Court Order and "requesting 37 individual depositions" to avoid unnecessary motion practice.  *See* D.E. 110-4.

On January 30, 2019, Defendant again raised make-work generalized objections to the second 30(b)(6) notice.  *See* D.E. 110-5 at 3.  Plaintiff again conferred to clarify the narrow scope she seeks to examine in her 30(b)(6) notice, and even asked Defendant to "provide proposed amendments to the requests," but Defendant refused.  *Id.* at 2.[3]  On February 12, 2019, Plaintiff again agreed to amend the notice to avoid unnecessary motion practice and to alleviate Defendant's hypothetical/non-existing concerns, and provided Defendant with Plaintiff's Second Amended 30(b)(6) Notice ("30(b)(6) Notice") attached to an email correspondence with legal authority supporting the 30(b)(6) topics.  *See* February 12, 2019 Correspondence, attached as **Ex.  C**; *See also* Plaintiff's Second

---

[2]   *See*  https://civilprocedure.uslegal.com/discovery/person-most-knowledgeable/, attached as **Ex. A** ("Rule 30(b)(6) of the Federal Rules of Civil Procedure is used by litigators as an instrument to take the testimony of the 'person most knowledgeable' about topics mentioned in the deposition notice.")

[3]  For example, Defendant argued that the topics on their face are overbroad because they are not limited to WXYZ.  *See* D.E. 110-3 at p. 1.  However, investigator Storrs later testified that she was not even an employee of WXYZ, but was a HR business partner out of another Scripps-owned station in Ohio, and was able to conduct the 2015 investigation because Defendant's HR policies are the same company-wide.  *See* Erika Storrs Dep., attached as **Ex. B** p. 29-32.

3

Amended 30(b)(6) Notice, D.E. 110-6.  Plaintiff's revised 30(b)(6) notice limits the topics to WXYZ; provided that she is *not* seeking information concerning unrelated or privileged matters after the December 20th hearing; identified specific topics pertaining to Defendant's discovery responses in topic 15; and separately identify the information she seeks concerning the electronic discovery searches in Topic 19, while providing supporting case law. *Id.* Notwithstanding Plaintiff's efforts, Defendant filed this frivolous motion, seeking to deny Plaintiff her right to depose a 30(b)(6) witness regardless of whether the topics are amenable.

## **ARGUMENT**

### I.      **Defendant fails to identify serious injury to justify a protective order**

In order to issue a protective order, the moving party has the burden to show good cause.  *Reynolds v. Knox Cty. Gov't*, 2018 WL 5023323, at *2 (E.D. Tenn. Oct. 16, 2018) (citing *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)).  To show good cause, the moving party "must articulate specific facts showing clearly defined *and serious injury* resulting from the discovery sought and cannot rely on mere conclusory statements."  *Nix*, 11 F. App'x at 500 (internal quotation marks and citation omitted) (emphasis added).[4]  Here, Defendant does not even cite to this

---

[4] *See also Murphy v. Kmart Corp.*, 255 F.R.D. 497, 502 (D.S.D. 2009), (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity.

4

standard but merely relies on conclusory allegations that Plaintiff's 30(b)(6) notice is duplicative, overbroad, and irrelevant. Thus, Defendant fails to specify how the 30(b)(6) notice causes harm or serious injury, and its Motion should be denied.

Defendant also erroneously relies on the "painstaking specificity" standard for a 30(b)(6) notice. "Courts have two lines of interpretation for the term *reasonable particularity*." Mark Kosieradzki, *30(b)(6): Deposing Corporations, Organizations & the Governmen*t 137 (Trial Guides) (2016). The Eastern District of Michigan does not follow the "painstaking specificity" interpretation, but follows the less stringent standard, which requires the requesting party to "designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters." *Dow Corning Corp. v. Weather Shield Mfg., Inc.,* 2011 WL 4506167, at *4 (E.D. Mich. Sept. 29, 2011) (internal quotation marks and citation omitted); *see also Pipefitters Local No. 636 Pension Fund v. Mercer Human Res. Consulting, Inc.*, 2007 WL 1695572, at *1 (E.D. Mich. June 11, 2007). Regardless, Plaintiff's textbook 30(b)(6) notice is sufficiently definite and reasonably particular to apprise Defendant of what information she is requesting. Additionally, Plaintiff conferred with Defendant for months and amended her notice on two separate occasions to further clarify the intended scope of her notice. Plaintiff seeks, as she is entitled to,

Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.")

a 30(b)(6) deponent of the Defendant corporation that will testify on its behalf. The purpose of such testimony, unlike an individual noticed for a deposition, is that it binds the corporation. *See Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.,* 2018 WL 3358641, at *12 (S.D. Ohio July 10, 2018). Plaintiff's limited 30(b)(6) notice is proportional to the needs of the case, and she is entitled to a 30(b)(6) deposition and as outlined in more detail below, Defendant has failed to show good cause for a protective order.

