UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARA EDWARDS,
                       Civil Action No.: 18-10735
                       Honorable Paul D. Borman
       Plaintiff,     Magistrate Judge Elizabeth A. Stafford

v.

SCRIPPS MEDIA, INC. d/b/a
WXYZ-TV,

          Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR PROTECTIVE ORDER [ECF NO. 110]**

## I.    Introduction

Defendant Scripps Media, Inc. moves for a protective order to quash

or modify Plaintiff Tara Edwards' notice of deposition under Federal Rule of

Civil Procedure 30(b)(6).[1]  The Court held a hearing on April 11, 2019.  The

Court grants in part and denies in part defendant's motion and orders

defendant to designate a Rule 30(b)(6) witness to answer questions about

these topics:

_____

[1] The Honorable Paul D. Borman referred all pretrial matters excluding
dispositive motions to the undersigned for hearing and determination.
[ECF No. 84].

- WXYZ's policies and procedures about anti-harassment, retaliation, inappropriate communications, progressive discipline, effective remedies, performance management and open-door communications from 2015 to 2016, and the application of those policies to her complaint.  Questions about the application of those policies more generally or to other complaints are not allowed.

- Defendant's knowledge of the facts and findings from the 2015 investigation about Malcom Maddox.

- Defendant's consideration of potential remedial measures in response to Edwards' complaint and the investigation of that complaint.

- The facts underlying defendant's answer and affirmative defenses.

## II.   Background

Plaintiff claims that Malcolm Maddox sexually harassed her and spread false and perverse sexual rumors about her; that she formally complained about the harassment and misconduct in January 2015; that defendant investigated her report of sexual harassment, silenced her, imposed insufficient and undisclosed disciplinary action on Maddox, and then promoted Maddox; that defendant's ineffective and inadequate punishment of Maddox led others to believe that the rumors he had spread about her were true; and that as a result of the above, she was constructively discharged on December 31, 2016.  [ECF No. 1; ECF No. 60, PageID.1891-94].  Plaintiff states that defendant reopened the

investigation in December 2017 after Rev. W.J. Rideout III (a local pastor and activist) made public accusations against Maddox related to his (Maddox's) harassment of plaintiff, and that Maddox then admitted to exercising poor judgment and engaging in inappropriate communication with coworkers.  [*Id.*]  When plaintiff filed her lawsuit in March 2018, Maddox was still employed with defendant, but he soon fired after an attorney-led investigation.  [*Id.*].

Plaintiff sues defendant under Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.*  Count I alleges sexual harassment, hostile work environment and constructive discharge; Count II alleges sexual discrimination; and Count III alleges retaliation.  [*Id.*].  At a hearing, plaintiff clarified that, for Count II, she is not alleging that she was treated differently than similarly-situated men.  [ECF No. 60, PageID.1891-94].  For her Count III retaliation claim, she alleges that defendant did not provide her with anchor opportunities or promote her career, and that her schedule was switched.  [ECF No. 1; ECF No. 60, PageID.1891-94].

Plaintiff requests an award of lost wages, compensatory damages and exemplary damages.  [*Id.*].  Although her complaint refers to punitive damages, her attorney later said that that was a mistake, as punitive damages are unavailable under Elliott-Larsen.  [*Id.*].  He also stated that

3

her emotional distress damages are not garden variety; she alleges suffering from panic attacks.  [*Id.*].

Defendant asserts that it conducted a thorough investigation of plaintiff's complaint when it was first made in January 2015, and suspended Maddox without pay for two-weeks.  [ECF No. 38, PageID.1109-13].  It notes that it can be held liable for hostile environment sexual harassment only if it failed to adequately investigate or take prompt and appropriate remedial action.  [*Id.*, PageID.1107 (citing *Chambers v. Trettco, Inc.*, 463 Mich. 297, 311–12 (2000)).  Defendant states that neither plaintiff nor any other employee complained that Maddox engaged in further sexual harassment after the suspension, and that plaintiff stated at the time of her resignation in December 2016 that she wanted to spend more time with her family.  [ECF No. 23, PageID.449].  Defendant also alleges that plaintiff obtained a new job at nearly the same salary almost immediately after she resigned from WXYZ.  [*Id.*, PageID.464].  And it notes that Rev. Rideout did not mention plaintiff by name when he made his public accusations about Maddox and that plaintiff denies having anything to do with Rideout's press conference.  [ECF No. 88, PageID.2763].