### A. The relevant policy topics (1-9) concerning the relevant policies in Defendant's documentation are proper 30(b)(6) topics for inquiry

Plaintiff's topics 1-9 concern Defendant's policies as outlined in its documentation are relevant to this case. *See* **Ex D** (Defendant's 2014 Employment Handbook ("Emp. Hb.")); **Ex. E** (2016 Emp. Hb.); **Ex. F** – (2017 Emp. Hb.); **Ex. G** (2018 Emp. Hb.); **Ex. H** (Defendant's Progressive Discipline Toolkit (1)); **Ex. I** (Defendant's' Progressive Discipline Toolkit (2)); **Ex. J** (Defendant's Zero-Tolerance Harassment Policy).  Many of these topics overlap but are separately requested because Defendant's Employment Handbook lists them separately.  For example, Defendant separately categorizes its anti-harassment, equal employment opportunity, sexual harassment and retaliation, inappropriate communication, performance management (which includes corrective action policies in the handbook), progressive discipline, and effective remedial action policies.  *See* **Ex. D - J**.  Topics 1–5 in the 30(b)(6) notice tracks the categorization in Defendant's

6

documents concerning anti-harassment policies.  Plaintiff cannot, for example, limit her inquiry into Defendant's "anti-harassment policy," and allow Defendant to take the position that they do not need to answer questions regarding the harassment in the 30(b)(6) because Maddox's conduct was not a violation of the "anti-harassment" policy, but rather a violation of the "inappropriate communication" policy, which was not noticed.[5]  Regardless, unless Defendant takes a position that sexual harassment is not sexual harassment or makes other illusory distinctions for litigation purposes, the deposition inquiry into Topics 1–5 should overlap, and once it is established that the same policies apply here, the same questions/answers will overlap and be incorporated by reference.  Similarly, Topics 6 - 9 *track the name of Defendant's policies' in its documentation*.  *See Id.* Defendant's cannot in good faith argue that they are unable to discern what Plaintiff is seeking from the "plain language" of the notice.  These policies are highly relevant to this matter, specifically identified, and Defendant's witnesses thus far have not been able to answer critical questions regarding these policies.

Defendant states that the disclaimer limiting these topics to the *general application* of the requested policies is confusing. However, Plaintiff's counsel notified Defendant's counsel that the disclaimer was included in *to satisfy*

---

[5] Defendant denies that Maddox ever sexually harassed Plaintiff, but state that he violated company policy by engaging in "inappropriate conduct".  *See* Michael Murri Dep., D.E. 69-3 at p. 22:1-3 (Q: "Do you believe Malcom Maddox sexually harassed Tara Edwards?" A: "I believe there was inappropriate conduct.").

*Defendant's stated concerns*, and clarify the fact that Plaintiff does not seek specific information concerning unrelated matters or privileged materials.[6] Plaintiff seeks this information to establish how Defendant, in general, would or should proceed with a complaint of sexual harassment under its policies, which is necessary to establish that Defendant deviated from its policies during the investigation of Plaintiff's complaint, and to establish pretext.

Next, Defendant attempts to limit the temporal scope of these topics to only the 2015 Maddox investigation. However, the Court has already rejected this temporal scope argument for purposes of discovery. *See* D.E. 47 at 47. Plaintiff's complaint focuses on the retaliation and hostile work environment she was made to endure *after* and as a result of Defendant's failure to take effective remedial measures in the 2015 investigation, which led to her constructive discharge. *See* D.E. 1. Moreover, the harassment addressed in the 2015 investigation occurred *before* 2015, and Maddox's untimely termination based on the sexual harassment occurred in 2018. Furthermore, Defendant's policies in its employment handbook appear to be identical from 2014 to 2018, and Defendant, therefore, would only