At the April 11 hearing, defendant noted that the parties have engaged in exhaustive discovery, including 14 depositions and defendant's

responses to 85 requests for production of documents.  Earlier, the Court

granted plaintiff's motion to require defendant conduct a keyword search of

emails from ten custodians and permitted plaintiff to take 15 depositions

(fewer than her request of 25).  [ECF No. 72, PageID.2203-04].  Among

those deposed were Ericka Storrs, a human resources officer who

conducted the 2015 investigation after plaintiff complained; Michelle

Zachay, the current human resources officer, whose deposition lasted

seven hours; Eduardo Fernandez, the general manager who decided not to

terminate Maddox in 2015 and explained in a ten-hour deposition why he

chose instead to impose a two-week suspension without pay [*see* ECF No.

121-3, PageID.3728-30]; news director David Manney [*see* ECF No. 110-

11]; and station manager David Murri [*see* ECF No. 94-8].

Near the end of the discovery period, Edwards noticed the deposition

of a corporate representative under Rule 30(b)(6) on these subjects:

1. WXYZ's policies and procedures concerning anti-harassment, equal employment opportunity, sexual harassment and retaliation, as well as the complaint and investigative process concerning same from 2014 to 2018. This topic is limited to the general application of these policies and procedures, not their specific application in any other matter, and their application in this matter.

2. WXYZ's policies and procedures relating to inappropriate communications or conduct, complaints of inappropriate communications or conduct, and investigations of inappropriate communications or conduct from 2014 to 2018. This topic is

limited to the general application of these policies and procedures, not their specific application in any other matter, and their application in this matter.

3. WXYZ's Performance Management Policies from 2014 to 2018. This topic is limited to the general application of these policies, not their specific application in any other matter, and their application in this matter.

4. WXYZ's progressive disciplinary policies, "Progressive Disciplinary Toolkit," corrective action policies, and dismissal policies from 2014 to 2018. This topic is limited to the general application of these policies, not their specific application in any other matter, and their application in this matter.

5. WXYZ's policies and procedures relating to consideration of effective remedial actions taken in response to harassment investigations, retaliation investigations, and investigations concerning inappropriate communications or conduct from 2014 to 2018. This topic is limited to the general application of these policies, not their specific application in any other matter, and their application in this matter.

6. WXYZ's "Open door Communication" policies from 2014 to 2018. This topic is limited to the general application of these policies, not their specific application in any other matter, and their application in this matter.

7. WXYZ's Technology Policies from 2014 to 2018. This topic is limited to the general application of these policies, not their specific application in any other matter, and their application in this matter.

8. WXYZ's record retention policies as it relates to the preservation of emails, text messages, call logs and other data stored on company issued cell phones and company's email server from 2014 to 2018. This topic is limited to the general application of these policies, not their specific application in any other matter, and their application in this matter.

9.  WXYZ's Equipment Policy from 2014 to 2018. This topic is limited to the general application of these policies, not their specific application in any other matter, and their application to Malcom Maddox.

10. The compensation structure of WXYZ's Anchors from 2014 to present.

11. Defendant's knowledge of the facts and findings from the 2015 investigation concerning Malcom Maddox.

12. Defendant's consideration of potential remedial measures taken in response to complaints and non-privileged investigations concerning Malcolm Maddox.

13. All complaints and/or non-privileged investigations concerning Malcom Maddox throughout the duration of his employment with WXYZ.

14. The non-privileged facts, considerations, and discussions leading up to and surrounding Malcom Maddox's termination.

15. Defendant's discovery responses, including the search conducted to determine what responsive documents exist, and collection of responsive documents to the following discovery requests : Plaintiff's First Request for Production, Request No.: 18 and 22 (as they relate to responsive documents concerning Malcom Maddox), 20, 21, 24, 25, 30, 31, 32, 33, 35,36, 39, 40, 42, 43, 44, 47; Plaintiff's Second Request for Production, Request No.: 16. This topic, as with all other topics, specifically excludes any attorney-client and/or work product protected conversations.