---

[6] *See* **Ex. C** at 5 (**"**As I indicated in our call last week, Plaintiff's initial request did not seek specific information concerning unrelated matters or privileged materials. Nevertheless, in an effort to alleviate your concerns and avoid unnecessary motion practice, Plaintiff has amended the notice to include the following language to the topics that request application of policies: "This topic is limited to the general application of these policies, not their specific application in any other matter, and their application in this matter," and specifically indicated throughout the notice that Plaintiff is not seeking privileged information."**)**

need to testify as to any changes made to these policies from 2014 to 2018, if any. Accordingly, the requested time period, 2014 to 2018, is appropriate. *See Murphy*, 255 F.R.D. at 510 (The court rejected defendant's argument that plaintiff's subject of examinations of a five year period was temporarily overbroad because plaintiff is entitled to discovery for a reasonable period of time before and after defendant's alleged discriminatory conduct); *See also Id. citing Sallis v. Univ. of Minn.,* 408 F.3d 470, 478 (8th Cir. 2005) (In the Title VII context, "[c]ourts have frequently tailored discovery requests, as to historic company records, to encompass a reasonable time period, both before and after the discriminatory event bring alleged.") (additional quotation marks and citation omitted); *E.E.O.C. v. Woodmen of the World Life Ins. Society,* 2007 WL 1217919 at *3 (D. Neb. March 15, 2007) (In cases involving claims of sexual harassment and discrimination, "discovery is typically limited to ... 'a reasonable time before and after the discrimination complained of.'") (quoting *Mitchell v. Nat'l R.R. Passenger Corp.,* 217 F.R.D. 53, 57 (D.D.C.2003)); *Miles v. Boeing Co.,* 154 F.R.D. 117, 119 (E.D.Pa.1994).

Plaintiff's textbook policy topics are also proportional and narrowly tailored to a single location. *Murphy,* 255 F.R.D at 509-513 (holding that the employee was entitled to inquire into employer's policies); *see also Buck-Roberson v. Citibank Federal Savings Bank*, 162 F.R.D. 338, 343 (N.D. Ill. 1995). In contrast, Defendant's reliance on *Prasad v. George Washington Univ.*, 323 F.R.D. 88

(D.D.C. 2017) as instructive is misplaced. In *Prasad*, the topics were much more extensive than the topics in Plaintiff's current Rule 30(b)(6) notice. Defendant only cites a portion of the topics in *Prasad* but if read as a whole, the plaintiff in *Prasad* sought a deposition on various subject matters within a single topic request, and the other topic requests followed suit. *Id.* at 98. Defendant also cites *Parrottino v. Bankers Life & Cas. Co.*, 2014 WL 1516195, at *5 (E.D. Mich. Apr. 17, 2014) on the basis that a Rule 30(b)(6) topic on "[a]ll computer, software, and equipment policies; including the underlying rationale of those policies and an understanding of their practice/execution" as overbroad and unduly burdensome. However, *Parrottino*'s actual reasoning was that the topic was overbroad and unduly burdensome "given the potential number of computer, software, and equipment policies in place, **notwithstanding the variety of topics those policies encompass, throughout Defendant's organization nationwide**." *Id.* (emphasis added). Here, Plaintiff does not seek policies for Defendant nationwide, but limited her request to information concerning the sole equipment policy and only for the location Plaintiff worked. Thus, the Rule 30(b)(6) topics are proportional.

**B. Topic 10 is relevant and proportional to the case**

Concerning Topic 10, Defendant argues that Plaintiff fails to allege a failure to promote claim related to an anchor position. However, Plaintiff's Verified Complaint *expressly alleges* Defendant's failure to promote as an adverse

employment action against Plaintiff. *See* D.E. 1 at ¶ 71. Moreover, Defendant takes Plaintiff's testimony out of context. Defendant states that Plaintiff did not apply for a "promotion" while at WXYZ or indicate an interest in a promotion. However, Plaintiff's testimony states:

> MS. HARDY--…You never expressed an interest with management in actually moving to another job in which you would be promoted, correct?
> MS. EDWARDS—Well, there was no job to be promoted to, so there was no opening. *If there was an opening, then I would have had that conversation*.

*See* Tara Edwards Dep., attached as **Ex. K,** p. 437:1-7. Clearly anchor opportunities were available: Defendant promoted Maddox to the morning anchor spot. However, Defendant did not advise Plaintiff of this opportunity.