16. The facts underlying, and evidence supporting, all denials of any factual allegation in Plaintiff's Complaint as set forth in Defendant's Answer. This topic, as with all other topics, specifically excludes any attorney-client and/or work product protected conversations.

17. The facts underlying, and evidence supporting, Defendant's Answer and affirmative defenses. This topic, as with all other topics, specifically excludes any attorney-client and/or work product protected conversations.

18. General description of WXYZ' s legal hold process including all details of that policy and specific steps that were taken in this case to implement the hold. This topic, as with all other topics, specifically excludes any attorney-client and/or work product protected conversations.

19. Defendant's electronic discovery searches and responses to this matter, which includes:

    a. Method of collecting ESI for review, including whether the method preserved all relevant metadata intact;
    b. Chain of custody tracking from origination to destination;
    c. How the discovery collection process was managed and conducted - i.e., was there custodian self-collection being performed;
    d. Methods used to cull the ESI prior to review;
    e. Process for testing and refining the search terms used as well [sic] any testing or sampling conducted on ESI not retrieved;
    f. Methods to conduct review of the ESI including review application(s) used and workflow associated with the review process;
    g. Use of technology to assist with the review, such as clustering, predictive coding and near-duplicate identification;
    h. Personnel employed to conduct ESI review, including their qualifications, experience, and training;
    i. Methodology for organizing and verifying the production, including confirmation of file counts and spot checks of produced files for content;
    j. The total volume of ESI collected, reviewed, and produced.

[ECF No. 110-6].  The notice also directed the corporate representative to bring "[a]ny and all documents reviewed in preparation for this deposition." [*Id.*].  Defendant argues that these topics are irrelevant, duplicative, overbroad and not proportional, and that they request information protected by the attorney-client privilege.  Plaintiff responds that the topics are stated with reasonable particularity and that they are not duplicative because only a Rule 30(b)(6) motion will bind the corporation.

## III.   Analysis

### A.

A Rule 30(b)(6) notice "must describe with reasonable particularity the matters for examination," and the deponent "must testify about information known or reasonably available to the organization."  *Id.*  "The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not."  *Alvey v. State Farm Fire & Cas. Co.*, No. 517CV00023TBRLLK, 2018 WL 826379, at *7 (W.D. Ky. Feb. 9, 2018) (citation and internal quotation marks omitted).  Some courts construe "reasonable particularity" as requiring a notice of deposition under Rule 30(b)(6) to identify topics with "painstaking specificity."  *Georgia-Pac. Consumer Prod., LP. v. NCR Corp.*, No. 1:11-CV-483, 2015 WL 11236844, at *1 (W.D. Mich. Feb. 23, 2015).  Plaintiff

9

challenges this construction, but there is no dispute that topics must be stated with enough specificity to allow the corporation to designate and prepare a representative to testify.  *See Alvey*, 2018 WL 826379 at \*7 (W.D. Ky. Feb. 9, 2018) (finding that the corporate defendant could not "reasonably designate and prepare a corporate representative to testify on its behalf regarding these broad lines of inquiry.").

A Rule 30(b)(6) witness differs from a "mere corporate employee" because, unlike an individual witness, the testimony of a Rule 30(b)(6) witness represents the knowledge of the corporation and testimony under the rule binds the corporation.  *White v. Wal-Mart Stores E., L.P.*, No. 518CV00034TBRLLK, 2018 WL 5083891, at \*3 (W.D. Ky. Oct. 18, 2018); *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, No. 2:15-CV-3023, 2018 WL 3358641, at \*12 (S.D. Ohio July 10, 2018).  A Rule 30(b)(6) witness is obligated to become educated to the extent possible about the identified topics, although perfection is not expected.  *White*, 2018 WL 5083891 at \*3.  So, ordinarily, "prior deposition testimony from individual fact witnesses does not relieve a corporation 'from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition." *Majestic Bldg. Maint.,* 2018 WL 3358641 at \*12.