Defendant also mischaracterizes Plaintiff's testimony that she never inquired about why she did not fill in as an *ad-hoc* anchor after 2014. Plaintiff testified that she did raise these concerns with her supervisor, and inquired as to whether management viewed her differently or had confidence in her after she complained of the harassment in 2015. *Id.* at p. 308:3-21.[7] Defendant also argues that Manney

---

[7] *See also Id.* at 272-273 ("I don't know how much they believed. In fact, when I would go to Barb, I would say, you don't believe that I had an affair with that man, do you? You don't believe that I had an affair with that man. I kept asking her because it was important to me that my bosses knew that I wasn't have an affair with that man. Because the last thing I wanted, I didn't want that to affect my career. I didn't want that to affect -- I was getting opportunities -- I was getting opportunities of fill-in anchor, I was doing a lot of other stuff at the station, and I stopped getting those things, and I just wanted to make sure that none of those

testified that it is difficult for a reporter to become a "rookie anchor" in a larger TV market.    However, Plaintiff previously worked as an anchor for WSMH, a weekend anchor at WNEM, and as a fill-in anchor at WXYZ prior to her manager's knowledge of the sexually disparaging rumors, which stymied her growth.  *Id.* at 103, 104, 152.  Plaintiff also testified that she discussed anchor opportunities in her contract negotiations in 2015, and was hesitant to complain because she was "getting a chance to anchor . . . . and I had to get along with the person who I was getting that job with." *Id.* at 182, 302.  Plaintiff has sufficiently alleged her failure to promote claim and is entitled to information regarding anchor's salaries to assist with her damages calculation.  This topic is relevant and proportional, and Defendant may not unilaterally set limits as to what information has merits or relevance as it has repeatedly attempted to do.  *See* D.E. 47, p. 5.

### C. Topics 11-14 concerning Maddox's investigations and termination are proper

Topics 11-14 concern Maddox's complaints, investigations, and untimely termination.  These topics are clearly relevant, and Plaintiff's notice is reasonably particular such that the Court and Defendant can discern what Plaintiff is seeking

---

decisions were being made because of - because of what Malcolm was saying. And I didn't want them to think that I would do something like that.  I didn't want them to think that, on the company's dime, I was going down to West Palm and having an affair with that man. I didn't want them to think I was doing any of those things.  My reputation is very important to me, and the only thing I ever wanted to do was clear my name.")

from the plain language.  Defendant's arguments are meritless.  Defendant argues that topics 11-14 seek to depose several individuals who have already been deposed, and support this argument with its reading of the "person with the most knowledge" language.  To alleviate Defendant's concerns, Plaintiff removed that standard language.  It is up to Defendant to designate a witness to be prepared to testify to the subjects outlined in Plaintiff's 30(b)(6) notice.  If Defendant chooses a representative that has been deposed, its selection would not preclude the 30(b)(6) deposition.  Contrary to Defendant's assertion that this would be in violation of Rule 30(a)(2)(A)(ii)'s prohibition on multiple depositions of the same individual, Rule 30(b)(6) plainly states that it "does not preclude a deposition by any other procedure allowed by these rules." *See also Smith v. Gen. Mills, Inc.*, 2006 WL 7276959, at *6 (S.D. Ohio Apr. 13, 2006).

In that same vein, Defendant argues that these topics are duplicative because Plaintiff has already obtained this information from the deposition of fact witnesses and received investigation documents.  However, Defendant's same argument was soundly rejected in *Murphy* where the court reasoned "[i]f the court were to adopt [defendant]'s position, then few Rule 30(b)(6) depositions would ever take place.…Simply put, it is not up to [defendant] to determine what discovery [plaintiff] needs."  255 F.R.D. at *507 (internal quotation marks and citation omitted); *see also, e.g., Majestic*, 2018 WL 3358641 at *12 ("prior deposition

testimony from individual fact witnesses does not relieve a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition" (internal quotation marks and citation omitted); *Abbott Lab. v. Alpha Therapeutic Corp.,* 2001 U.S. Dist. LEXIS 8540, *5–6 (N.D.Ill. Jan. 31, 2001) ("this Court finds that Abbott has the right to question [witnesses] as Rule 30(b)(6) witnesses on all matters relating to the Rule 30(b)(6) subjects for which [the corporation] has designated them, regardless of whether the same or similar questions were asked at their fact depositions.")

Moreover, Plaintiff has not obtained substantive responses for these topics in the depositions conducted. For example, Defendant has thus far failed to explain why Defendant chose not to terminate Maddox in 2015. If Defendant takes the position that its reasoning is privileged, Defendant can simply object to the question and claim the privilege during the 30(b)(6). But Plaintiff is entitled to know if Defendant is willing to bind itself to this privilege claim, thereby avoiding a scenario where Defendant later waives this privilege claim at trial and ambushes Plaintiff with an alternative explanation.