There are exceptions.  For example, a party may avoid presenting a Rule 30(b)(6) witness if, when responding to a deposition notice, the party clearly states that it intends for its employees' prior deposition testimony to represent the testimony of the corporation.  *Id.*  This intent must be clear enough so that the "opposing counsel (and, if necessary, the Court) can evaluate whether the prior testimony is sufficiently on point to make a subsequent deposition superfluous."  *Id.* (citations and internal quotation marks omitted).  A corporation may also show that the record is fully developed on a topic so that the Rule 30(b)(6) topic is "unreasonably duplicative and cumulative."  *White*, 2018 WL 5083891 at *4.

And because Rule 30(b)(6) is intended to streamline discovery, a court can consider if the deposition would be used inefficiently "as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period ... so that the burden on Defendant of designating and preparing a witness would almost certainly outweigh the benefit to Plaintiff."  *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 99 (D.D.C. 2017) (citation omitted).

Other rules of discovery require a court to consider whether a Rule 30(b)(6) deposition would be cumulative, duplicative, unreasonably burdensome, and disproportionate to the needs of the case.  First, Federal

11

Rule of Civil Procedure 26(b)(1) applies to Rule 30(b)(6) cases.  *Alvey v. State Farm Fire & Cas. Co.*, No. 517CV00023TBRLLK, 2018 WL 826379, at *2–3 (W.D. Ky. Feb. 9, 2018).  Under Rule 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," except that the Court must consider proportionality factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Rule 26(b)(1) was amended in 2015 to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."  Rule 26, Advisory Committee Notes (2015).

Rule 26(b)(2)(C) also requires, in relevant part, that the Court limit discovery otherwise allowed if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  This rule likewise applies to a Rule 30(b)(6) deposition notice.  *Alvey,* 2018 WL 826379 at *3.

Finally, Rule 26(c)(1) allows a party to move for a protective order to protect it from "annoyance, embarrassment, oppression, or undue burden" arising out of a discovery request."  Plaintiff emphasizes that Rule 26(c)(1) requires a showing of "good cause," supported by specific facts showing a defined and serious injury.  *See Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001).  But neither Rules 26(b)(1) nor 26(b)(2) requires such a showing and, in fact, Rule 26(b)(2) allows a court to limit discovery on its own motion.  Rule 30(b)(6) also incorporates a "reasonable particularity" requirement without stating that an objection must show "good cause" as defined by Rule 26(c)(1).  Thus, relying on Rule 26(b)(1), Rule 26(b)(2) and Rule 30(b)(6), courts have quashed or limited Rule 30(b)(6) depositions with no reference to Rule 26(c)(1).  *See, e.g., Alvey,* 2018 WL 826379; *Smith v. Old Dominion Freight Line, Inc.*, No. 3:15-CV-560-CRS, 2017 WL 2371825, at *8 (W.D. Ky. May 31, 2017).

## B.

### 1. Modification of Questions About Policies

Defendants argue that questions one to nine on plaintiff's notice were vague, overbroad, irrelevant and not proportional to the needs of the case because they did not request only the application of various policies to the 2015 Maddox investigation, but also about the general application of those

13

policies over a five-year period (2014 to 2018). The Court has already

ruled that other allegations of discrimination or sexual harassment, except

those alleged against Maddox, are irrelevant to the claims and defenses

here. [ECF No. 72, PageID.2205]. And defendant "cannot reasonably

designate and prepare a corporate representative to testify on its behalf"

about the general application of all of the specified policies over a five-year

period. *Alvey*, 2018 WL 826379 at *7.

Plaintiff cites *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 509 (D.S.D.

2009), as holding that a Rule 30(b)(6) deposition notice requiring business

plans about retention and termination for over a five-year span was not

temporally overbroad. But Rule 26(b)(1) has been narrowed since *Murphy;*

the rule now allows only discovery of evidence that is relevant to the

specific claims and defenses at issue.[2] The specific claims here are sexual

harassment and retaliation under *Elliott-Larsen*. Defendant can be liable

for the sexual harassment only if it failed to adequately investigate or take

prompt and appropriate remedial action after plaintiff complained in 2015.