Defendant cites *Snoddy v. City of Nacogdoches*, 98 F. App'x 338, 340 (5th Cir. 2004) for support of its request to quash the 30(b)(6) deposition as unreasonable, cumulative and duplicative. However, Defendant fails to note that "[t]he district court also observed that these witnesses were provided by the

[defendant] *under Rule 30(b)(6)*." *Snoddy*, 98 F. App'x at 340, n 2.  Here, the

witnesses that have already been deposed have not been provided for under Rule

30(b)(6). This distinction between a fact witness and 30(b)(6) witness is significant

as it was illustrated in *Smith*, 2006 WL 7276959, at *5, (quoting *Sabre v. First*

*Dominion Capital, LLC,* 2002 U.S. App. LEXIS 22193, *7–8 (S.D.N.Y. Nov. 7,

2002)) that "[t]he testimony of a witness noticed as an individual does not bind an

entity as a 30(b)(6) witness does." *Smith* further provided that:

> Courts have soundly rejected [defendant]'s argument that prior
> deposition testimony from individual fact witnesses relieves a
> corporation from designating a corporate spokesperson in response to
> a Rule 30(b)(6) notice of deposition. *See, e.g., Foster–Miller, Inc. v.*
> *Babcock & Wilcox Canada,* 210 F.3d 1, 17 (1st Cir.2000) (imposing
> sanctions and fees for refusing to produce 30(b)(6) witnesses because
> the issuing party "had in early stages of the case already deposed the
> employees"); *Commodity Futures Trading Comm. v. Midland Rare*
> *Coin Exch. Inc.,* Case No. 97–7422–CIV, 1999 U.S. Dist. LEXIS
> 16939, *9–10 (S.D.Fla. July 28, 1999) (Rule 30 allows deposition of
> witness in her individual capacity and in corporate capacity because
> the depositions serve distinct purposes, impose different obligations
> and involve different ramifications). …  [a] deposition pursuant to
> Rule 30(b)(6) is substantially different from a witness's deposition as
> an individual. A 30(b)(6) witness testifies as a representative of the
> entity, his answers bind the entity and he is responsible for providing
> all the relevant information known or reasonably available to the
> entity.  Thus, the fact that individually named witnesses have testified
> concerning a subject is generally no obstacle to a 30(b)(6) deposition
> on the same subject.

*Id.* at *5 (internal quotation marks and citation omitted).  Accordingly, this Court

should reject Defendant's argument that Plaintiff may not seek a 30(b)(6)

deposition because she seeks duplicative information provided by fact witnesses.

Defendant's reliance on *Convertino v. U.S. Dep't of Justice*, 2008 WL 4104347 (E.D. Mich. Aug. 28, 2008) is also misplaced.  *Convertino* involved a motion to compel a 30(b)(6) deposition from a *non-party* organization, the Detroit Free Press, and a separate deposition for a non-party employee.  The *Convertino* court also determined that the "First Amendment interests at stake in this matter counsel against compelling discovery from the Free Press."  *Id.* at 10.  Similarly, Defendant's reliance on *Versata Software v. Internet Brands, Inc.*, 2011 WL 4905665, at *2 (E.D. Mich. Oct. 14, 2011) is also misplaced as the court denied a 30(b)(6) deposition of a *non-party* since "[n]on-party status is a significant factor to be weighed in the undue burden analysis."  Here, Plaintiff seeks to depose Defendant's corporate designee; not a third-party corporate representative.

Finally, topics 11-14 are narrowly tailored to the most vital information relating to the causes of action at issue here.  For instance, in *Majestic,* the court narrowed the 30(b)(6) notice to "**all communications** related to this case." 2018 WL 3358641 at *7 (emphasis added).  Here, topics 11-14 are more specific and narrower as it does not simply propose all communications related to this case but identifies specific events for which it seeks non-privileged communications.

### D. Topics 15 and 19 related to the discovery responses are proper

"It is commonplace in litigation to inquire of a corporate defendant the steps it took to find and produce documents relating to the litigation, as well as the

corporation's electronic document storage and retrieval systems, in order to ensure that discovery was diligently completed." *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.,* 2008 WL 4693374, at *3 (W.D. Pa. Oct. 23, 2008); *See also Ballentine v. Las Vegas Metro. Police Dep't*, 2016 WL 2743504, at *6 (D. Nev. May 9, 2016) (sanctioning defendant for failing to make a good faith effort to furnish a qualified 30(b)(6) designee to respond to requests concerning efforts made to locate responsive documents); *Vennet v. Am. Intercontinental Univ. Online,* 2007 WL 4442321, at *4 (N.D. Ill. 2007) (holding that plaintiffs are entitled to conduct a Rule 30(b)(6) deposition concerning defendant's document retention and destruction practices); *Doe v. D.C.*, 230 F.R.D. 47, 56 (D.D.C. 2005) ("Rule 26(b)(1) may be construed to allow for discovery of document production policies and procedures in allowing '[p]arties [to] obtain discovery regarding any matter,… including the existence, description, nature, custody, condition, and location of any…documents.' Fed.R.Civ.P. 26(b)(1). Plaintiff may, therefore, request information as to the 'existence,' 'custody,' or 'condition' of documents, thereby establishing defendant's policies and procedures of document retention and production."); *Stewart Title Guar. Co. v. Credit Suisse*, 2014 WL 7186805, at *1 (D. Idaho Dec. 16, 2014).