*Chambers,* 463 Mich. at 311–12. Plaintiff resigned from defendant in 2016

---

[2] *See Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F.Supp.3d 810
(W.D. Pa. 2016) (describing the narrowed scope of discovery after the
2015 amendments to Rule 26(b)(1)). Rule 26(b)(1) formerly allowed
discovery relevant to the "subject matter involved in the action." *Id.* at 823.

and any relevant retaliation would have occurred before her resignation. Any policies before 2015 and after 2016 are irrelevant.

The Court agrees with defendant that a Rule 30(b)(6) deposition about its policies is likely duplicative and that plaintiff has had ample "opportunity to obtain the information by discovery in the action."  Rule 26(b)(2).  Plaintiff already has copies of most of the written policies.  [See ECF No. 119-4 to 119-10].  She has deposed two human resources officers (including the one who investigated her complaint), the general manager, news director and station manager, and had the opportunity to ask these witnesses about the policies and their application to her complaint against Maddox.  And plaintiff has served a "catch-all" Rule 30(b)(6) notice to "reexamine at the end of discovery the universe of information" defendant has produced during discovery.  *Prasad,* 323 F.R.D. at 99.  But, as plaintiff notes, the prior testimony from the individual fact witnesses does not relieve defendant from its obligation to designate a witness under Rule 30(b)(6).  *Majestic Bldg. Maint.*, 2018 WL 3358641 at *12.

Defendant's authority does not persuade the Court otherwise.  Some language of *Snoddy v. City of Nacogdoches*, 98 F. App'x 338, 340 (5th Cir. 2004), appears to be on-point, but the plaintiff in that case was also seeking to take the Rule 30(b)(6) deposition after discovery had closed.

15

And in *Versata Software v. Internet Brands, Inc.*, No. 11-MC-50844, 2011 WL 4905665, at *2 (E.D. Mich. Oct. 14, 2011) and *Convertino v. U.S. Dep't of Justice*, No. 07-CV-13842, 2008 WL 4104347, at *9 (E.D. Mich. Aug. 28, 2008), the subpoenas at issue were directed at nonparties.

Defendant argues that *Majestic Bldg. Maint.* stated that a party can designate a prior deposition as the testimony of the corporation under Rule 30(b)(6). *Majestic Bldg. Maint.*, 2018 WL 3358641 at *12. But that designation had to be made in response to the deposition notice, and it had to be clear enough that the "opposing counsel (and, if necessary, the Court) can evaluate whether the prior testimony is sufficiently on point to make a subsequent deposition superfluous." *Id.* (citations and internal quotation marks omitted). Here, defendant has designated no specific depositions as being the testimony of the corporation, nor specified the portions of deposition testimony it alleges are sufficiently on point.[3]

---

[3] In a footnote, defendant stated, "If the Court were to refuse to quash these topics, WXYZ would likely designate prior testimony in lieu of forcing witnesses to appear for second, duplicative depositions." [ECF No. 110, PageID.3235 n. 3]. The Court offers no opinion about the timeliness of any future efforts to designate prior deposition testimony as being that of the corporation.

## 2. Rejection of Question about Anchor Compensation

Plaintiff's proposed topic about the compensation structure of WXYZ anchors from 2014 to the present is relevant to a claim: she alleges that she was retaliated against by being denied "anchor opportunities."  [ECF No. 60, PageID.1892].  As a reporter, plaintiff had served sometimes as a fill-in anchor.  [ECF No. 110-9, PageID.3291-92; ECF No. 110-10, PageID.3297].  Those fill-in jobs did not entitle her to anchor compensation.  So the compensation structure of the anchors would not be relevant even if Maddox's or defendant's actions caused her to lose fill-in anchor opportunities.  But plaintiff also claims that she would have eventually been promoted to a full-time anchor.