Defendant's unduly burdensome arguments concerning topics 15 and 19 are also meritless. Concerning topic 15, Defendant's Responses to *all of the requested*

*RFPs* refer back to its responses to RFP Nos. 12, 14, 15, 21, 22, 27, 30, 31, 36, 41. *See* D.E. 31-8.  Thus, Defendant takes the position that the searches it conducted for the 10 aforementioned requests sufficiently respond to all of the requests outlined in 30(b)(6) topic 15, and Plaintiff's inquiry into *ten searches* is not unduly burdensome.  Concerning topic 19, Defendant only conducted *three electronic searches* in response to RFP 21, 27, 30, and refers Plaintiff to its objections and responses to these three RFPs in response to all other RFPs.  *See id*.  Thus, Defendant takes the position that it's electronic searches for these three requests sufficiently responds to all of the discovery requests, and Plaintiff's inquiry into *three searches* is not unduly burdensome.  The subcategories outlined in topic 19 are also *textbook* 30(b)(6) inquiries concerning electronic discovery.

Moreover, there is no requirement that a 30(b)(6) deposition be limited to one deponent if necessary.  "[Defendant] must designate more than one deponent if necessary in order to respond to the relevant areas of inquiry specified by the party requesting the deposition." *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017), (quoting 7–30 Moore's Federal Practice—Civil § 30.25 (2016)).

Finally, Defendant asserts that it has produced plenty of information, which is false, but regardless it is not up to Defendant to determine when discovery is

enough or unilaterally decided the relevance of discovery.[8]  Plaintiff is entitled to this information sought in topics 15 and 19.

### E. Topics 16 and 17 relating to Defendant's Answer and Affirmative Defenses are well recognized as proper 30(b)(6) topics

Plaintiff is entitled to discovery concerning the underlying facts and evidence supporting Defendant's Answer and Affirmative Defenses.  *See Un. Techs. Motor Sys., Inc. v. Borg-Warner Auto., Inc.,*1998 WL 1796257, at *1 (E.D. Mich. Sept. 4, 1998) (Concerning a 30(b)(6) notice that lists, *inter alia*, "eighteen subject areas, primarily related to the facts underlying the allegations in the plaintiff's complaint and its affirmative defenses," the Court held that "It is beyond serious question that Borg–Warner is entitled to conduct discovery with regard to the subject areas listed in it's 30(b)(6) deposition notices. In an action of this type, a defendant is entitled to know what the plaintiff's position at trial will be on these subjects. A defendant may properly inquire about the nature and extent of the plaintiff's contentions, both factual and legal."); *See also Pugliese v. I. C. Sys., Inc.,* 2010 WL 11545062, at *12 (E.D. Mich. July 21, 2010) (Denying Defendant's Motion for Protective Order while concluding "that plaintiffs are entitled to

---

[8] Defendant's recent court-ordered electronic production confirms the fact that the 2015 investigative file it produced was incomplete.  *See* Composite **Ex. L**; *Compare to* D.E. 41-2.  Clearly, the Court-Ordered electronic search should not have captured new documents related to the 2015 investigation, which Defendant represented was previously produced in its entirety.  Plaintiff is entitled to inquire to see if additional documents not captured by the electronic search exist, since it is now confirmed that the initial 2015 production was incomplete.

examine a Rule 30(b)(6) witness on the following: 11. Any and all other information related to the factual basis for Corporate Defendant's Answer; 12. Any and all other information related to Corporate Defendant's defenses contained in its Answer . . . I note defendants' specific argument that 'the information in question—the factual basis for the Answer to the various allegations in plaintiffs' Complaint—is within the cognizance of fact witnesses whom Plaintiffs have already [been] deposed.' . . . However, I decline to put a limitation on Deposition Topic No. 11 on this basis."); *Majestic*, 2018 WL 3358641, at *6; *Babcock Power, Inc. v. Kapsalis*, 2016 WL 6804909, at *2 (W.D. Ky. Nov. 16, 2016) ("The Court agrees that plaintiffs' Rule 30(b)(6) deponent(s) is not required to give expert testimony; rather, the deponent must have knowledge of the *factual* basis for plaintiffs' claims." (emphasis in original); *Smith*, 2006 WL 7276959, at *3 ("Numerous courts have ruled that a Rule 30(b)(6) notice of deposition that seeks the factual bases for another party's claims or defenses is proper.") (citing cases). Even the case Defendant cites notes that "[i]t is proper, of course, to inquire about the material facts supporting specific factual matters raised in the pleadings." *Grynberg v. Total S.A.,* 2006 WL 1186836, at *7 (D. Colo. May 3, 2006).