Plaintiff must show that she would have been promoted to anchor but for her complaint.  *Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676, 695 (E.D. Mich. 2015).  As a reporter for defendant, plaintiff's last assignment as a fill-in anchor was in February 2014, nearly a year *before* her complaint against Maddox.  [ECF No. 110-9, PageID.3292; ECF No. 110-10, PageID.3297, 3300-01].  Plaintiff also testified that she never applied for a promotion to anchor because there were no openings.  [ECF No. 110-10, PageID.3303-06].  And news director David Manney testified that

17

promotions from reporter to anchor in the Detroit market were "pretty rare." [ECF No. 110-11, PageID.3309-10].

On these facts, plaintiff is merely speculating that she would have become an anchor, and be compensated as one, but for her complaint against Maddox. So discovery about the anchor compensation structure is not important to resolve the issues, and the burden of having defendant prepare a witness to testify about it outweighs the likely benefit. Under Rule 26(b)(1), the Court rejects this topic.

### 3. Questions About the Facts Known to Defendant and the Remedies it Chose in 2015

Defendant argues that plaintiff's questions about the 2015 investigation are overbroad and duplicative. The Court agrees that the questions are duplicative, but as noted, plaintiff is entitled to have a Rule 30(b)(6) deposition to bind the corporation. *Majestic Bldg. Maint.*, 2018 WL 3358641 at *12. And the topic of the facts known to defendant is not overbroad; "courts have consistently held 'that a Rule 30(b)(6) notice of deposition that seeks the factual bases for another party's claims or defenses is proper.'" *Id.,* (quoting *Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *3 (S.D. Ohio Apr. 13, 2006)).

The Court has, however, removed from the topic plaintiff's request for all facts underlying any denials to plaintiff's factual allegations.  Plaintiff alleges many facts about Maddox for which defendant cannot be held liable.  As noted, defendant can be held liable only if it failed to adequately investigate or remedy plaintiff's complaint. *Chambers,* 463 Mich. at 311–12. The factual claims addressing that issue will be sufficiently addressed by a Rule 30(b)(6) witness who testifies about defendant's knowledge of the facts and findings from the 2015 investigation; its consideration of potential remedial measures in response to plaintiff's complaint and the investigation; and the facts underlying defendant's answer and affirmative defense.

### 4. Requests to Specify Evidence and Produce Documents

The Court rejects plaintiff's request that the witness identify all evidence in support of is factual allegations and produce "any and all documents reviewed in preparation for this deposition."  [ECF No. 110-6]. These requests would require defendant to duplicate the discovery that it has already produced in response to the 85 requests for production of documents, the other 14 depositions and the answers to interrogatories. Plaintiff wants to turn over every rock to find every possible piece of evidence, but "[t]he Federal Rules of Civil Procedure do not require

perfection or guarantee that every possible responsive document will be found and/or produced." *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. CIV. 10-0541-GPC WVG, 2013 WL 6159177, at *10 (S.D. Cal. Nov. 25, 2013), *adopted in part*, No. 10CV541-GPC WVG, 2014 WL 6851607 (S.D. Cal. June 16, 2014).  Under Rule 26(b)(2), the Court denies plaintiff's duplicative and cumulative request for defendant to identify evidence and produce documents.

Plaintiff's deposition notice also fails to state the documents requested with reasonable particularity.  Rule 30(b)(2) allows a deposition notice to include a request for production of documents, but refers to Federal Rule of Civil Procedure 34, thus triggering Rule 34's procedural requirements.  *Olmstead v. Fentress Cty., Tennessee*, No. 2:16-CV-00046, 2018 WL 6198428, at *4 n. 1 (M.D. Tenn. Nov. 28, 2018); *Nozinich v. Johnson & Johnson*, Inc., No. 09-02105-DKV, 2011 WL 13124086, at *2 (W.D. Tenn. Apr. 4, 2011).  Rule 34(b)(1)(A) states that a document request "must describe with reasonable particularity each item or category of items to be inspected."  Plaintiff's request for the deponent to bring "any and all documents" reviewed in preparation of the deposition fails the reasonable particularity requirement.  And plaintiff's broad request would include documents covered by work-product or attorney-client privilege,

and defendant would have to specify each item and category of item to which it objected.  Rule 34(b)(2)(B) & (C).  Again, this would be duplicative of defendant's prior responses and objections to requests for production of documents.