Defendant seeks a protective order to prevent Plaintiff from inquiring into the facts and evidence supporting Defendant's affirmative defenses, claiming that it invades counsel's mental processes. As a threshold matter, topics 16 and 17 do

not seek the legal theories and expressly state that they "specifically exclude any attorney-client and/or work product protected conversations," but simply seeks the facts and evidence underlying Answer and Affirmative Defenses.  *See* 110-6 at 4. Moreover, various courts have rejected Defendant's argument.  *Majestic*, 2018 WL 3358641 at *6; *Pipefitters Local No. 636*, 2007 WL 1695572, at *1 ("At the Rule 30(b)(6) deposition, inquiry can be made on the plaintiff's contentions, both factual and legal.") (internal citation omitted); *Smith*, 2006 WL 7276959, at *4, (quoting *Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.,* 137 F.R.D. 267, 278-279 (D. Neb. 1989)) ("No contention can be made that the attorney-client privilege precludes disclosure of factual information. The privilege does not protect facts communicated to an attorney.") (internal quotation marks and citation omitted); *Bd. of Regents v. Nippon Telephone and Telegraph Corp.,* 2004 U.S. Dist. LEXIS 28819, at *17 (W.D. Tex. June 1, 2004) (noting that it is sanctionable and improper to refuse to provide Rule 30(b)(6) testimony regarding the factual bases of its affirmative defenses.)[9]  Plaintiff's request is not overbroad as 30(b)(6)

---

[9] The cases Defendant cites are not applicable to this analysis.  For example, *JPMorgan Chase Bank v. Winget*, 2016 WL 7242136 (E.D. Mich. Dec. 15, 2016) concerns Winget's post-judgment 30(b)(6) notice topics related to a $400 million dollar judgment, and the topics at issue are not remotely similar to Plaintiff's 30(b)(6) notice, and the legal analysis is therefore irrelevant. *In re Indep. Serv Orgs Antitrust LItig.*, 168 F.R.D. 651 (D.Kan. 1996) involves an antitrust lawsuit, and the legal analysis and overbreadth conclusion is irrelevant to this single plaintiff employment discrimination case.

notices routinely provide for facts underlying Defendant's answer and affirmative defense. *See Smith*, 2006 WL 7276959, at *3.

### F. Topic 18 concerning Defendant's legal hold process is well recognized as proper a 30(b)(6) topic

Courts in this district and beyond recognize that 30(b)(6) topics concerning litigation hold are proper. *See Parrottino v. Bankers Life & Cas. Co.*, 2014 WL 1516195, at *5 (E.D. Mich. Apr. 17, 2014) ("Ordering Defendant to designate a corporate representative to testify to Plaintiff's Rule 30(b)(6) Topic Nos. . . 49", which states "[Defendant's] document retention and destruction policies, including by [sic] not limited to the retention and destruction of ESI, and any instructions or efforts made to preserve documents in this litigation, including any litigation hold."); *See also Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, 2013 WL 1196606, at *13 (S.D. Ohio Mar. 25, 2013); *In re Zurn Pex Plumbing Prods. Liab. Litig.,* 2008 WL 5104173 (D.Minn. Nov. 26, 2008) (same).

Tellingly, Defendant failed to provide any authority whatsoever denying a motion to compel or issuing a protective order for a 30(b)(6) notice concerning legal hold, and invite this Court to break from established precedent. Worse, the only case it cites that discusses legal holds in 30(b)(6) depositions, *Beaudry v. TeleCheck Servs., Inc.,* 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013, *affirms the relief Plaintiff seeks*. To demonstrate Defendant's deceptive briefing, Plaintiff will provide the entire discussion Defendant references in its brief:

22

The defendants assert that the defendants' document retention policies and procedures, particularly relating to litigation hold notices, is not relevant to any of the issues in this case. The defendants are correct that such issues are not relevant to the merits of the case. However, they are relevant to a potential issue of spoliation in light of the plaintiff's assertions of missing or incomplete data production.  The fact of a litigation hold is not privileged or protected by work product. In contrast, the mental thought processes of lawyers authoring and promulgating litigation holds is privileged or protected. The defendants are emphatic that Ms. Williams is not the only person who can testify about the defendants' document retention policies and procedures. Although Mr. Ahles may not have been particularly well-versed, the Court takes the defendants at their word. **The plaintiff should be entitled to depose a person or persons knowledgeable about the retention policies and procedures in general and the specific litigation holds placed in this case. The Court assumes that such a deposition would be conducted pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and that the defendants would adequately prepare such a witness who would be fully knowledgeable about the matters designated by the plaintiff.** If, however, no such deponent exists other than Ms. Williams, the Court will reconsider requiring Ms. Williams to be deposed about when litigation holds were made in this case, what the litigation hold required, and to whom the litigation hold was provided.

*Id.* at 2.  (emphasis added).  Defendant did not take sufficient steps to preserve and produce evidence in this case, including Maddox's work phone.  For this reason, Plaintiff seeks information relating to Defendant's legal hold process, and specific steps that were taken to implement the hold.   Plaintiff also explicitly states that topic 18 "specifically excludes any attorney-client and/or work product protected conversations," and Defendant's objections are therefore meritless. *See* D.E. 110-5.

## II.    This Court should deny Defendant's proposed limitations because they are without merit and not ripe for review.

Defendant sets forth several proposed limitations that are improper and/or not ripe for review. Defendant's request to prohibit theoretical questions is nonsensical; "[t]here is no prohibition against asking hypothetical questions of a lay witness during a deposition." *Troutman v. Louisville Metro Dep't of Corr.,* 2018 WL 3041079 at *5 (W.D. Ky. June 19, 2018) (citing *Miller v. Vill. of Pinckney*, 2008 WL 4190619, at *1 (E.D. Mich. Sept. 9, 2008)); *see also Active Sports Lifestyle USA, LLC v. Old Navy, LLC,* 2013 WL 1459893, at fn5 (C.D. Cal. Apr. 8, 2013) ("Responding to a hypothetical posed by the magistrate judge . . . . counsel for Old Navy agreed that the company's 30(b)(6) witness would be able and willing to answer appropriate questions on such topics."); *Dent v. U.S. Tennis Association*, 2010 WL 1286391, at *1 (E.D.N.Y. 2010); *Namoury v. Tibbetts*, 2007 WL 638436, at *3 (D. Conn. Feb. 27, 2007). Additionally, the "hypothetical" questions in Fernandez's deposition are actually based on facts on the record.[10] It is critical that Plaintiff be permitted to establish to compare what should have happened based on Defendant's own policies, with what actually happened.

Defendant's second limitation is also not yet ripe for review. The 30(b)(6) deposition has yet to occur and thus, the Court lacks jurisdiction to rule on this matter. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson*

---

[10] *Compare* D.E. 110 at 20 and Defendant's Investigative Findings, D.E. 41-2 at 2 ("(Malcom" told me that when (him and Plaintiff) were at MMJ U he and her were having sex from that point on. He was talking to everyone about it. I totally went away from her b/c I thought it was gross for having sex with a married man.")

*Cty., Tennessee,* 274 F.3d 377, 399 (6th Cir. 2001). While Plaintiff has no intention of exceeding the seven-hour limitation, if the deposition does run over seven hours based on Defendant's conduct or otherwise, Plaintiff can seek an extension of time if necessary. *See* Fed. R. Civ. P. 30(d)(1). Moreover, it is well established that a 30(b)(6) deponent is required to answer questions based on their personal capacity.

Finally, this Court should deny Defendant's request that the deposition take place at Defendant's counsel's office. "A party may unilaterally choose the location for a deposition of the opposing party." *Powerhouse Licensing, LLC v. Checkfree Servs., Corp.,* 2013 WL 5874814, at *2 (E.D. Mich. Oct. 30, 2013); *see also* Fed. R. Civ. P. 30(b)(1). While Defendant is correct that the general place of location for a 30(b)(6) deposition is the corporation's residence or place of business, Defendant does not want the deposition to take place at the WXYZ station. Therefore, as the party seeking the deposition, Plaintiff noticed this deposition to be conducted at Plaintiff's counsel office, which is a half mile away from the WXYZ station.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's motion for a protective order quashing or modifying Plaintiff's 30(b)(6) notice.

Respectfully submitted,

*/s/ Michael N. Hanna*
MICHAEL N. HANNA (P81462)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI  48075
(313) 739-1950
mhanna@forthepeople.com

*Attorney for Plaintiff*

Dated:  March 20, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.


 */s/ Michael N. Hanna*
MICHAEL N. HANNA

27