### 5. Request for Testimony About Other Investigations Against Maddox, and for Facts Leading to Maddox's Termination in 2018

Plaintiff requested as a topic "[a]ll complaints and/or non-privileged investigations concerning Malcom Maddox throughout the duration of his employment with WXYZ."  [ECF No. 110-6, PageID.3282].  This topic has little relevance to this case unless WXYZ was aware of other sexual harassment complaints against Maddox before the 2015 investigation; a prior complaint could have affected the remedy defendant chose in response to plaintiff's complaint.  Defendant has asserted that no other employee complained that Maddox sexually harassed her, and that the only investigations of alleged misconduct against Maddox took place in 2015 and after Rev. Rideout's 2017 allegations.  [*See* ECF No. 60, PageID.1940-41].   And the Court has ruled that the post-2015 investigation materials are protected by attorney-client and work-product privileges. [ECF No. 72, PageID.2202; ECF No. 79, PageID.2444-47].

When asking the designated deponent about defendant's knowledge of the facts and findings from the 2015 investigation, plaintiff may ask if defendant was aware of any complaints or investigations about Maddox at the time of that investigation and when it decided on a remedy.  The Court otherwise rejects the "other investigations" topic.

Plaintiff also listed as a topic "[t]he non-privileged facts, considerations, and discussions leading up to and surrounding Malcom Maddox's termination."  [ECF No. 110-6, PageID.3282].  The Court already ruled that defendant's 2017 and 2018 investigations are privileged, except that it had to disclose the identity of any witness its attorneys interviewed during that period.  [ECF No. 47, PageID.1614-15; ECF No. 60, PageID.1972-73; ECF No. 72, PageID.2202; ECF No. 79, PageID.2444-47].  The Court will not compel defendant to designate a witness for this topic.

### 6.  Requests for "Discovery about Discovery," and Technology and Record Retention Policies

Plaintiff requests that a witness be designated to testify about defendant's discovery responses, including any searches it conducted; "WXYZ's legal hold process including all details of that policy and specific steps that were taken in this case to implement the hold"; and defendant's

electronic discovery searches and responses, with ten subparts. [ECF No. 110-6, PageID.3282-83]. Other topics address defendant's technology, record retention and equipment policies. [*Id.*, PageID.3281]. Plaintiff alleges that defendant did not adequately preserve and produce evidence, specifying only Maddox's work phone. [ECF No. 119, PageID.3361].

Courts have ordered "discovery about discovery" when the record suggests that there is reason to distrust the responding party's diligence. *See, e.g., Ruiz-Bueno v. Scott,* No. 2:12-CV-0809, 2013 WL 6055402, at *3 (S.D. Ohio Nov. 15, 2013). "In general, such discovery will be allowed if a party's efforts to comply with proper discovery requests are reasonably drawn into question." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-CV-00605-PAB-KMT, 2017 WL 1325344, at *8 (D. Colo. Jan. 3, 2017), *objections overruled*, 2017 WL 1325171 (D. Colo. Feb. 24, 2017). "When a party responding to discovery takes the position that it has fully responded, the court usually will not compel a further response absent evidence that the responding party has improperly withheld documents." *Conagra Foods Food Ingredients Co. v. Archer Daniels Midland Co.,* No. 12-2171-EFM, 2014 WL 1570263, at *6 (D. Kan. Apr. 18, 2014).

Similarly, a Rule 30(b)(6) depositions about retention policies and procedures, as well as the litigation holds placed in a case, are permitted

23

when there is a potential issue of spoliation.  *Beaudry v. TeleCheck Servs.*, Inc., No. 3-07-0842, 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013). As noted, plaintiff alleges that defendant failed to preserve Maddox's phone, but more is necessary to state a claim of spoliation.  *See* Fed. R. Civ. P. 37(e).  Plaintiff has failed to, for example, show that any of the relevant communication on Maddox's phone was not available on plaintiff's own cell phone or from defendant's email searches. Under Rule 37(e), spoliation is shown only if the evidence cannot be replaced through other discovery, and a curative measure is available only if the requesting party suffered prejudice or if the party that failed to preserve acted with intent.

At the April 11 hearing, plaintiff described another alleged piece of evidence—a folder that an employee testified she threw away.  But plaintiff did not provide the Court with information showing that this incident violated defendant's duty to preserve evidence in anticipation of litigation or amounted to spoliation.  And defendant points out that plaintiff's legal hold topic, as written, is too broad.  *Beaudry v. TeleCheck Servs., Inc.*, No. 3-07-0842, 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013) ("The fact of a litigation hold is not privileged or protected by work product. In contrast, the mental thought processes of lawyers authoring and promulgating litigation holds is privileged or protected.").

24

For these reasons, the discovery-about-discovery and preservation topics are irrelevant and not important to resolve the case, and the burden of requiring defendant to prepare a witness to testify about these matters outweighs the likely benefit.

### 7. Remaining Issues

Defendant asks the Court to order plaintiff not to ask hypothetical questions.  The Court agrees that hypothetical questions are not appropriate for a Rule 30(b)(6) deposition since the deponent will not be able to prepare for them.  *See Byrd v. Wal-Mart Transp., LLC*, No. CV609-014, 2009 WL 3055303, at *3 (S.D. Ga. Sept. 23, 2009) (finding that hypothetical questions are never appropriate for a Rule 30(b)(6) depositions); *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2016 WL 9460471, *8 (W.D. Ky. June 29, 2016) (rejecting topics that were irrelevant and "entirely hypothetical").  And a hypothetical question would require the witness to answer with personal opinion rather than the corporate position.  A "Rule 30(b)(6) witness does not give his own personal opinions but instead presents the corporation's 'position' on the topic.'"  *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14CV-00074-JHM, 2017 WL 4050319, at *5 (W.D. Ky. Sept. 13, 2017).

Defendant also asks the Court to advise plaintiff to not exceed the seven hours of deposition allowed by Rule 30(d)(1).  Plaintiff responds that the issue is not ripe.  The Court need not rule on the matter because Rule 30(d)(1) does not permit depositions to exceed seven hours without a stipulation or leave of court.  Plaintiff is warned that the Court is not inclined to grant her more than the normal seven-hour period.

Finally, although Rule 30(b)(6) depositions of corporate officers are usually taken at the corporation's principal office or place of business, *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 165 F.R.D. 65, 67 (E.D. Mich. 1996), defendant is a Cincinnati corporation.  Defendant also states that its local television station presents space and security concerns.  It thus asks that the depositions take place at its attorneys' office.  Plaintiff responds that "[a] party may unilaterally [choose] the location for a deposition of the opposing party," *Powerhouse Licensing, LLC v. Checkfree Servs., Corp.*, No. 12-CV-13534, 2013 WL 5874814, at *2 (E.D. Mich. Oct. 30, 2013). In the opinion that defendant cites, the court decided in which country the deposition should proceed (Germany or the United States), while the parties in plaintiff's opinion argued over the state (Michigan or Georgia).

Here, the dispute is over whether the deposition should occur in Southfield or Birmingham—two cities in Oakland County, Michigan.  The

parties should have been able to resolve this issue without court intervention.  Since they did not, and since a corporate officer is ordinarily given the benefit of a deposition at the corporation's place of business, the Court will order that the Rule 30(b)(6) depositions be conducted at defense counsel's office.

## IV.  Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** defendant's motion for protective order [ECF No. 110], and **ORDERS** defendant to designate a Rule 30(b)(6) witness to answer questions about these topics:

- WXYZ's policies and procedures about anti-harassment, retaliation, inappropriate communications, progressive discipline, effective remedies, performance management and open-door communications from 2015 to 2016, and the application of those policies to her complaint.  Questions about the application of those policies more generally or to other complaints are not allowed.

- Defendant's knowledge of the facts and findings from the 2015 investigation about Malcom Maddox.

- Defendant's consideration of potential remedial measures in response to Edward's complaint and the investigation of that complaint.

- The facts underlying defendant's answer and affirmative defenses.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: April 16, 2019

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which

provides a period of 14 days from the date of receipt of a copy of this order

within which to file objections for consideration by the district judge under

28 U.S.C. § 636(b)(1).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 16, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
